FILED by **TB** _D.C.

**May 26, 2016**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. –MIAMI

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
## 16-20390-CR-LENARD/GOODMAN
#### CASE NO. _____

18 U.S.C. § 1344
18 U.S.C. § 1343
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 982(a)(2)(A)

**UNITED STATES OF AMERICA**

**vs.**

**GERTI MUHO,**
       **a/k/a "Gerard Peter Morgan,"**
       **a/k/a "Enton Pinguli,"**
       **a/k/a "Kris Blair,"**

          **Defendant.**

_____/

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At various times relevant to this Indictment:

1.     HSBC Bank USA, N.A. ("HSBC") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").

2.     HSBC Private Bank (Monaco) S.A. ("HSBC-Monaco") was a private banking institution located in France.  HSBC-Monaco was also a wholly owned subsidiary of HSBC Holdings plc, a British multi-national banking and financial services company.

3.     Citibank, N.A. ("Citibank") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured

by the FDIC.

4.     Charles Schwab Bank ("Charles Schwab") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

5.     JP Morgan Chase Bank ("JP Morgan") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

6.     Wells Fargo Bank ("Wells Fargo") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

7.     Bank of America ("BoA") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

8.     TD Bank ("TD Bank") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

9.     PNC Bank ("PNC") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

10.    Silicon Valley Bank ("SVB") was a financial institution with offices located throughout the United States and whose accounts were insured by the FDIC.

11.    UMB Bank ("UMB") was a financial institution with offices located throughout the United States and whose accounts were insured by the FDIC.

12.     Cross River Bank ("Cross River") was a financial institution with offices located in New Jersey and New York and whose accounts were insured by the FDIC.

13.     Sallie Mae Bank ("SMB") was a financial institution with offices located throughout the United States and whose accounts were insured by the FDIC.

14.     CEM Investments LLC ("CEM") was a financial institution with offices located in the State of Florida and was an organization which financed and refinanced debts secured by an interest in real estate and whose activities affect interstate and foreign commerce.

15.     Space Coast Credit Union ("Space Coast") was a financial institution with offices located throughout the State of Florida and whose accounts were insured by the National Credit Union Share Insurance Fund ("NCUSIF").

16.     PenFed Credit Union ("PenFed") was a financial institution with offices located throughout the United States and whose accounts were insured by NCUSIF.

17.     The term "financial institutions," as defined by 18 U.S.C. § 20, refers collectively to the entities set forth in the preceding paragraphs 1-16.

18.     American Express and American Express Travel Related Services Inc. (hereinafter collectively "American Express") was a business with offices located in the United States.   American Express provided consumer credit and financial services, including credit cards and traveler's checks.

19.     Mayors Jewelers was a business with offices located in Miami-Dade County, Florida, and elsewhere.   Mayors Jewelers was a subsidiary of Birks Group, a business with offices located in the United States and Canada, and which provided consumer credit for qualifying customers of Mayors Jewelers.

3

20.     Alliance Data was a Texas corporation.  Alliance Data provided consumer credit for qualifying customers of Birks Group and Mayors Jewelers.

21.     Upstart Network Inc. ("Upstart Network") was a California corporation doing business as a personal, retail, and institutional loan service provider throughout the United States, including in the State of Florida.  Upstart Network utilized an internet and cloud-based loan application process, which utilized servers located outside the State of Florida, that allowed internet users throughout the United States to submit loan application documents and materials. Cross River originated loans processed by Upstart Network.

22.     Capital International Financial Inc. ("Capital International") was a mortgage brokerage company in the State of Florida, with its principal place of business located in Coral Gables, FL.

23.     The term "closing" referred to the legal event at which the transfer of an interest in real estate formally took place, as well as the point at which funds were transferred between the various parties, typically accomplished by temporarily passing the funds through an intermediary referred to as a "closing agent," or "title company."

24.     A HUD-1 Settlement Statement ("HUD-1 Statement") was a standard form required to be executed for the closing of all real estate transactions.  The HUD-1 Statement itemized all aspects of the closing for the lender, including any payments made to and by the borrower and fees paid to third parties in connection with the closing.

25.     The term "victims" refers collectively to individuals and entities whose bank account data, financial, employee and personnel information, and other personal and organizational identifying information, including means of identification, was possessed,

transferred, and utilized without lawful authority.

26.     FI Colbalt Inc. ("FI Cobalt") was a company in the State of Delaware, incorporated on or about December 21, 2010, with listed addresses located in Wilmington, DE, and Brooklyn, NY.

27.     FI Investments Inc. ("FI Investments") was a company in the State of Delaware, incorporated on or about December 21, 2010, with listed addresses located in Wilmington, DE, and Brooklyn, NY.

28.     Lampost Blue Chip Fund L.P. ("Lampost Blue Chip") was company in the State of Delaware, incorporated on or about October 1, 1999, with listed addresses located in Wilmington, DE, and Boca Raton, FL.

29.     Leveraged Hawk Inc. ("Leveraged Hawk") was a company in the State of Delaware, incorporated on or about April 29, 2013, with its listed address located in Dover, DE.

30.     Acacius S. LLC ("Acacius") was a company in the State of Delaware, incorporated on or about August 9, 2013, with its listed address located in Dover, DE.

31.     GM Capital Management Inc. ("GM Capital") was a company in the State of Delaware, incorporated on or about April 29, 2013, with its listed address located in Dover, DE, and New York, NY.  GM Capital was also the trustee for Blue 5303 Land Trust.

32.     Defendant **GERTI MUHO** was an individual who resided in Miami-Dade County, Florida, and elsewhere.   **MUHO** was the purported sole owner and operator of Leveraged Hawk, GM Capital, Blue 5303 Land Trust, and Acacius.

## COUNTS 1-17
## BANK FRAUD
## (18 U.S.C. § 1344)

1.      Paragraphs 1-11, 13-18, and 22-32 of the General Allegations section of this Indictment are re-alleged and incorporated fully herein by reference.

2.      Beginning in and around April 2013, the exact date being unknown to the Grand Jury, and continuing through on or about May 17, 2016, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**GERTI MUHO,**
**a/k/a "Gerard Peter Morgan,"**
**a/k/a "Enton Pinguli,"**
**a/k/a "Kris Blair,"**

did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of one or more said financial institutions by means of false and fraudulent pretenses, representations, and promises, relating to a material fact, in violation of Title 18, United States Code, Sections 1344(1) and (2) and 2.

### PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by, among other things: (a) unlawfully obtaining and utilizing victims' personal and financial identifying information; (b) submitting false and fraudulent mortgage, vehicle,

credit, and student loan applications and other related loan information to financial and lending institutions in order to induce the financial and lending institutions to provide the loans; (c) falsely and fraudulently opening accounts at various financial institutions, and materially misrepresenting the defendant's true identity and account access, use, deposits, and payments; (d) creating counterfeit and other unauthorized checks, utilizing financial institution account and routing data and victims' personal and other identifying information, and materially misrepresenting authorized payments from the listed account holders; (e) causing the counterfeit and other unauthorized checks to be presented for payment at and by the financial institutions based on the material misrepresentations; (f) unlawfully utilizing means of identification of real person victims in order to conceal the defendant's involvement in the fraud scheme; and (g) diverting, and attempting to divert, the fraud proceeds for the defendant's personal use and benefit, all to further the fraud scheme.

## THE SCHEME AND ARTIFICE

4.     The defendant's scheme and artifice included, among others, the following:

### *MUHO's Former Employment*

5.     In and around April 2013, **GERTI MUHO** was terminated from his employer in New York, NY.  In and around this time, **MUHO** unlawfully obtained and retained financial and personal identifying information of various victims associated with his former employer.  In and around June 2013, **MUHO** began residing in the Southern District of Florida.   In and around August 2013, **MUHO** unlawfully obtained approximately $2,067,377.24, via international wire transfer, from an HSBC-Monaco bank account and quickly transferred these funds to Citibank and Charles Schwab accounts, among others, under his control.  Clients of **MUHO's** former

7

employer owned the approximately $2,067,377.24 contained in the HSBC-Monaco account and did not authorize **MUHO's** receipt, transfer, and use of these funds.

*CEM Loan*

6.     In and around September 2013, utilizing victim funds described above in paragraph 5, **GERTI MUHO** purchased, among other items, a residence located at 1100 Biscayne Blvd, Apt. 5303, Miami, FL, 33132 ("Miami Condo").  To disguise the fraud scheme, **MUHO** purchased the Miami Condo, for approximately $775,000 cash, in the name of Blue 5303 Land Trust.  On or about October 16, 2013, the remaining victims' funds were frozen, via federal court order in the Southern District of New York ("SDNY"), in Citibank and Wells Fargo accounts controlled by **MUHO**.  On or about April 4, 2014, in the same SDNY case number, a default judgment was entered against **MUHO** in the amount of approximately $2,067,377.24, plus interest and costs.

7.     In and around November 2014, **GERTI MUHO**, in the name of GM Capital and "Gerard Morgan," submitted, and caused to be submitted, materially false and fraudulent loan application and related information for a mortgage loan, in the amount of a $500,000, from CEM and Capital International.  The equity in the Miami Condo served as collateral for the loan.  The loan application and related information contained numerous false and fraudulent statements and representations relating to **MUHO's** true identity, employment, income, intent to utilize property and loan proceeds, and other information necessary for CEM and Capital International to assess his qualifications to borrow money.

8.     Among other materially false and fraudulent misrepresentations, **GERTI MUHO**, posing as "Gerard Morgan," utilized a fictitious social security number.  **MUHO** claimed that

8

currently lived in San Francisco, CA, had worked at GM Capital for three (3) years, and earned $40,000 per month.  **MUHO** submitted a false and fraudulent letter regarding his employment and business background.  **MUHO** claimed that he did not intend to occupy or utilize the Miami Condo as his primary residence.  **MUHO** also stated that the loan proceeds would solely be used for business investment and not for personal use.

9.     On or about November 26, 2014, CEM approved the loan and wired approximately $453,710 to the closing agent in South Miami, FL.  To disguise the fraud scheme, **GERTI MUHO,** posing as "Gerard Morgan," signed the HUD-1 on behalf GM Capital and Blue 5303 Land Trust.  Thereafter, the closing agent issued three (3) checks, totaling approximately $380,194.32, to **MUHO**.  **MUHO** quickly deposited the loan proceeds into a JP Morgan account and utilized most, if not all, of the loan proceeds funds for his own personal use and benefit, including gambling and travel.  Ultimately, **MUHO** stopped making loan payments and caused the loan to enter default.

*Space Coast Loan*

10.     Beginning on or about February 14, 2015, **GERTI MUHO**, located in Miami, FL, submitted, and caused to be submitted, materially false and fraudulent loan application and related information to Space Coast.  The Space Coast loan, in the amount of approximately $38,000, related to the purchase a 2015 Jaguar F-Type vehicle, with Vehicle Identification Number (VIN) xxxx-5911, in Miami, FL.  To complete the purchase, **MUHO** traded in a 2013 Maserti GT vehicle, with VIN xxxx-4292, which **MUHO** previously purchased with victim proceeds identified above in paragraph 5.

11.     The Space Coast loan application and related information contained numerous

materially false and fraudulent statements and representations relating to **GERTI MUHO's** true identity, employment, income, and other information necessary for Space Coast to assess his qualifications to borrow money. Among other materially false and fraudulent misrepresentations, **MUHO**, posing as "Gerard Morgan," claimed that he earned $220,000 per year as "President and Attorney" of GM Capital. **MUHO** provided a Massachusetts driver's license as proof of identification. **MUHO** also submitted a fictitious social security number and counterfeit W-2 and IRS-1099 forms. Based on these material misrepresentations, Space Coast approved and funded the loan. Upon purchasing the 2015 Jaguar, **MUHO** also obtained vehicle insurance utilizing the name and personal identifying information of real person T.D.V., all without lawful authority. Ultimately, **MUHO** stopped making payments and caused the loan to enter default.

*Wells Fargo accounts xxxx-8899 and xxxx-7601*

12.     On or about September 30, 2015, **GERTI MUHO** submitted, and caused to be submitted, materially false and fraudulent bank account application and related information to a Wells Fargo branch located in Sunrise, FL. Among other materially false and fraudulent misrepresentations, **MUHO** utilized the name, forged signature, and social security number of T.D.V., all without lawful authority, when applying for the Wells Fargo accounts. During the Wells Fargo account application process, **MUHO** also presented a fake Ohio driver's license in the name of T.D.V., with **MUHO's** photograph, as proof of identification.

13.     Based on these material misrepresentations, Wells Fargo approved and opened accounts xxxx-8899 and xxxx-7601 and issued Wells Fargo debit card xxxx-7564 for **GERTI MUHO**, all in the name of T.D.V. and with a listed address located in Miami Beach, FL.

Thereafter, utilizing victims' personal identifying information, **MUHO** falsely and fraudulently used, and attempted to use, Wells Fargo and other financial institution funds and credit for his own benefit.

14.     On or about October 13, 2015, **GERTI MUHO** falsely and fraudulently created, and caused to be created, false and fraudulent BoA checks, totaling approximately $300.00, and deposited, and attempted to deposit them into Wells Fargo account xxxx-8899.  Among other materially false and fraudulent misrepresentations, **MUHO** utilized BoA account information, including T.D.V.'s name and forged signature, all without lawful authority, to represent that payment was authorized.

*PNC account xxxx-7156*

15.     On or about October 7, 2015, **GERTI MUHO** submitted, and caused to be submitted, materially false and fraudulent bank account application and related information to a PNC branch located in Cooper City, FL.   Among other materially false and fraudulent misrepresentations, **MUHO** utilized T.D.V.'s name, forged signature, and social security number, all without lawful authority, when applying for the PNC account.   During the PNC account application process, **MUHO** also presented a fake Ohio driver's license in the name of T.D.V., with **MUHO's** photograph, as proof of identification.

16.     Based on these material misrepresentations, PNC approved and opened account xxxx-7156 and issued PNC debit card xxxx-8003 for **GERTI MUHO**, all in the name of T.D.V. and with a listed address located in Brooklyn, NY.   Thereafter, utilizing victims' personal identifying information without lawful authority, **MUHO** falsely and fraudulently used, and attempted to use, PNC and other financial institution funds and credit for his own benefit.

17.     Beginning on or about October 12, 2015, and continuing through on or about October 21, 2015, **GERTI MUHO** falsely and fraudulently created, and caused to be created, false and fraudulent UMB , BoA, and SVB checks, totaling approximately $50,700.00, and deposited, and attempted to deposit them into PNC account xxxx-7156.  Among other materially false and fraudulent misrepresentations, **MUHO** utilized UMB, BoA, and SVB account information and real person M.M.'s and T.D.V.'s personal identifying information to represent that payment was authorized.

*BoA account xxxx-2838*

18.     On or about October 8, 2015, **GERTI MUHO** submitted, and caused to be submitted, materially false and fraudulent bank account application and related information to a BoA branch located in Miami, FL.   Among other materially false and fraudulent misrepresentations, **MUHO** utilized T.D.V.'s name, forged signature, and social security number, all without lawful authority, when applying for the BoA account.  During the BoA account application process, **MUHO** also presented a fake Ohio driver's license in the name of T.D.V., with **MUHO's** photograph, as proof of identification.   Based on these material misrepresentations, BoA approved and opened account xxxx-2838 for **MUHO** in the name of T.D.V. and with a listed address located in Long Beach, NY.

*BoA accounts xxxx-4771 and xxxx-4784*

19.     On or about October 8, 2015, **GERTI MUHO** submitted, and caused to be submitted, materially false and fraudulent bank account application and related information to a BoA branch located in Miami, FL.   Among other materially false and fraudulent misrepresentations, **MUHO** utilized T.D.V.'s name and forged signature, all without lawful

authority, when applying for two (2) BoA accounts.   During the BoA account application process, **MUHO** presented a PNC debit card xxxx-8003 and a fake Ohio driver's license, both in the name of T.D.V., as proof of identification.   **MUHO** also claimed that T.D.V. was a director of FI Colbalt.

20.    Based on these material misrepresentations, BoA approved and opened accounts xxxx-4771 and xxxx-4784 and issued BoA debit card xxxx-8280 for **GERTI MUHO**, all in the name of T.D.V. and FI Colbalt and with a listed address located in Brooklyn, NY.   Thereafter, utilizing victims' personal identifying information without lawful authority, **MUHO** falsely and fraudulently utilized, and attempted to utilize, BoA and other financial institution account funds and credit for his own use and benefit.

21.    Beginning on or about October 13, 2015, and continuing through on or about October 23, 2015, **GERTI MUHO** falsely and fraudulently created, and caused to be created, false and fraudulent American Express TRS, SVB, and PNC checks, totaling approximately $4,850.00, and deposited, and attempted to deposit them into BoA accounts xxxx-4771 and xxxx-4784.   Among other materially false and fraudulent misrepresentations, **MUHO** utilized American Express, SVB, and PNC account information and T.D.V.'s personal identifying information to represent that payment was authorized.

*BoA account xxxx-2760*

22.    On or about October 8, 2015, **GERTI MUHO** submitted, and caused to be submitted, materially false and fraudulent bank account application and related information to a BoA branch located in Miami, FL.   Among other materially false and fraudulent misrepresentations, **MUHO** utilized T.D.V.'s name and forged signature, all without lawful

13

authority, when applying for a BoA account.   During the BoA account application process, **MUHO** presented a PNC debit card xxxx-8003 and a fake Ohio driver's license, both in the name of T.D.V., as proof of identification.   **MUHO** also claimed that T.D.V. was a director of FI Investments.

23.     Based on these material misrepresentations, BoA opened account xxxx-2760, and issued BoA debit card xxxx-8199, for **GERTI MUHO**, all in the name of T.D.V. and FI Investments and with a listed address located in Brooklyn, NY.   Thereafter, utilizing victims' personal identifying information without lawful authority, **MUHO** falsely and fraudulently utilized and attempted to utilize BoA and other financial institution account funds and credit for his own use and benefit.

24.     Beginning on or about October 19, 2015, and continuing through on or about October 23, 2015, **GERTI MUHO** falsely and fraudulently created, and caused to be created, SVB checks, totaling approximately $6,500.00, and deposited, and attempted to deposit them into BoA account xxxx-2760.   Among other materially false and fraudulent misrepresentations, **MUHO** utilized SVB account information and T.D.V.'s personal identifying information to represent that payment was authorized.

*TD Bank accounts xxxx-8119 and xxxx-2810*

25.     On or about October 29, 2015, **GERTI MUHO** submitted, and caused to be submitted, materially false and fraudulent bank account application and related information to a TD Bank branch located in Sunny Isles, FL.   Among other materially false and fraudulent misrepresentations, **MUHO** utilized T.D.V.'s name, forged signature, and social security number, all without lawful authority, when applying for two (2) TD Banks accounts.   During the

TD Bank account application process, **MUHO** also presented a fake Ohio driver's license in the name of T.D.V., which contained **MUHO's** photograph, as proof of identification.

26.     Based on these material misrepresentations, TD Bank approved and opened accounts xxxx-8119 and xxxx-2810 for **GERTI MUHO**, all in the name of T.D.V. and with a listed address located in Plantation, FL.   Thereafter, utilizing victims' personal identifying information without lawful authority, **MUHO** falsely and fraudulently utilized and attempted to utilize TD Bank and other financial institution account funds and credit for his own use and benefit.

27.     Beginning on or about October 26, 2015, and continuing through on or about October 27, 2015, **GERTI MUHO** falsely and fraudulently created, and caused to be created, HSBC and SVB checks, totaling approximately $13,790.00, and deposited, and attempted to deposit them into TD Bank account xxxx-8119.   Among other materially false and fraudulent misrepresentations, **MUHO** utilized HSBC and SVB account information and T.D.V.'s personal identifying information, to represent that payment was authorized.

*Sallie Mae Loans*

28.     Beginning in and around November 2015 and continuing through in and around January 2016, **GERTI MUHO**, submitted, and caused to be submitted, materially false and fraudulent loan applications and related information to Sallie Mae.   The loan applications and related information pertained to various Sallie Mae student loans totaling over $90,000.   **MUHO** also utilized numerous victims' personal identifying information, all without lawful authority.

29.     On or about November 24, 2015, **MUHO**, located in Miami, FL, and posing as real person victim M.H.G., applied to Sallie Mae, via the internet, for a student loan in the

15

amount of $30,000.  Among materially false and fraudulent material misrepresentations, **MUHO** listed real person M.H.G. as the co-signer.  **MUHO** also provided M.H.G.'s real social security number and other personal identifying information, all without lawful authority.

30.     On or about December 15, 2015 **GERTI MUHO**, located in Miami, FL, and posing as "Kris J. Blair" and M.H.G., electronically applied to Sallie Mae, via the internet, for a bar study loan in the amount of $15,000.   Among other materially false and fraudulent misrepresentations, **MUHO** utilized the alias "Kris Blair" as the applicant, and listed M.H.G. as the co-signer.  **MUHO** claimed that "Kris Blair" graduated from UC Berkeley School of Law and earned $180,000 per year at Kris Blair Co.  **MUHO** provided a fake UC Berkeley Office of the Registrar letter and School Certification Form, each utilizing real person J.P.'s name and forged signature, all without lawful authority.  **MUHO** utilized a false social security number for "Kris Blair."  **MUHO** claimed that M.H.G. earned $240,000 per year and provided M.H.G.'s real social security number and other personal identifying information, all without lawful authority.  Based on these material misrepresentations, on or about January 9, 2016, Sallie Mae approved the loan and issued two (2) checks totaling $15,000, and mailed them to **MUHO** in Ridgewood, NY.

*PenFed Loans*

31.     Beginning in and around November 2015 and continuing through in and around March 2016, **GERTI MUHO** submitted, and caused to be submitted, materially false and fraudulent loan applications and related information to PenFed.  The loan applications and related information pertained to various PenFed loans and credit cards totaling over $235,000.

**MUHO** also utilized numerous victims' personal identifying information, including M.H.G., among others, all without lawful authority.

32.   On or about December 14, 2015, **MUHO**, located in Miami, FL, and posing as M.H.G., electronically applied to PenFed, via the internet, for an auto loan, in the amount of $100,000, for a 2016 Maserati vehicle.   Among other materially false and fraudulent misrepresentations, **MUHO** stated that M.H.G. worked at Balfour Investors Inc. and earned $15,000 per month.   **MUHO** also provided M.H.G.'s real social security number and other personal identifying information, all without lawful authority.

## EXECUTION OF THE SCHEME AND ARTIFICE

33.   On or about the dates specified as to each count below, the defendant, **GERTI MUHO**, did execute, and cause the execution of, the above-described scheme and artifice to defraud as more particularly described below:

| COUNT | APPROX. DATE | ACT IN EXECUTION |
|---|---|---|
| 1 | 11/26/2014 | Submission of false and fraudulent loan application and related information to CEM for the purpose of obtaining a mortgage loan in the amount of approximately $500,000, in connection with the property located at 1100 Biscayne Blvd, Apt. 5303, Miami, FL, 33132. |
| 2 | 2/14/2015 | Submission of false and fraudulent loan application and related information to Space Coast for the purpose of obtaining a vehicle loan in the amount of approximately $38,000, in connection with the purchase of a 2015 Jaguar, VIN xxxx-5911. |

| COUNT | APPROX. DATE | ACT IN EXECUTION |
|---|---|---|
| 3 | 9/30/2015 | Submission of false and fraudulent bank account application and related information to Wells Fargo, in the name of T.D.V., in connection with Wells Fargo accounts xxxx-8899 and xxxx-7601 and debit card xxxx-7564. |
| 4 | 10/7/2015 | Submission of false and fraudulent bank account application and related information to PNC, in the name of T.D.V., in connection with PNC account xxxx-7156 and debit card xxxx-8003. |
| 5 | 10/8/2015 | Submission of false and fraudulent bank account application and related information to BoA, in the name of T.D.V., in connection with BoA account xxxx-2838. |
| 6 | 10/8/2015 | Submission of false and fraudulent bank account application and related information to BoA, in the name of T.D.V. and FI Colbalt, in connection with BoA accounts xxxx-4771 and xxxx-4784 and debit card xxxx-8280. |
| 7 | 10/8/2015 | Submission of false and fraudulent bank account application and related information to BoA, in the name of T.D.V. and FI Investments, in connection with BoA account xxxx-2760 and debit card xxxx-8199. |
| 8 | 10/8/2015 | Submission of false and fraudulent bank account application and related information to TD Bank, in the name of T.D.V., in connection with TD Bank accounts xxxx-8119 and xxxx-2810. |
| 9 | 10/15/2015 | Submission of false and fraudulent UMB check #2603, the amount $50,000.00, for payment at PNC. |
| 10 | 10/22/2015 | Submission of false and fraudulent SVB check #2300, the amount $2,500.00, for payment at BoA. |
| 11 | 10/22/2015 | Submission of false and fraudulent SVB check #2302, the amount $2,000.00, for payment at BoA. |
| 12 | 10/23/2015 | Submission of false and fraudulent SVB check #2305, the amount $4,000.00, for payment at BoA. |

| COUNT | APPROX. DATE | ACT IN EXECUTION |
|:---:|:---:|:---|
| 13 | 10/29/2015 | Submission of false and fraudulent HSBC check #1207, the amount $9,790.00, for payment at TD Bank. |
| 14 | 10/29/2015 | Submission of false and fraudulent SVB check #3006, the amount $4,000.00, for payment at TD Bank. |
| 15 | 11/24/2015 | Submission of false and fraudulent loan application and related information to Sallie Mae for the purpose of obtaining a student loan in the amount of approximately $30,000. |
| 16 | 12/14/2015 | Submission of false and fraudulent loan application and related information to PenFed for the purpose of obtaining a vehicle loan in the amount of approximately $100,000. |
| 17 | 12/15/2015 | Submission of false and fraudulent loan application and related documents to Sallie Mae for the purpose of obtaining a student loan in the amount of approximately $15,000. |

In violation of Title 18, United States Code, Sections 1344(1) and (2), and 2.

### COUNTS 18-19
### WIRE FRAUD
### (18 U.S.C. § 1343)

1.      Paragraphs 6, 12, 17, 19-21, 25, and 29-32, of the General Allegations section of this Indictment are re-alleged and incorporated fully herein by reference.

2.      Beginning in and around April 2013, the exact date being unknown to the Grand Jury, and continuing through on or about May 17, 2016, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**GERTI MUHO,**
**a/k/a "Gerard Peter Morgan,"**
**a/k/a "Enton Pinguli,"**
**a/k/a "Kris Blair,"**

did knowingly and with intent to defraud devise, and intend to devise, a scheme and artifice to

19

defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmitted and caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme and artifice, all which affected one (1) or more financial institutions, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by, among other things: (a) unlawfully obtaining and utilizing personal and financial identifying information of real person and organizational victims; (b) submitting false and fraudulent credit loan applications and other related loan information to financial and lending institutions in order to induce the financial and lending institutions to provide the loans; (c) unlawfully utilizing means of identification of real person victims in order to conceal the defendant's involvement in the fraud scheme; and (d) diverting, and attempting to divert, the fraud proceeds for the defendant's personal use and benefit, all to further the fraud scheme.

## THE SCHEME AND ARTIFICE

4.      Paragraph 5 of the Scheme and Artifice Section of Counts 1-17 of this Indictment is re-alleged and incorporated by reference as through fully set forth herein as a description of the scheme and artifice.  The defendant's scheme and artifice also included, among others, the following:

### *Upstart Network Loan*

5.      Beginning on or about October 8, 2015, **GERTI MUHO**, located in Miami, FL,

and utilizing the internet, submitted, and caused to be submitted, materially false and fraudulent loan application and related information to Upstart Network and Cross River.  The loan application and related information pertained to a personal loan in the amount of $35,000.  The loan application and related documents contained numerous materially false and fraudulent statements and representations relating to **MUHO's** true identity, employment, income, deposits, assets, liabilities, and other information necessary for the lenders to assess his qualifications to borrow money.

6.      Among other materially false and fraudulent misrepresentations, **GERTI MUHO** utilized T.D.V.'s name and social security number, all without lawful authority.   **MUHO** submitted a photograph of a fake Ohio driver's license, in the name of T.D.V., as proof of identification.  **MUHO** also provided an altered statement for Wells Fargo account xxxx-7601. Through use of the internet, **MUHO** also caused Upstart Network employees to electronically access the loan application, via interstate wire communications, outside the state of Florida.

*Mayors Jewelers Loan*

7.      Beginning on or about October 8, 2015, **GERTI MUHO**, located in Miami, FL, submitted, and caused to be submitted, materially false and fraudulent loan application and related information to Mayors Jewelers, Birks Group, and Alliance Data.  The loan application and related information pertained to a consumer loan, in the amount of $7,700, in order to purchase a Rolex watch.  The loan application and related information contained numerous materially false and fraudulent statements and representations relating to **MUHO's** true identity, employment, income, deposits, assets, liabilities, and other information necessary for lenders to assess his qualifications to borrow money.

8.     Among other materially false and fraudulent misrepresentations, **GERTI MUHO** utilized T.D.V.'s name, forged signature, and social security number, all without lawful authority.  **MUHO** claimed that he worked at FI Investments and earned $14,500 per month. **MUHO** also provided a fake Ohio driver's license and PNC debit card, both in the name of T.D.V., as proof of identification.  Thereafter, **MUHO** caused Mayors Jewelers to submit the application, via interstate and foreign wire communication, to Birks Group and Alliance Data outside the state of Florida.

### USE OF THE WIRES

9.     On or about the dates specified as to each count below, the defendant, **GERTI MUHO**, for the purpose of executing the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted, by means of wire communication, in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described in each count below:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 18 | 10/8/2015 | Electronic submission, in Miami, FL, of loan application and related information to Upstart and Cross River, in name of T.D.V., in connection with a personal loan in the amount of $35,000. |
| 19 | 10/8/2015 | Electronic submission, in Miami, FL, of loan application and related information to Birks Group and Alliance Data, in name of T.D.V., in connection with a consumer loan in the amount of $7,700. |

In violation of Title 18, United States Code, Sections 1343 and 2.

22

<u>COUNTS 20-36</u>
AGGRAVATED IDENTIFY THEFT
(18 U.S.C. § 1028A(a)(1))

1.      Paragraphs 1-32 of the General Allegations section and the Scheme and Artifice sections of Counts 1-19 of this Indictment are re-alleged and incorporated fully herein by reference.

2.      On or about the dates enumerated below as to each count, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**GERTI MUHO,**
**a/k/a "Gerard Peter Morgan,"**
**a/k/a "Enton Pinguli,"**
**a/k/a "Kris Blair,"**

during and in relation to felony violations of Title 18, United States Code, Sections 1344 and 1343, as charged in Counts 3-8 and 10-18 of this Indictment, did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person, as specified in each count listed below.

| COUNT | APPROX. DATE | MEANS OF IDENTIFICATION |
|-------|-------------|-------------------------|
| 20 | 9/30/2015 | T.D.V.'s name, forged signature, and social security number during and in relation to Count 3. |
| 21 | 10/7/2015 | T.D.V.'s name, forged signature, and social security number during and in relation to Count 4. |
| 22 | 10/8/2015 | T.D.V.'s name, forged signature, and social security number during and in relation to Count 5. |
| 23 | 10/8/2015 | T.D.V.'s name, forged signature, and social security number during and in relation to Count 6. |

| COUNT | APPROX. DATE | MEANS OF IDENTIFICATION |
|---|---|---|
| 24 | 10/8/2015 | T.D.V.'s name, forged signature, and social security number during and in relation to Count 7. |
| 25 | 10/8/2015 | T.D.V.'s name and social security number during and in relation to Count 18. |
| 26 | 10/8/2015 | T.D.V.'s name, forged signature, and social security number during and in relation to Count 19. |
| 27 | 10/15/2015 | M.M.'s name and forged signature during and in relation to Count 9. |
| 28 | 10/22/2015 | T.D.V.'s name during and in relation to Count 11. |
| 29 | 10/23/2015 | T.D.V.'s name and forged signature during and in relation to Count 12. |
| 30 | 10/29/2015 | T.D.V.'s name, forged signature, and social security number during and in relation to Count 8. |
| 31 | 10/29/2015 | T.D.V.'s name and forged signature during and in relation to Count 13. |
| 32 | 10/29/2015 | T.D.V.'s name and forged signature during and in relation to Count 14. |
| 33 | 11/24/2015 | M.H.G.'s name and social security number during and in relation to Count 15. |
| 34 | 12/14/2015 | M.H.G.'s name and social security number during and in relation to Count 16. |
| 35 | 12/15/2015 | M.H.G.'s name and social security number during and in relation to Count 17. |
| 36 | 12/15/2015 | J.P.'s name and forged signature during and in relation to Count 17. |

In violation of Title 18, United States Code, Section 1028A(a)(1) and 2.

## **FORFEITURE**
## **(18 U.S.C. §§ 982(a)(2)(A))**

1.      The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **GERTI MUHO**, has an interest.

2.      Upon conviction of any of the offenses charged in Counts 1-36 of this Indictment, the defendant, **GERTI MUHO**, shall forfeit to the United States: (a) any property constituting, or derived from, any proceeds that such defendant obtained directly or indirectly, as the result of such violation, pursuant to Title 18, United States Code, Section 982(a)(2)(A), as made applicable by Title 28, United States Code, Section 2461(c).

it is the intent of the United States to seek the forfeiture of other property of the defendant up to the value of the above-described forfeitable properties.

All pursuant to Title 18, United States Code, Sections 982(a)(2)(A), as made applicable by Title 28, United States Code, Section 2461(c), and the procedures set forth at Title 21, United States Code, Section 853.

A TRUE BILL

_____

WIFREDO A. FERRER
UNITED STATES ATTORNEY

SEAN T. McLAUGHLIN
ASSISTANT UNITED STATES ATTORNEY

25

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA                    CASE NO. _____

vs.

GERTI MUHO,
    a/k/a "Gerard Peter Morgan,"        **CERTIFICATE OF TRIAL ATTORNEY**
    a/k/a "Enton Pinguli,"
    a/k/a "Kris Blair,"

           **Defendant.**
_____/        **Superseding Case Information:**

**Court Division:** (Select One)                New Defendant(s)            Yes _____ No _____
                                                Number of New Defendants
**X**   Miami    ___   Key West        Total number of counts
___ FTL    ___   WPB    ___ FTP

    I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:   (Yes or No)   No
    List language and/or dialect

4.    This case will take   11-15   days for the parties to try.

5.    Please check appropriate category and type of offense listed below:

    (Check only one)                 (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | ___ | Petty | | ___ |
| II | 6 to 10 days | ___ | Minor | | ___ |
| III | 11 to 20 days | x | Misdem. | | ___ |
| IV | 21 to 60 days | ___ | Felony | | x |
| V | 61 days and over | ___ | | | |

6.    Has this case been previously filed in this District Court?  (Yes or No)  No
If yes:
Judge:                      Case No.
(Attach copy of dispositive order)
Has a complaint been filed in this matter?    (Yes or No)  Yes
If yes:
Magistrate Case No.           16-MJ-2639-AMS - SDFL
Related Miscellaneous numbers:  16-MJ-00460 (PK) - EDNY
Defendant(s) in federal custody as of  5/17/2016
Defendant(s) in state custody as of
Rule 20 from the              Eastern District of New York

Is this a potential death penalty case? (Yes or No)    No

7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____Yes   x   No

8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____Yes   x   No

                              SEAN T. McLAUGHLIN
                              ASSISTANT UNITED STATES ATTORNEY
                              Court No. A5501121

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **GERTI MUHO a/k/a "Gerard Peter Morgan," a/k/a "Enton Pinguli," a/k/a "Kris Blair"**

**Case No**: _____

Counts #: 1-17

Bank Fraud

Title 18, United States Code, Section 1344(1) and(2)

**\* Max. Penalty**:   30 Years' Imprisonment

Count #: 18

Wire Fraud Affecting Financial Institution

Title 18, United States Code, Section 1343

**\* Max. Penalty**: 30 Years' Imprisonment

Count #: 19

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**: 20 Years' Imprisonment

Count #s: 20-36

Aggravated Identity Theft

Title 18, United States Code, Section 1028A

**\* Max. Penalty**: 2 Years' Imprisonment - consecutive to any other sentence

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**