```
 1                IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                        MIAMI DIVISION
                  CASE NO. 1:16-cr-20390-BB-1
 3

 4   UNITED STATES OF AMERICA,

 5          Plaintiff,                    February 13, 2017
                                          9:07 a.m.
 6          vs.

 7   GERTI MUHO,

 8          Defendant.                    Pages 1 THROUGH 68

 9   _____

10
                    TRANSCRIPT OF MOTION HEARING
11              BEFORE THE HONORABLE BETH BLOOM
                  UNITED STATES DISTRICT JUDGE
12

13   Appearances:

14   FOR THE GOVERNMENT:  UNITED STATES ATTORNEY'S OFFICE
                          SEAN THOMAS MCLAUGHLIN, AUSA
15                        99 Northeast 4th Street, 8th Floor
                          Miami, Florida 33172
16

17   FOR THE DEFENDANT:  GERTI MUHO, appearing pro se

18   (Standby counsel)   DAVID SCOTT HARRIS, ESQ.
                          6431 Southwest 39th Street
19                        Miami, Florida 33155

20
     COURT REPORTER:      Yvette Hernandez
21                        U.S. District Court
                          400 North Miami Avenue, Room 10-2
22                        Miami, Florida 33128
                          yvette_hernandez@flsd.uscourts.gov
23

24

25
```

```
 1          (Call to order of the Court, 9:07 a.m.)

 2          (Defendant present.)

 3          COURTROOM DEPUTY:  Calling Case Number 16-cr-20390,

 4     United States of America v. Gerti Muho.

 5          Counsel, please state your appearances for the record.

 6          MR. MCLAUGHLIN:  Good morning, Your Honor.

 7          Sean McLaughlin on behalf of the United States.  I

 8     apologize for being a couple minutes late.  I was stuck in

 9     traffic.  I called in advance.

10          Also with me at counsel table is AUSA Meisha Darrough.

11     She is going to be trying this case with me as well.

12          THE COURT:  Good morning.  And we did receive your

13     phone call.  So thank you for taking the time to call our

14     office and let us know.

15          THE DEFENDANT:  Gerti Muho, Your Honor, pro se.

16          MR. HARRIS:  Good morning, Your Honor.

17          David Harris, standby counsel for Gerti Muho.

18          THE COURT:  Good morning to each of you as well.

19          We have a lot of work ahead of us.  We have -- before

20     the Court for hearing are six separate motions, and I just want

21     to outline what motions are to be addressed today.

22          But first and foremost, Mr. McLaughlin, we had

23     addressed on Friday your motion to continue and the Court did

24     state that we would readdress your medical condition in order

25     to determine whether that motion should be readdressed by the
```

1    Court.

2         How are you feeling, sir?

3         MR. MCLAUGHLIN:  Not good.  But, Your Honor, good

4    enough.  And I think within a week I'll be back in tip-top

5    shape.  So thank you.  We're ready to go on the 21st.

6         THE COURT:  All right, then.

7         Before the Court this morning is Docket Entry 71,

8    which is the Government's motion in limine to preclude Defense

9    evidence, statements, and arguments; Docket Entry 122, the

10   Government's second motion in limine; Docket Entry 125, the

11   Government's motion in limine to preadmit business and public

12   records; Docket Entry 128, which was a readdressing of the

13   motion to continue trial.  And based on your statement,

14   Mr. McLaughlin, the Court will deny that motion and we are on

15   the heels of a trial for February 21st.

16        Docket Entry 131 is the Defendant's motion for bond

17   modification, as well as Docket Entry 137, which is the

18   corrected motion for transcript of the Grand Jury proceedings.

19        I believe it best that we address each of these

20   motions in the turn that they were filed.  So we'll first

21   address Docket Entry 71.

22        MR. MCLAUGHLIN:  Your Honor, I would rely on the

23   papers.  I set forth four areas that the Government has concern

24   on.  They are pretty typical in fraud cases in terms of

25   limiting Defense cross-examination, argument, and questioning

1    regarding victim negligence, reliance, and things of that

2    nature.  I would rely on the papers.  If the Court wants to

3    hear more, I can certainly address it.

4              THE COURT:  All right.  Thank you, sir.

5              Mr. Muho?

6              THE DEFENDANT:  Your Honor, I am again concerned about

7    the untrue statements the Government has stated in its papers.

8              In its reply, it states that I have not addressed its

9    requests 1 through 3, which is patently untrue.  In the papers,

10   it -- the -- my opposition addresses requests A, B, and C, in

11   Pages 10, 11, 12, 13, 14, and -- 13 and 14.

12             I am -- it is unclear why the Government says that

13   these are not opposed.  The opposition is clear.  And -- and --

14   and -- and -- and the mere fact that the Government refuses to

15   acknowledge the opposition and not address it, is -- is -- is

16   proof enough or shows that the Government's argument is in bad

17   faith and it should be denied.

18             Moreover, victim negligence or -- there's a good faith

19   defense that applies to this case.  As I'm reading the good

20   faith instructions to the jury, it states that a false

21   statement as charged in a case -- a statement made with

22   good-faith belief in its accuracy does not amount to a false

23   statement and is not a crime.  That is so even if the statement

24   is, in fact, erroneous.  If fraud is charged, if the Defendant

25   believed in good faith that he was acting properly, even if he

1  was mistaken in that belief, and even if others were injured by

2  his conduct, there would be no crime.  Those are grand jury

3  model -- not grand jury, jury instructions -- model jury

4  instructions.

5         The Government's requesting that -- that -- that --

6  that I not offer -- that I not offer evidence showing that the

7  alleged victims cared or did not care about the truth or

8  falsity of the representations, knew that the defendant was

9  false, would cut directly into -- into -- into the good faith

10  defense and would prevent me from making a good faith defense

11  to the jury.

12         The same thing with reliance -- and this is in

13  addition to me not being able to show intent that there was

14  no -- a lack of criminal intent and in addition to there being

15  a lack of -- my inability to show that there was a lack of a

16  fraud scheme.

17         The same thing goes to their second request, which was

18  to preclude me from offering evidence -- evidence of victim --

19  of alleged victim compliance -- complicity or -- or -- or -- or

20  having a part of the so-called fraud scheme.  It would --

21  again, it would prevent me from showing that there is a lack of

22  fraud scheme, intent or -- or criminal intent or fraud scheme

23  or -- or a good faith defense.

24         The same thing with the intent to reimburse or repay

25  the so-called victims.  That would, again, cut directly into a

```
1    good faith defense that I would be able to make.

2              And that's it.  Thank you, Your Honor.

3              THE COURT:  Mr. McLaughlin, is there anything further,

4    sir?

5              MR. MCLAUGHLIN:  Well, I would just say this, Your

6    Honor:  Good faith has nothing to do with whether or not a

7    victim was negligent in detecting the Defendant's fraud scheme.

8    Good faith has nothing to do with whether or not a victim

9    relied on the Defendant's false statements.  And good faith has

10   nothing to do with alleged misconduct by his former employer,

11   which I addressed in our reply.

12             The only issue to where good faith might be an issue

13   is whether or not he had an intent to repay.  There is no

14   evidence in this case, none whatsoever, that Mr. Muho intended

15   to repay anybody in this case.  So -- and I've got to go back

16   and look at the good faith instruction.  I'm not at this moment

17   well-versed in it.  Perhaps we can argue this later.

18             But in terms of what his quote/unquote good faith

19   defense would be, it is not applicable to whether or not the

20   victims were negligent or relied or failed to rely on his false

21   statements.

22             And the reason I flag these issues is that they are

23   very common in fraud cases.  We're dealing with a pro se

24   defendant, and I want to address them and bring them before the

25   Court.  If the Court wants to reserve ruling until we're in
```

1    trial, I understand that.  But it was more a motion to flag

2    issues that I think are going to be problematic at trial.

3          THE COURT:  Well, the reason I am inclined to reserve

4    is it also goes -- putting aside the issue of a good faith

5    defense, not knowing specifically what the Government seeks to

6    preclude the Defendant from bringing out by way of

7    cross-examination, or if the Defendant even chooses to call any

8    witnesses, it goes to the issue of whether the statement that

9    was made, or statements, were false or fraudulent, whether it

10   relates to a material fact, and it goes to the issue of the

11   intent to defraud.

12         And I'm failing to see how at this point the Court

13   should limit any testimony until the Court is aware as to

14   exactly what it is that the Defendant seeks to elicit.  Because

15   the law is very clear that even if the victim never encountered

16   the deception, a scheme is reasonably calculated to deceive

17   persons of ordinary prudence if there's some evidence that the

18   Defendant possessed the necessary mens rea.  But that intent is

19   what the Government has the burden of proving.

20         So at this point, I am not inclined to grant the

21   motion in limine and the Court will reserve ruling and address

22   it accordingly during the course of the trial.

23         So the motion in limine is denied without prejudice

24   for the Government to make the appropriate objections at the

25   time of trial.

1          MR. MCLAUGHLIN:  Your Honor, I would just raise the

2     one issue, which we really didn't get into, is Mr. Muho

3     dedicates a significant amount of his response into thinking

4     that this case is about his former employer and wanting to

5     spend an inordinate amount of time cross-examining witnesses

6     about his former employer.  I think that's an issue we should

7     probably address today.

8          I think in our reply set forth why all those matters

9     are really irrelevant and immaterial and prejudicial under 403,

10    and they have really nothing to do with this case.

11         THE DEFENDANT:  Your Honor, if I may address -- first,

12    I would like to address -- can we please address -- because

13    this is -- this is a recurring event that the Government lies

14    in its reply.  It is -- he -- it is blatantly stated -- and

15    correct me if I'm wrong -- that I have not replied -- I have

16    not opposed his request to preclude matters A, B, and C.  That

17    is -- that is blatantly stated.  And -- and -- and clearly, as

18    I just stated on the record, Pages 10, 11, 12, 13, and 14

19    address those -- if his answer is that he failed to read them,

20    then perhaps he should read them again.

21         Other than that, given that it is extremely likely

22    that the prosecutor has, in fact, read them and chose to state

23    on -- on his reply that I have not addressed it, I believe that

24    needs to be addressed before anything else is addressed on --

25    on -- on the Fletcher issue.

```
1            MR. MCLAUGHLIN:  To indulge Defendant Muho, I would

2    direct the Court's attention to Footnote 1 of Docket Entry 91.

3    And in his motion, he specifically concedes that matters

4    regarding negligence, actual reliance, and purported intent to

5    reimburse or repay are, quote, not relevant to the case or the

6    Defendant's planned defense.  It's his own words, Your Honor.

7            THE COURT:  All right.  We're moving forward now to

8    Docket Entry 122, the Government's second motion in limine,

9    which I understand is opposed as well, to preadmit evidence

10   under Rule 404(b), and that is the Inextricably Intertwined

11   Doctrine, and let's proceed with the argument.

12           MR. MCLAUGHLIN:  Again, Your Honor, I would rely on

13   the papers.  There hasn't been a formal response filed in

14   opposition to that.  But I wanted to flag for the Court areas

15   that the Government intends to admit that are not charged,

16   which are -- I think all of these matters, Your Honor, are

17   inextricably intertwined.  They are happening during the

18   charged fraud scheme.  I noticed them up under 404(b) just as a

19   matter of precaution.  But for the reasons stated on the

20   papers, it's the Government's position all of those matters

21   should be admitted.  They're going to be admitted mostly

22   through records and some trial testimony.

23           THE COURT:  Is there an objection, Mr. Muho?

24           THE DEFENDANT:  I reserve a right to right to make the

25   objection at trial, Your Honor, until I -- I have not -- I have
```

 1   not fully reviewed -- I -- I have not had enough time to review

 2   the -- the records.  I -- I -- I do worry about -- I do worry

 3   about an intent to prejudice the -- the -- the jury by the

 4   prosecutor in this case.  In fact, I would -- you know, in an

 5   ideal situation, I would -- I would ask the Court to sever

 6   Counts 1, 2 versus counts 3 to 37 on the --

 7         THE COURT:  Mr. Muho, let me stop you, sir, because

 8   I'm not going to entertain an ore tenus motion to sever.  But

 9   your comment concerns me, sir, that you are not in a position

10   to respond to the Government's motion in limine that addresses

11   the very documents that you have stated, at the time that the

12   Court granted your request to represent yourself, that you have

13   thoroughly reviewed and you were intimately aware of.

14         So at this point, are you advising the Court that you

15   have not, in fact, reviewed the documents that the Government

16   is relying upon in its motion in limine to preadmit evidence

17   under Rule -- Federal Rule of Evidence 404(b)?

18         THE DEFENDANT:  My previous statement, Your Honor,

19   covered the -- the -- the evidence in -- in general.  It did

20   not cover these specific documents.

21         THE COURT:  Well, I'm not understanding that comment.

22   Either you've reviewed the documents sufficient to not only

23   prepare for trial, but certainly to make an argument in

24   response to this motion, or you have not.

25         THE DEFENDANT:  Your Honor, I have not.

```
 1            I -- I -- I also -- I was also going to ask Your Honor
 2      for a continuance for between 30 and 45 days in order to
 3      prepare for trial.
 4            THE COURT:  Well, Mr. Muho, let me ask you, sir,
 5      because I have not received a written motion, either, with
 6      regard to a request to continue this case.  You have
 7      steadfastly ...
 8            THE DEFENDANT:  Opposed it?
 9            THE COURT:  Well, you have requested a speedy trial.
10      And in fact, you've moved to dismiss the case because you
11      believed that your case was not proceeding within that speedy
12      trial period.  So at this point, this is the first time that
13      the Court has heard from you specifically that you are not
14      prepared to proceed to trial on February 21st; is that correct,
15      sir?
16            THE DEFENDANT:  Your Honor, that is correct.  I -- I
17      made the decision after -- after -- after -- after I've been
18      unable to receive the hard drive and review all the evidence.
19      And moreover, after -- in my preparation for trial, there is a
20      significant amount of evidence that I am simply unable to
21      obtain as long as I remain incarcerated.
22            For example, going back to the motion for suppression,
23      there was an issue of a lease agreement, which, had I not been
24      incarcerated, I would have been able to show -- provide this
25      Court.
```

```
1          So the fact that I remain incarcerated is
2   preventing -- in my opinion, prevents me from being able to
3   fully -- fully put forth my -- my defense.  And I would ask for
4   additional time to -- to address -- to -- to -- to -- for
5   that -- for that reason.
6          And I believe that, even though my case -- I believe
7   that even though my defense is strong, my inability to fully
8   present my defense, which is hindered by the fact that I am
9   incarcerated and I do not have access to much of the documents
10   that I need in my defense, would -- would be, I believe, in my
11   best interest and the best interest of justice for me to
12   delay -- delay trial for -- for some time in order for me to be
13   able to put forth my best defense, Your Honor.
14          THE COURT:  Mr. Muho, addressing the motion to
15   suppress, you were aware that the Government was raising an
16   issue of standing and at no time did you advise the Court that
17   you were not prepared to proceed with that motion, and that
18   motion was already addressed.
19          The Court did advise you specifically at the hearing,
20   when you requested to represent yourself at the time of trial,
21   that you may be limited in terms of the materials that you may
22   seek to obtain on your own.  However, it's my understanding,
23   based on your statement, that you have received, and, in fact,
24   you had reviewed all of the discovery that the Government had
25   provided.
```

```
 1              Is it your statement now that you have not fully

 2    reviewed all of the evidence that the Government has provided

 3    to you and Mr. Harris, your standby counsel now?

 4              THE DEFENDANT:  I have not received the hard drives

 5    that the Government referred to.

 6              THE COURT:  Mr. Harris, it was my understanding,

 7    following the Court's order, that you were bringing to the FDC

 8    the two hard drives, as well as copies of the other documents.

 9    Was that done, sir?

10              MR. HARRIS:  Yes, Your Honor.  That's correct.  If

11    you'll note, I did file, over the weekend, an update.  The

12    prison emailed me and refused to accept the hard drives, which

13    were submitted with the remaining file.  They asked me to come

14    pick it up over the weekend, which I did.  And I immediately

15    notified the Court by pleading of the particulars with respect

16    to that.

17              They're refusing the two hard drives provided by the

18    Government in the format that it's been provided.  So I filled

19    out the required forms.  The CDs were accepted.  The hard

20    drives were rejected.  I was emailed by the Board of Prisons

21    attorney counsel to come pick up the hard drives, which I

22    did -- and I have them in my office -- without further

23    instruction of how they may be admitted.  So that's a new

24    development, and I immediately notified the Court of that.

25              Thank you, Your Honor.
```

1          THE COURT:  All right.  And as set forth in the

2     filings this weekend, Mr. Harris, as standby counsel, has

3     stated that at the time that he attempted to bring the hard

4     drives over, he was advised by the Bureau of Prisons that the

5     hard drives are unacceptable in the current format, since the

6     Government's hard drives are encrypted and have a password

7     protection, making conversion in another format not possible by

8     standby counsel.

9          I'm not certain if the Government is in a position to

10    turn over hard drives that would not be encrypted with a

11    password protection.

12          MR. MCLAUGHLIN:  Let me address this specifically.

13    They're not the Government's hard drives.  What they are is a

14    hard drive that Ms. Pinera-Vazquez provided to the Government,

15    which allowed the evidence to be copied onto it.  So it's the

16    Defense's hard drives.

17          THE COURT:  Understood.

18          MR. MCLAUGHLIN:  So their concerns about password

19    protection and all that -- it's their device.  It's the

20    Defense's device.

21          THE COURT:  That's a critical distinction.

22          MR. MCLAUGHLIN:  Correct.

23          THE COURT:  So Mr. Harris, if, in fact, that was

24    provided by Mr. Muho's counsel, then I would suggest, with

25    regard to the documents that Mr. Muho is seeking to review,

1   that perhaps you provide another format for the Government to

2   copy those documents.

3       MR. HARRIS:  From my point of view, in my office, I

4   have no technological ability to do that.  I don't -- I don't

5   know how those hard drives were first created and I have no

6   ability to do that.

7       I mean, if I could, I would happily do that.  I

8   just -- I don't have any capability within my office or any of

9   my employees who would have any understanding of how to do

10  that.  So that's the best answer I can give.

11      You know, I was hopeful that the marshals, when I

12  first gave the file, could assist in that.  And then the Board

13  of Prisons explained to me it's just impossible.  They won't

14  accept it.  So I kind of notified the Court and I'll leave it

15  to you to direct what you think is best.

16      THE COURT:  Well, is there a way, instead of two

17  actual hard drives, to place these on discs?

18      MR. MCLAUGHLIN:  There is not, Your Honor.

19      THE COURT:  Why is that?

20      MR. MCLAUGHLIN:  There's so much -- what the hard

21  drive is -- there's so much material on all of the computers,

22  that's the only way you can fit it all.  You would need three

23  hard drives.  We actually got it all on one because it's a

24  two-terabyte hard drive.  There was so much material on

25  Defendant Muho's computers.

```
 1            My solution to this be would be very simple.
 2   Mr. Harris claims that he's been able to review this
 3   information.  He hasn't looked at all of it, but he's looked at
 4   most of it.  He can come down to the FDC, sit down with
 5   Defendant Muho, have his computer there, and they can go
 6   through the evidence together.  He doesn't have to provide a
 7   copy to FDC for Mr. Muho to have in his own custody.  There's a
 8   way around the issue, Your Honor.
 9            THE COURT:  Is there a reason why that is not
10   possible, Mr. Harris?
11            MR. HARRIS:  Well, as -- as the US Attorney just
12   described, the voluminous nature of the material would make it
13   impossible for me to just simply go and convey all the
14   information on there.  To me, a more viable solution would be,
15   if possible, that the Court somehow provide an order to the
16   Board of Prisons, in the format that it's in, that they allow
17   Mr. Muho access to it.
18            I understand there's a separation between the Court
19   and the prison system.  That, to me, would be more viable.  He
20   needs that information at all times.  I'm limited from the
21   amount of time that I could spend there.  They have cut-off at
22   8:00 p.m.  It wouldn't be a reasonable solution.  What it would
23   do is require all my time to be there every week from now until
24   the trial to go through each of these documents.  He should
25   have the hard drives in his own defense.  He should be able to
```

1    decide what to review at what particular times, instead of

2    relying on me to spoon feed him.  I don't think that's a

3    reasonable solution to the problem we have.

4          Thank you, Your Honor.

5          THE COURT:  But as I understand the challenge, the

6    hard drives need to be viewed through a computer that does not

7    require some type of a password or a mechanism in order to

8    bypass the password protection component; is that correct?

9    Because in other words, I don't -- I'm not privy to the hard

10   drive.  The hard drive is now with whom?  With you, Mr. Harris?

11         MR. HARRIS:  They're in my office.

12         The password's not -- I'm sorry.

13         THE COURT:  So when you -- when you have the -- just

14   explain to the Court.

15         MR. HARRIS:  Sure.

16         THE COURT:  When you use the hard drive, how do you

17   access the documents on your computer?

18         MR. HARRIS:  You can -- the password's not an issue as

19   far as viewing the documents, but the password creates a -- my

20   understanding, from my assistant who is a software engineer,

21   creates an impossibility to copy it, to actually convert it

22   into the disc or some other satisfactory alternative.  That was

23   explained to me why the hard drives can't be converted.  As for

24   the viewing, the password is not anything that would be at

25   issue for Mr. Muho to actually access and review the documents

in it, but it does create a problem as far as converting a hard

drive into CDs or some other cassettes for him to view it.  It

was explained to me that that's impossible given the encryption

issues that are within the hard drives themselves.

THE COURT:  But based on your statement in your

pleading, you're saying that FDC refused to even accept them.

Putting aside the issue of the ability to copy, the ability to

view the hard drives is not an issue.

MR. HARRIS:  Well, the problem is that I didn't really

get a full explanation.  The thing is, when I first went before

we had the issue with the marshals, the gentleman, when I

walked in, said:  "These hard drives are never accepted.  They

have to be reviewed by administration.  You have to keep them

in a locker."

Then when I dealt with Ms. Greene, the supervisor, the

plain answer I got was that the hard drives are unacceptable in

their format.  And I emailed her and I explained it's my

understanding from my office that they can't be converted any

other way.  He has trial.  I have a court order.  If there's

some way that the Board of Prisons can expedite this and review

it and make a determination he can get it, it would avoid a lot

of problems.  And then I got a subsequent email, just:  "Come

pick them up."  I never got any further answer on that.

Ms. Greene was going out.  They gave me the hard drives and I

was left with that answer.  I don't have any better reasoning

1    from the Board of Prisons.

2            I just think that the hard drives in and of themselves

3    are not allowed into the prison, was the impression I got.

4    Although I didn't get a more specific answer from anybody

5    there.

6            THE COURT:  Is it possible -- and I'm asking the --

7    someone who can determine whether there is someone from FDC

8    that could provide some guidance as to why the hard drives are

9    not being allowed to be received by Mr. Muho in the facility?

10   And if there is some type of a directive that the hard drives

11   are not accepted, then perhaps a procedure in which Mr. Muho

12   can review the hard drives over the course of a day in a room

13   perhaps over here at the courthouse.  So that's my request.

14           MR. HARRIS:  Yeah.  I think the person that could

15   answer that would be the attorney counsel of the Board of

16   Prisons that emailed me after reviewing my request and

17   instructed me to come pick them up.  She's probably in the best

18   position, and I do have her name in my phone in my email.  If

19   we are coming back tomorrow, which it's unclear right now, she

20   would -- that person would be the best person to answer that.

21   And if you want, if there's a document, I can email it to her

22   and ask her to kindly come to the courthouse and explain.

23           THE COURT:  Well, it's just unclear from what you're

24   telling the Court.  First, you're telling the Court that they

25   refused to accept them.  And second, you're telling the Court

1   that they would accept them, but they need to ensure that they

2   are inspected as any other documents would be inspected.

3          So I'm not quite clear whether there's an absolute

4   prohibition against the introduction of a hard drive once it

5   goes through the proper channels through FDC.

6          MR. HARRIS:  There were two different people I spoke

7   to.  One was the guard that you go through the security.  He

8   seemed to have information that believed they could eventually

9   be brought in.  The attorney counsel for the Board of Prisons

10  just told me to come pick them up.  So got two different

11  explanations at two different days.  Neither of them really

12  pinned down what the problem was.

13         I just -- you know, I know there's an issue with hard

14  drives.  I just -- they just didn't explain to me if they

15  eventually can make it through the process or they're just all

16  eliminated from being allowed in.  I -- I never got an answer

17  on that.

18         THE COURT:  And Mr. McLaughlin, sir, how many

19  documents are on these hard drives?

20         MR. MCLAUGHLIN:  I don't really know, Your Honor.  I

21  haven't looked at them in depthly, and the agents say that

22  there's so much information that they haven't looked at it in

23  depthly.  I remember specifically Mr. Muho claiming that he

24  didn't need to look at these because he knows -- they're his

25  computers and he knows what's on there.

1          What the Government's concerned about is this is just

2     another con job by the Defendant to delay proceedings now.  We

3     spent last week hours in this courtroom where Mr. Muho stated

4     he wanted to go to trial, he had reviewed all the documents, he

5     was ready to go.  And here we are, the Government now is

6     getting ready.  We're flying witnesses in, Your Honor.  We're

7     creating an exhibit list.  We filed a witness list.  We're

8     ready to go to trial.

9          So I would say this:  I think there's a mechanism by

10    which Mr. Harris and Mr. Muho can collaborate together and

11    Mr. Muho can view this evidence.  If -- worst-case scenario

12    what we can do, Your Honor, is reserve a Grand Jury room.  The

13    Government will do something to provide a computer with the

14    hard drive so Mr. Muho can sit there.  We've going to have to

15    get two agents to sit there and babysit him.  For six hours, he

16    can look at all the evidence that he wants.

17         The only thing the Government's going to put in and

18    show to the jury from the computers are this -- I tasked our

19    case agent, Inspector Arena, with taking a look at the

20    two-terabyte hard drive, which contains really three separate

21    entities.  It's laptop number 1, laptop number 2, and then

22    these -- this tower of information which we believe is the hard

23    drive of his former employer.

24         But I tasked him with looking at just what was on the

25    two computers.  And specifically what I tasked him with was

1    just pulling off the images, photographs.  And that's the only

2    thing that we're ever going to show the jury.  So in terms of

3    anything else that might be on there, I'm not really familiar

4    with it because at the end of day there's so much material on

5    there and we have so much other evidence it wasn't really

6    necessary, in my opinion.

7         THE DEFENDANT:  Your Honor, if I may address this --

8    and what is up with this "con job" comment?  This is not a con

9    job.  I -- the -- the -- this person should -- should -- should

10   just, you know, be a little more respectful.

11        THE COURT:  Mr. Muho, I'm going to stop you, sir.

12   Because right now we're addressing your readiness for trial,

13   and you have advised the Court that you're not able to view all

14   the documents, and the Court wants to ensure that all of the

15   discovery -- even though you've advised that you reviewed or

16   you already know what's contained, right now, we're past --

17   we're past the issue and now it's the accessibility of these

18   hard drives.  So --

19        THE DEFENDANT:  Your Honor, it's -- the hard drive --

20   it is not the information in the hard drive that -- that causes

21   me to want to postpone trial.  It is -- it is -- it is

22   mainly -- there are witnesses that I would like to -- there are

23   emails that I would -- I -- I need that show communications

24   with others that -- that there are not in -- that are not in

25   those computers.  There are emails.  There are documents.

```
 1    There are witnesses.  There are --

 2              THE COURT:  Mr. Muho, it's quite clear to Court that

 3    you don't know what's contained on those hard drives.

 4              THE DEFENDANT:  It's my computers.

 5              THE COURT:  Because you have advised the Court that

 6    you have not had an opportunity to review them.  So right now,

 7    I'm going to ask that you have a seat and let's bring someone

 8    in from FDC that can provide some direction.

 9              And Mr. McLaughlin, if there is a -- I know that there

10    is a room for use.  Let's make the arrangements for Mr. Muho to

11    have access.

12              MR. MCLAUGHLIN:  Very well, Your Honor.  I don't know

13    how quickly I can do that.  Perhaps tomorrow, but I can get

14    working on it as soon as we get out of this hearing.

15              THE COURT:  And Mr. Harris, you have the hard drives

16    with you, sir?

17              MR. HARRIS:  I have them in my office, yes.

18              MR. MCLAUGHLIN:  Well, we have a copy, Your Honor.  We

19    can use our copy.  We can have a computer there -- a standalone

20    computer for him to go look through everything that he wants to

21    look through.  And then when it's all over, we'll take back our

22    computer and our hard drive and we'll go from there.

23              THE COURT:  All right.  So let --

24              MR. HARRIS:  I'm sorry, Your Honor.  Just because it

25    was a little clear -- a little unclear right there.  Do you
```

```
 1    still want an explanation from somebody at FDC as to the hard

 2    drives or ...

 3              THE COURT:  Well, I think the --

 4              MR. HARRIS:  I mean, I'm happy to do that.

 5              THE COURT:  The important aspect is I'm not going to

 6    force on FDC an obligation that they accept these hard drives

 7    if they weren't retained and they're not going through an

 8    inspection as FDC would require.

 9              If you were advised by someone to take back the hard

10    drives because of -- and I'm not sure of the communication you

11    had with that individual -- then obviously they are not there

12    to go through the routine channel.  You have them.

13              MR. HARRIS:  Right.

14              THE COURT:  So one of two things can happen.  You can

15    either be there in the morning for Mr. Muho to -- and I'd like

16    to see if perhaps, rather than waste the rest of this day, is

17    maybe see if we can make that happen today, Mr. Harris, with

18    you just obtaining the hard drives that are in your office and

19    Mr. Muho can begin reviewing what's on those hard drives.

20              There were also documents that were in that file.

21    Were those given to FDC or did you take back everything?

22              MR. HARRIS:  No.  All the hard copy papers and all the

23    CDs were properly delivered.  The only things that were

24    returned to me are the two hard drives.

25              THE COURT:  Okay.  All right, then.
```

```
 1            MR. MCLAUGHLIN:  And, Your Honor, I would only ask if
 2    we could get a court order for the Government's sake directing
 3    the marshals to expedite this request as soon as possible.
 4    Typically, they have a 72-hour requirement.  I'd like to be
 5    able to do this, if I can get a room reserved tomorrow,
 6    tomorrow.
 7            THE COURT:  Is there someone that we can -- we can
 8    bring in -- Scott, can we find out if there's somebody from FDC
 9    that we can bring in to explain the circumstance and see if
10    there's an issue that we're not aware of.  And I'm not certain
11    who I should look to, the court security officer or someone
12    that --
13            MR. HARRIS:  I have the name of --
14            THE COURT:  -- from FDC.
15            MR. HARRIS:  Yeah.  I have the name of the attorney
16    counsel.  That would probably be the appropriate person.  The
17    email exchange that I had with her is actually an exhibit to my
18    filing.  Just -- I know you said you're not really clear what
19    was exchanged.  It's just in there.  But I can give you her
20    name and she's the appropriate person that will best explain
21    this because my request was sent to her and then she reviewed
22    it and just emailed me:  "Come and pick it up."  That was it.
23    That's all the email says.
24            But I'll give you her name and her contact
25    information.  She's probably the best person, Your Honor, to
```

1    explain why she didn't say anything further.  So I don't have

2    an answer, but I do have her name and her contact information

3    in my email in my phone.

4        THE DEFENDANT:  And Your Honor, I -- I -- I would

5    prefer very much so not to -- if I -- if I need to forego

6    reviewing the documents, I will do so, if I need to -- if I

7    have to be brought into the courthouse and be put into a room.

8    It's just -- the hassle is too much.  I know the documents, as

9    I said before.  It would be great to have these -- to look at

10   these documents when I can, but my -- my primary concerns are

11   that I am unable to contact witnesses, access other documents,

12   and it is not about the documents on the computers.  Although

13   there are a few, I can find them in -- I can -- I can -- I -- I

14   can look and get those documents in other ways.

15       I would rather not waste time having to be brought in

16   shackles into the courthouse to look at these documents.  So I

17   would -- I would forego -- I thank the Government very much for

18   the offer.  I would forego that -- that -- that option.  If I'm

19   unable to get access to the hard drive, that's fine.  My reason

20   for delay is not my -- those documents.  It's my ability to

21   contact witnesses, my ability to get access to documents

22   outside.

23       And to be honest, it's just -- going to trial -- what

24   I'm looking to do here is appeal the bond -- the bond refusal

25   and wait until I am able -- being able to defend myself and go

1    in front of a jury while I'm in shackles, it's just -- it --

2    it -- it -- it -- it -- it -- it -- it makes one feel as if --

3    as if I'm already a criminal.  It's just -- it -- it -- it --

4    it -- it -- it -- it puts me at a significant -- huge

5    disadvantage that I believe the best practice for my defense

6    would be to wait until I get an -- an -- an appeal on the bond

7    issue before I can proceed to trial.

8          THE COURT:  Mr. Harris, addressing Docket Entry 140,

9    it appears that the response by JJ Greene, the Assistant Case

10   Management Coordinator, was with regard to a form that was not

11   completed.

12         MR. HARRIS:  Right.  I submitted that.

13         THE COURT:  It says:  "Place a copy of the form in the

14   package," and I don't see any further communication once that

15   was done.

16         MR. HARRIS:  There is a second communication.  I

17   submitted that.  And then I got an email to come pick it up.

18   I'll give you her name.  Hold on.

19         THE COURT:  I see a picture of the envelopes.  I see

20   your certification.

21         MR. HARRIS:  That's my first filing.  And then I filed

22   a second filing when they asked me to return it.  You're

23   looking at the first compliance, where I notified the Court

24   that I dropped everything off.  And then I did a second filing

25   to inform the Court of this problem with the hard drive.

```
 1            THE COURT:  No.  I'm looking at Docket Entry 140, your
 2   Notice of Non-Compliance.
 3            MR. HARRIS:  Well, I believe it's in there that -- I
 4   saw it.  I don't have it in front of me, but the email -- I'm
 5   just going to give you her name right now.  There was -- there
 6   was a subsequent email.  I submitted the forms.  And then it
 7   was sent to the attorney counsel that I described.  I'll give
 8   you her name.  And she emailed me back:  "Come pick it up,"
 9   after I submitted the forms.
10            THE COURT:  Yeah.  That, I'm not -- I'm not seeing.
11   Was that filed with the Court?
12            MR. HARRIS:  It should be.  I saw it --
13            THE COURT:  Well, when you say "it should be," where
14   would I find it?  I have your Docket Entry 140 that you have
15   attached three documents.
16            MR. HARRIS:  I believe I saw it in the exhibit that we
17   filed.  I just -- I don't have it in front of me, but I can
18   tell you the woman's name right now.  And the email, I have it
19   right here.  She just said:  "Come pick it up," after I
20   submitted -- I emailed the application, and she said:  "Come
21   pick it up."
22            Here.  Shannon Debus is her name, Your Honor.  She is
23   the -- she is the attorney advisor to Federal Bureau of
24   Prisons.
25            THE COURT:  That's not contained in your filings.
```

```
 1            MR. HARRIS:  I have her phone number and her email
 2     here.
 3            THE COURT:  Why don't you see if you can get her on
 4     the phone and let's find out what the issue is.
 5            MR. HARRIS:  Okay.
 6            THE COURT:  Because I don't -- I don't see --
 7            MR. HARRIS:  I have her phone number here.
 8            THE COURT:  I don't see anything filed by you that
 9     references her.  The only filing is with regard to Ms. Greene
10     or JJ Greene.
11            MR. HARRIS:  Shannon Debus-Horn, a hyphenated last
12     name.  You want me to call her?
13            THE COURT:  Yeah.  Didn't you speak with her?
14            MR. HARRIS:  No.  I got an email from her.  I spoke to
15     Ms. Greene.
16            THE COURT:  Well, where's -- where's the -- that's
17     what I'm not seeing.  What does the email say?  Why don't you
18     read it to us.
19            MR. HARRIS:  All right.  Hold on.  I have to find the
20     email.  She said:  "Just come pick it up."  I know that's in
21     the filing somewhere.
22            Ms. Greene said first:  "The hard drive will be mailed
23     back to you at the address -- at the address below," after I --
24            THE COURT:  Right.  That's contained.  But who's the
25     other individual that you stated you had a conversation with?
```

```
 1              MR. HARRIS:  Here.  Then after that -- right.  I

 2      emailed her back.  I said, you know:  "I don't -- want to avoid

 3      delay.  Please don't mail it to me."  And then here's -- I'll

 4      read to you what -- email I got from the attorney counsel:

 5              "Good morning, Mr. Harris.  I left you a voice mail

 6      regarding the issue you're having regarding the hard drive you

 7      attempted to leave for Mr. Muho at FDC Miami.  To avoid the

 8      delay in mailing it to you, I want you to know you can pick up

 9      the drive at the institution.  If you have time that works for

10      you, before 4:00 p.m. today or Monday.  Please let me or

11      Ms. Greene know and have the front lobby officers call for

12      Ms. Greene when you arrive at the institution."

13              I went that same day before 4:00 p.m.  Ms. Greene came

14      out, gave me the hard drives, and said she had to go somewhere.

15      And I had no further discussions with her other than her giving

16      them to me.

17              That's from Ms. Debus-Horn, the attorney advisor.  I

18      have a phone number:  (305)259-2513.  That email is -- I do not

19      believe is in the filings.

20              THE COURT:  Right.  It still doesn't answer the

21      question as to why FDC didn't accept the hard drive.  And I'm

22      not seeing anything contained within anything you filed with

23      regard to an issue relating to encryption and a password

24      protection.  So who would have told you that they weren't

25      accepting the hard drive in FDC?
```

```
 1          MR. HARRIS:  It was Ms. Greene.  Ms. Greene told me.

 2     She's a supervisor there -- and then told me to come pick it

 3     up.  And then I filled out the form and I sent an email, a

 4     lengthy email, saying, you know, that's the only format -- I

 5     can't -- because we had a discussion about discs versus hard

 6     drives.  The form I have, I specifically wrote:  "Two hard

 7     drives, 15 discs."  She told me to come pick up the hard

 8     drives.  And I said, you know:  "There's no other way to change

 9     those."

10          So in my email, I explain to her why I have no way to

11     change those.  Those hard drives can't be submitted in any

12     other format.  And then Ms. Debus just told me to come pick

13     them up and I never got any further explanation.  So I don't

14     know.  I don't know the answer.

15          THE COURT:  Okay.  We're back to where we started.  So

16     if we can find out if there's someone at FDC that can answer

17     the question as to why they won't accept the hard drives once

18     it goes through the proper inspection protocols.

19          Thank you.

20          MR. HARRIS:  Thank you, Your Honor.

21          All right.  So while we're doing that -- and it's

22     obvious to the Court that, with the exception of the paper

23     documents, Mr. Muho was not provided two hard drives for review

24     over the weekend.  Let us continue to address the motions that

25     are before the Court.  And we were addressing Docket Entry 122,
```

1    and that's when we --

2            MR. MCLAUGHLIN:  Your Honor -- and I can enlighten the

3    Court on a couple issues, too, especially in regards to

4    Mr. Muho's claim that he now is not ready to go to trial.  I

5    would just note for the Court one of the factors the Eleventh

6    Circuit makes or asks courts to address in allowing defendants

7    to go pro se is to ensure that they're not manipulating the

8    events of trial.  And I think that's exactly what he's doing

9    now.

10           And the reason I say that is this:  If you look at the

11   Government's notice -- and I bullet point a variety of

12   matters -- 99 percent of that information, Your Honor, which we

13   noticed up under 404(b), was provided in the very first

14   discovery disc, a disc which Mr. Muho got over the weekend in

15   our -- in our case, and that was turned over in July of 2016.

16           All of the information regarding the HSBC-Monaco

17   unlawful wire transfer was turned over in our first response.

18   The -- if we go through here, the Amscot events, where he's

19   using the IDs of various victims, all turned over in first

20   discovery response.  The Wells Fargo, during November 2013,

21   turned over in the first response.  Barclays, turned over in

22   the first response.  Capital One, the first response.

23           As we go down here, again, Barclays the first

24   response.  Again, the matters involving his apartment, the very

25   last prong, you know, we addressed that at the suppression

1     hearing.

2              So none of this is new to Mr. Muho.  He's had the

3     evidence that relates to these allegations and this conduct for

4     eight months.  And so it's really hard for the Government to

5     sit here and listen to someone complain that they are now not

6     ready to go to trial, have not had a chance to review these

7     allegations, when they've told the Court repeatedly last week,

8     and they've been in -- and this information's been in their

9     possession for eight months -- that they are ready to go to

10    trial last week, they've seen everything, they're ready to go,

11    they want a speedy trial.  And now, suddenly, when it becomes

12    very real, when witness lists are getting filed, jury

13    instructions are getting filed, we're eight days from trial,

14    that they're suddenly now not ready.

15             It's the Government's position that Mr. Muho has

16    laid -- has made his bed.  He's going to lay it in.  We're

17    ready to go to trial on the 21st, Your Honor.

18             THE DEFENDANT:  Your Honor --

19             THE COURT:  Mr. McLaughlin, let me say that I

20    understand the Government's position.  But the Court's concern

21    is what is readily apparent, and that is that not all of the

22    discovery has been accessible to Mr. Muho.  And while it may

23    have been contained on -- or, as you say, 99 percent was

24    provided in disc format, there remain two hard drives, to which

25    the Government cannot articulate exactly what's contained on

1    those hard drives and the Court does not feel comfortable that

2    one hundred percent of the Government's evidence has been

3    viewed by the Defendant.

4           MR. MCLAUGHLIN:  Well, these are the same concerns,

5    Your Honor, that I raised repeatedly last week that Mr. Muho

6    had no problem with.  I can tell the Court -- I can you exactly

7    what's on those hard drives.  It's the mirror image of

8    essentially two computers and another hard drive that was found

9    at his house.  It's very clear.  There's a Lenovo laptop, a

10   Apple laptop, and there was essentially a computer tower, which

11   had a whole bunch of other hard drives.  That's what's on the

12   big hard drive that Mr. Muho and Mr. Harris have.

13          So just to let the Court know what's on there, that's

14   exactly what's on there.

15          THE COURT:  All right.  Mr. Muho?

16          THE DEFENDANT:  It would be great to -- as I said

17   repeatedly, it would be great to have that hard drive.  That is

18   not the basis of my request to delay trial.  The bases of my

19   request to delay trial are email communications, contacting

20   witnesses, and preparing cross --

21          THE COURT:  I'm not certain what you're referring to.

22   "Email communication."  Exactly what is it that you're

23   referring to as far as email communication --

24          THE DEFENDANT:  Sure.

25          THE COURT:  -- that has not already been provided by

1    the Government or is now outstanding by the Defendant by way of

2    any request?  Because it's not apparent from the Court.

3         THE DEFENDANT:  Sure.  Your Honor, first there is the

4    email communications between myself and HSBC-Monaco, which show

5    the transaction as purported, as really it occurred.  There

6    are --

7         THE COURT:  All right.  Then let's start with that.

8    Email communications between the Defendant and HSBC-Monaco.

9    Has that been provided by the Government?

10        MR. MCLAUGHLIN:  Absolutely, it has.

11        THE COURT:  All right.  Then what's the other issue?

12        THE DEFENDANT:  The other one would be email

13   communications between myself and my -- my -- my -- my former

14   attorney, Neil Brickman, in New York, where he advises me.  I

15   believe that is relevant to the -- to the counsel -- a reliance

16   on counsel defense, where he advises me to make the transfer

17   after learning all the relevant information.

18        There are email communications between myself and an

19   attorney.  I -- I don't even remember his last name, to be

20   honest -- at -- out of a law firm in -- in -- in Los Angeles,

21   where I -- I -- I -- I am prepared to move forward.  And I

22   offered that law firm one million dollars as a retainer to pay

23   off that retainer for the fund's benefit, which would -- which

24   would -- which would have -- which would -- which would

25   evidence that I was acting in the -- in the fund's behalf.

1          There are email -- there are retainer agreements

2     between myself for the company's behalf and a number of law

3     firms, including law firms in the British Virgin Islands and in

4     the Cayman Islands.  So there's an endless amount of

5     information that -- and plus, in addition, I would also like to

6     contact those witnesses and see if those witnesses are willing

7     to come in.  It would make my defense stronger, I believe.

8          Even though the email communication and even though my

9     testimony itself -- what I learned at the suppression hearing

10    is that even though my -- in my belief, my evidence, my -- my

11    testimony itself, would be grounds for -- for -- for -- for

12    accepting certain facts, clearly, having things like a lease

13    agreement or the evidence of others would -- would -- would

14    make my -- my -- my testimony stronger, which I believe would

15    benefit me and allow me to provide a full defense.

16         That is the reason why I'm asking for a delay.  It is

17    not because I have not reviewed the evidence of the Government.

18    I have reviewed the evidence of the Government.  I have not

19    been able to have the computers, but that's it.  That's my

20    request.

21         This guy continues to -- to -- to misstate what my

22    requests are.  It is not a gaming.  If the Court wants me to

23    move forward with trial, I will move forward with trial.

24    I'm -- I'm simply trying to get justice done.  And the way to

25    do justice is for me to actually be able to put forth my

```
1      defense in a manner which I believe is best.

2              Thank you, Your Honor.

3              THE COURT:  All right.  So Mr. Muho, you have advised

4      that the items that you are waiting for are in the nature of

5      your defense.  So you have specifically sought documents,

6      including email communication from an attorney who advised you

7      to make a transfer, an attorney who advised you with regard to

8      certain actions, and a retainer agreement between you and law

9      firms.

10             THE DEFENDANT:  Correct.

11             THE COURT:  And those are the documents that you are

12     either waiting for or you've obtained because these issues have

13     been existing in this case for quite some time.

14             So perhaps you can advise the Court.  Have you issued

15     subpoenas relating to these documents?  What is it that you're

16     waiting for that would require a delay of this trial?  Because

17     from what you have advised the Court, putting aside the

18     question of whether, in fact, these documents would be

19     admissible, if these are items that you are requesting as part

20     of your defense, are you waiting for those documents, sir?

21     Have you requested those documents?

22             THE DEFENDANT:  They are located in my emails.  I

23     would -- all I would need to do is have someone, or myself,

24     ideally, go into the Google emails.

25             THE COURT:  Have you done that, sir?
```

```
 1              THE DEFENDANT:  I -- I am -- I'm still waiting to
 2      speak with my New York attorney.  It's very difficult to
 3      actually --
 4              THE COURT:  Have you spoken with your New York
 5      attorney?  I mean, these are issues that have been present in
 6      this case since the filing of the Indictment.  So what is it
 7      that you need to do to properly prepare for trial?  You've
 8      referred to three areas relating to your relationship with your
 9      attorneys.
10              So what efforts have you made to obtain those email
11      communications or those agreements that you speak of?
12              THE DEFENDANT:  I -- I -- my -- my -- my New York
13      attorney has -- or believe I have given him the information
14      which allows him to have access to those email accounts.  I --
15      I -- I --
16              THE COURT:  And when was that done, sir?
17              THE DEFENDANT:  It was done about two weeks ago.
18              And I am still waiting -- I'm waiting for the
19      counselor at FDC to schedule a call between me and my New York
20      attorney, which would allow me -- because I don't have
21      enough -- we only get a certain amount of minutes at the FDC.
22      So I'm hoping to get that in order to be able to speak with him
23      and walk him through --
24              THE COURT:  So in the past two weeks, you have not
25      asked Mr. Harris, who just until recently was your attorney, to
```

```
 1    speak directly to this attorney to access these documents that

 2    you need?

 3              THE DEFENDANT:  I -- I -- I -- these are confidential

 4    matters.  I -- I -- I do not -- I do not -- it's not -- it's

 5    not my practice for me to put people who do not know one

 6    another into contact with one another in order for them to --

 7    and then directing -- there's too much relay -- too much

 8    relaying.  Things get lost.  For example, clearly, with the

 9    hard drives --

10              THE COURT:  So is the answer that you have not?

11              THE DEFENDANT:  I have not.

12              THE COURT:  You have not asked Mr. Harris to do that,

13    sir?

14              THE DEFENDANT:  I have not.  I have not.

15              THE COURT:  And, in fact, these confidential documents

16    that you're speaking of are documents that you intend to use at

17    the time of trial, correct?

18              THE DEFENDANT:  Correct.

19              THE COURT:  All right.

20              THE DEFENDANT:  In addition --

21              THE COURT:  What else, sir, do you need to properly

22    prepare for trial?

23              THE DEFENDANT:  Again, I don't -- I don't understand

24    why -- why the mere fact that I would like to have a -- be out

25    on bond and prepare for trial --
```

```
1            THE COURT:  My question is very specific.  What else

2      do you need to properly prepare for trial?

3            THE DEFENDANT:  To be free, I would say.  To be -- to

4      be able to be on bond.  That would --

5            THE COURT:  Is there anything else?

6            THE DEFENDANT:  I would also need to communicate --

7      to -- to -- to discuss -- to talk directly to the -- but

8      that's -- that's -- that's mainly -- that would -- that's the

9      underlying thing.  And that's my -- I believe in my -- in my

10     situation, for the best -- for my best interest, would be for

11     me to have a resolution on the bond issue before moving on to

12     trial.

13            I'm happy to move forward to trial on the merits

14     within a week.  I just believe that for my best defense it

15     would be -- it would be unwise for me to do so without having

16     the bond -- the bond issue unresolved.  And what I mean by that

17     is if I need to appeal -- appeal that issue --

18            THE COURT:  Putting aside the bond issue, Mr. Muho,

19     have you advised the Court of everything that you need in order

20     to properly prepare for trial?

21            THE DEFENDANT:  Yes, I have.

22            THE COURT:  So that includes all the email

23     correspondence with your attorneys, as well as the retainer

24     agreements between you and certain law firms?

25            THE DEFENDANT:  Correct.
```

```
 1              THE COURT:  Anything else, sir?

 2              THE DEFENDANT:  That's it, Your Honor.

 3              THE COURT:  All right.  Let us proceed with the

 4    pending motions.  It does not appear that the needed discovery

 5    relates to the preparation for argument on these motions that

 6    have been pending for quite some time.

 7              Addressing Docket Entry 122.  Mr. McLaughlin?

 8              MR. HARRIS:  I'm sorry, Your Honor.

 9              May I just be heard on one point?  I know there's

10    discussion about HSBC-Monaco documents that Mr. McLaughlin has

11    indicated on a couple of occasions have been turned over.

12    Since it's at issue right now, before the next motion, I didn't

13    see those.  Mr. Muho informed me that he doesn't have that

14    material.  I would simply ask -- I was going to email after the

15    hearing, but I would just like to clarify it on the record.  If

16    I can get another copy from Mr. McLaughlin as to what he's

17    referring to as the HSBC -- HSBC-Monaco documents, I could

18    immediately expedite that to Mr. Muho before --

19              THE COURT:  Can you advise the Court when this

20    discovery was provided to the Defendant.

21              MR. MCLAUGHLIN:  It would have been in early January,

22    Your Honor.  I think we addressed that last week.  I don't know

23    the exact discovery response.  I want to say it was the fifth

24    one.  I think I addressed it in the speedy trial issue

25    regarding our foreign records request motion.
```

```
 1            THE DEFENDANT:  Which disc would that be?
 2            MR. MCLAUGHLIN:  I don't think I have a copy of that
 3     with me.
 4            MR. HARRIS:  I know Mr. Muho is bringing that up as an
 5     important point, and I haven't seen it and he hasn't seen it.
 6     I just -- I didn't want to have to deal with it after the
 7     hearing and maybe delay it any further.  If I can get a copy,
 8     just to be clear, I will immediately bring it to Mr. Muho so
 9     that's a non-issue.
10            Sorry to interrupt, Your Honor.
11            THE COURT:  Are we ready to proceed on Docket Entry
12     122, the Government's motion in limine?
13            MR. MCLAUGHLIN:  Just so the Court's aware, what I
14     will do to help the Defense is make another copy of that
15     response and I will leave it on the eighth floor of my office,
16     and Mr. Harris can come pick it up.
17            MR. HARRIS:  Thank you.
18            THE COURT:  All right.
19            MR. MCLAUGHLIN:  I would just note, Your Honor, in
20     our -- in our response, what you see is a lot of the same
21     victims that were charged in specific counts in our 404(b)
22     notice.  And I think it's relevant for this point, and this
23     point only -- well, not only.  But a lot of what Mr. Muho does
24     in this case is impersonate other people.  He does a lot of
25     things online.  And what these items is do is definitely tie
```

| | |
|---|---|
| 1 | in, and then, in fact -- and it goes really to the issue of |
| 2 | intent to defraud, but also identity, that Mr. Muho was, in |
| 3 | fact the person committing the fraudulent acts charged in this |
| 4 | case regarding specific victims. |
| 5 | I think I raised that issue in my written pleading. |
| 6 | But if the Court has any additional questions, I'll be happy to |
| 7 | answer them. |
| 8 | THE COURT:  Are you standing on the four corners of |
| 9 | your motion? |
| 10 | MR. MCLAUGHLIN:  I am, Your Honor. |
| 11 | THE COURT:  A response to the Government's motion in |
| 12 | limine to preadmit evidence under Federal Rule of Evidence |
| 13 | 404(b) claiming that it is inextricably intertwined. |
| 14 | Mr. Muho? |
| 15 | THE DEFENDANT:  I simply would like to reserve my |
| 16 | right to oppose anything that is prejudicial -- unduly |
| 17 | prejudicial to the jury at the time of presentation. |
| 18 | THE COURT:  And do you have an argument in response, |
| 19 | sir?  The Court did advise the parties that these motions were |
| 20 | to be heard today. |
| 21 | THE DEFENDANT:  I do not, Your Honor. |
| 22 | THE COURT:  Anything further Mr. McLaughlin? |
| 23 | MR. MCLAUGHLIN:  Not from the Government, Your Honor. |
| 24 | THE COURT:  As the evidence the Government seeks to |
| 25 | introduce appears to be inextricably intertwined with regard to |

1    the critical issue in this case -- and that is the Defendant's

2    intent -- the Government's motion is granted.

3           Addressing the Government's motion in limine to

4    preadmit the business records, is there any objection to that?

5           THE DEFENDANT:  No, Your Honor.

6           THE COURT:  The motion is granted.

7           Docket Entry 128 has been withdrawn by the Government,

8    their request to continue the trial for two weeks, which leads

9    us to Docket Entry 131, the Defendant's motion for bond

10   modification.

11          Mr. Muho?

12          THE DEFENDANT:  Your Honor, at -- before Magistrate

13   Patrick Hunt, an agreement was made between the Government and

14   my attorney at the time for pretrial detention.  Magistrate

15   Patrick Hunt rejected that agreement, stating that if -- if --

16   if -- if I am to order a pretrial detention, some sort of a

17   hearing must be held or something along the lines of:  "We just

18   don't do that," but what we do to make it the same, to -- to

19   equal that, is that we issue a bond of $250 -- a corporate

20   surety bond of 250,000.  That is on the record.  Mr. --

21   Magistrate Hunt stated that that is an unreasonable bond, that

22   the bond is one that, speaking to me directly, he said:  "You

23   are not expected to make in any way."  And that it's -- and

24   repeated repeatedly that this was an unreasonable bond.  And --

25   and -- and -- and -- and -- and -- and it is an unreasonable

1   bond, clearly.

2          So -- so what I'm asking the Court is to set a

3   reasonable bond that -- that will allow me to -- to be -- to be

4   able to defend this case, would allow me to have my presumption

5   of innocence, would allow me to prepare for the case.  There --

6   and -- and I -- I believe I've -- I've offered more than a

7   reasonable offer to the Court, of which -- which is -- goes in

8   addition to just mere release.  I've actually offered to be on

9   electronic monitoring -- both electronic monitoring and home

10  arrest, while -- while -- while -- while defending this case.

11         And I've stated repeatedly, I have significant

12  interest in -- in defending this case.  And -- and -- and --

13  and -- and -- and -- on the merits.  The more significant

14  charges of -- of the -- of the -- of the -- of the -- of the --

15  of the Indictment so-called, I've -- I've attacked those

16  charges.  I believe, as I've stated, the evidence is flimsy at

17  best and I can prove beyond a reasonable doubt that -- my

18  innocence, especially to -- to -- to those -- to the -- to the

19  major counts.  And I believe that it's -- it's simply unfair

20  and unreasonable for me to be forced in -- in incarceration,

21  where I've been for nine months now, until -- until trial,

22  where I am -- I'm -- I'm then given the opportunity -- which

23  would be hampered significantly -- to prove my innocence at

24  that time.

25         That's it, Your Honor.

```
 1              THE COURT:  Response by the Government?

 2              MR. MCLAUGHLIN:  Your Honor, I would just note this

 3    motion is specifically a redressed version of his motion to set

 4    a reasonable bond.  And I would let the Court know

 5    specifically, Mr. Muho has a pending state arrest warrant for

 6    fraud charges based on his arrest in January of 2016, when he

 7    fled the district and didn't show up for his arraignment in

 8    state court.  So if the Court was going to release him on bond,

 9    he would go right to state court.  He is a critical flight risk

10    in our opinion.  He is facing, if all the guideline

11    enhancements apply, 20-plus years.  He stole over $2 million.

12              During this case, he used various aliases, different

13    identities.  He has no ties to this district, Your Honor.  And

14    I would note specifically a lot of falsities in Muho's motion.

15    One, he claims that he was employed before his arrest.  That is

16    not true.  The last time he was in employed was in New York at

17    Fletcher Asset Management, when he was fired in April 2013.  He

18    received -- briefly received unemployment insurance up in New

19    York for a couple months.  And the rest of that time, Your

20    Honor, for three years, he was doing nothing but stealing money

21    from other people.  So that's false.

22              He has no serious prior arrests in his lifetime.

23    That's not true.  He was arrested for fraud here in Miami in

24    January 2016, three different felony counts of fraud.

25              He has never attempted to avoid any criminal
```

1   prosecution, nor has he willfully failed to appear at hearings.

2   That's not true.  He didn't show up to his arraignment down

3   here in February.  That's why the arrest warrant was issued.

4        I would note also for the Court, which is especially

5   concerning, is that he claims that he was a Florida resident,

6   but if you look at the evidence in this case -- again, evidence

7   that was provided to him in July of 2016 -- he claimed to be

8   residence -- and obtained licenses and residence cards in five

9   different states under different names, under the name of Gerti

10  Muho, under the name of Gerard Blair.  He created fake driver's

11  licenses.  He was photographing and creating fake passports,

12  Your Honor.  He is a citizen of Albania.  He is an immense

13  flight risk.  And I think the bond which the parties agreed to

14  back in July of 2016, a $250,000 corporate surety bond, with a

15  Nebbia requirement, for a defendant who initiated a three-year

16  fraud scheme, stole over $2 million, is eminently reasonable in

17  this case.

18        THE COURT:  Anything further, Mr. Muho?

19        THE DEFENDANT:  Your Honor, again, I was unable --

20  the -- the -- the -- I'm an SEC registered investment advisor.

21  Why does he just simply neglect to mention that?  But that

22  aside -- that aside, the -- the -- the simple -- single case

23  that he refers that I fleed -- that I fled the district, we had

24  a whole hearing on this.  I was locked out of my house.  I lost

25  access to house.  I lost access to my mail.  I could not -- I

```
 1    did not know.  And I did show up.  I got on a plane and I
 2    showed up for that -- for that -- for that state case, which --
 3    which, if I am found guilty on all -- all three charges, which
 4    I've -- you know, I've -- I've sought a defense.  I did
 5    participate.  I filed a motion to dismiss.  If I were to have
 6    found guilty, I would still face no jail time for any of those
 7    charges, and I have already done nine months.  So to hold
 8    that -- that state case and to prevent me from putting forth my
 9    defense is -- is -- is ludicrous.  And that's it, Your Honor.
10           Thank you.
11           THE COURT:  Docket Entry 131, the Defendant's motion
12    for a bond modification, is a motion for reconsideration of
13    Docket Entry 66, which was the Defendant's motion for a bond.
14           At the time of filing of the Defendant's motion for a
15    bond, the Court viewed the record and noted that Judge Hunt
16    accepted the stipulation of the parties to a $250,000 corporate
17    surety bond, with a Nebbia requirement.  The Court certainly
18    does not find that -- as argued by Mr. Muho, that Judge Hunt
19    found that to be unreasonable.  And, in fact, he ratified the
20    agreement of the parties.
21           At the time that the Court addressed the hearing on
22    the Defendant's motion to set a reasonable bond, the Court
23    noted that a bond was set; however, the Government had filed a
24    motion for pretrial detention, which required by law the Court
25    address the merits of that motion.
```

1          While the Court recognized that Mr. Muho presented a

2     risk of flight, the Court found there was no clear and

3     convincing evidence Mr. Muho was a danger to the community and

4     rejected the Government's motion.  However, in the same vein

5     the Court determined that the bond that was set by Judge Hunt

6     was reasonable and would ensure the Defendant's appearance at

7     the time of trial.

8          That is a bond.  The bond has been set.  And the

9     motion for reconsideration on the grounds that Mr. Muho claims

10    that the bond is unreasonable is denied.

11         Addressing the final motion, which is the Defendant's

12    corrected motion for the Grand Jury transcript.

13         Mr. Muho?

14         THE DEFENDANT:  Your Honor, there has been witness --

15    witness statements in this case to date that cause concerns.

16         THE COURT:  Can you be specific with regard to those

17    statements, sir.

18         THE DEFENDANT:  Sure.  Sure.

19         In -- in -- in criminal -- in the criminal complaint,

20    Docket Entry Number 1, it is stated that:  "On or about

21    February 16th, 2016, the Miami-Dade Police Department entered

22    the Miami residence to formally evict Muho.  They," being the

23    Miami-Dade Police Department, "discovered that Muho abandoned

24    the unit, but left behind a series of bogus identification

25    cards, which were promptly seized and taken into law

1    enforcement custody."

2          This is a statement by Anthony Arena, the chief

3    prosecutor in this case.  This turned out to be completely

4    false, as Ms. Read, it turned out, had entered the apartment by

5    herself, put on her gloves, and went through -- went through

6    tables, went through -- opened up boxes, found fake IDs, took

7    pictures, rummaged documents.  This was not the Miami-Dade

8    Police Department.  Yet, Anthony Arena here states the complete

9    opposite.  The story has changed.  There are lies throughout.

10          I can -- I can continue if it pleases, Your Honor.

11          It is stated that I posed as Gerard Morgan, which

12    means that I acted -- pretended to be someone else, which was

13    Gerard Morgan.  My name was, at this time, Gerard Morgan.  I

14    did not pose or pretend.  So there -- there are significant

15    lies.

16          I unlawfully obtained 2,067,000 from a HSBC Bank

17    account overseas unlawfully.  There is no basis to claim that.

18    There have been documents showing -- that -- that -- that

19    prove -- that show that -- that -- that the transaction was

20    legitimate.

21          So because of the -- because of the -- because of the

22    untruths to date in the complaint, evident from -- from the

23    facts of the case or evident since -- by -- from testimony

24    received from -- from the Government's own change of story, I

25    would -- it is -- I need -- in my -- in my defense, I would

1   need the Grand Jury transcripts to be -- in order to be able to

2   impeach witnesses in this case.

3          Also, I would also like to have the balloting for

4   the -- for the -- for the charges, in order to be able to see

5   and to prepare for a defense -- for my own defense, to see

6   what -- what the grand jurors -- what the balloting in the case

7   has been.

8          Also, I -- also, I have a right -- and I -- I -- I'm

9   worried that because of the prosecutor's inherent interest in

10  this case, personal interest, that he may have -- he may

11  have -- he may have violated the Section 1867.  Basically, that

12  he may have wrong -- wrongly impaneled the -- the -- the Grand

13  Jury.  So I would simply request that -- that I be -- be given

14  all the -- the -- the records from the Grand Jury.

15         The reasons for keeping it secret simply do not lie

16  here.  I -- I -- I pose no threat to the Grand Jury.  The Grand

17  Jury -- and I'm simply trying to get information.  I'm not

18  trying to do any fishing expedition.  I need -- I -- I --

19  those -- I -- I -- I would need that evidence in order to see

20  any wrongdoing and -- and -- and -- and -- in order to be able

21  to prepare for cross-examining witnesses at trial, which

22  clearly there's grounds to believe that there's -- there's

23  reasons for the -- for the -- for the -- for there to have been

24  errors in this case.

25         Thank you.

```
 1            THE COURT:  The Government's response?

 2            MR. MCLAUGHLIN:  I would disagree with all of that,

 3   Your Honor.

 4            I would note for the Court that we responded to

 5   Mr. Muho's motion -- and I don't have the docket entry to that,

 6   but I know I responded on Saturday.

 7            Mr. Muho has not demonstrated any sort of compelling

 8   or particularized need for these materials.  He's not entitled

 9   to them.  I can tell the Court this:  In terms of Grand Jury

10   materials, what I ended up doing -- and what my legal assistant

11   helped me with -- is we basically provided Mr. Muho with the

12   Grand Jury exhibits.  He knows exactly what the Grand Jury saw.

13   Those were in the hot docs folder, which I have referenced

14   repeatedly for this Court, which is a Cliffs Notes version of

15   the case.  We will turn over the transcript consistent with our

16   obligations under the Jencks Act, Your Honor.  And other than

17   that, Mr. Muho is not entitled to anything else in front of the

18   Grand Jury.

19            THE COURT:  Mr. Muho, is there anything further that

20   you want to present showing the Court that there is a

21   particularized or compelling need for the materials you're

22   seeking, and that includes the transcript itself, relating to

23   any testimony that the Grand Jury considered?

24            Mr. McLaughlin has stated that these hot docs that he

25   refers to were, in fact, the Grand Jury exhibits that were
```

1    already provided to you.  So specifically, sir, with regard to

2    the transcripts, what is the -- the need that the Court should

3    look to?

4          THE DEFENDANT:  Your Honor, simply, I'm requesting

5    to -- to -- to be able to obtain any -- I'm not -- I -- I

6    don't -- the exhibits would be the same as the evidence in the

7    case.  Providing me with the exhibits in the case provides me

8    with absolutely nothing.  What I'm looking for is statements by

9    the investigators and by any witnesses that were made to the

10   Grand Jury.

11         Also, in order to be able to challenge the witnesses,

12   which I already have grounds, as I've stated, based on the

13   criminal complaint alone, where there are inconsistencies by --

14   by -- by -- by the inspector in the case and -- and even by

15   Ms. Read, in order to see -- I -- I believe that -- that need

16   is particularized in order for me to prepare for -- for trial.

17         I'm looking simply for the transcript for what was

18   said to the Grand Jury.  And I'm also looking for the

19   balloting, meaning, how many grand jurors -- how many grand

20   jurors voted for -- for -- to indict me on each count.  It is

21   simply unclear, especially given the uncharged count, as I call

22   it, the $2 million unfraudulently obtained, which isn't even a

23   count.  I do not -- I still do not know what count that is.  I

24   believe it's Count 18.  But that count charges me with

25   submitting a false application three years later.

1          So I would like to see the balloting that -- what the

2    Grand -- how the grand jurors came to that -- to that -- to

3    that -- to that -- to that -- to that voting.  And given that

4    the -- how -- how unlikely it is for the Grand Jury, I believe,

5    for the Grand Jury to have voted that a $35,000 loan

6    application three years after a transfer was committed, made --

7    made the transfer, the original transfer unlawful in the case

8    because it -- it -- it -- it -- it -- it -- it -- it -- it --

9    it mocks the conscience of how this was done.  I believe that

10   it -- it is only fair to -- to believe that there may have been

11   wrongful impaneling of the Grand Jury, which I believe is -- is

12   something.  So I would like to get the records for how the jury

13   was impaneled as well.

14          Thank you.

15          THE COURT:  Mr. Muho, have you set forth your entire

16   argument, sir?

17          THE DEFENDANT:  I have, Your Honor.

18          THE COURT:  I'm failing to see the compelling need for

19   these materials that you're requesting.

20          You have not presented, by way of any argument, the

21   need for the balloting or any claim that the Grand Jury was

22   improperly impaneled, or the claim that the Government,

23   Mr. McLaughlin, or any assistant United States Attorney,

24   engaged in any misconduct, nor have you set forth a sufficient

25   basis to show that the material that you're seeking, the actual

1   Grand Jury transcript, or the information on the balloting and

2   the impaneling of the Grand Jury, is necessary to avoid any

3   type of an injustice.  And I'm failing to -- to see, based on

4   the argument presented, that under the Eleventh Circuit case

5   law, that you have presented any basis for the Court to grant

6   this motion.

7       You failed to make the requisite showing that there is

8   a need for these materials.  But I would note that the

9   Government does have an obligation to provide any portion of

10  the Grand Jury transcript that may be consistent with their

11  obligation under Jencks.  And with regard to those witnesses, I

12  would require -- it requires a reasonable time.  And I would

13  require within 24 hours of the time that these witnesses are

14  called in to testify by the Government.

15      As such, since the Government is well aware of their

16  obligation, the motion for the Grand Jury transcripts,

17  including any balloting or the information regarding the

18  impaneling, would be denied.

19      I believe that the Court has addressed all of the

20  pending motions that are before the Court.

21      Mr. Muho, we are left with the issue of the hard

22  drives.  I know you've stated in a very broad brush that

23  there's no need to see these documents; however, it's important

24  for the Court to ensure that you are properly prepared for

25  trial.

```
 1              This trial is expected to take place on February 21st.
 2     I know you've stated that you are waiting for your own
 3     materials relating to communications that you've had with your
 4     own attorneys.  But at this point, we are scheduled for a
 5     calendar call tomorrow.  I do want to address the issue with
 6     the hard drives.  I think we left off seeing if there was
 7     someone within the FDC that we could speak to.
 8              Officer Campbell, if you don't mind, can I just
 9     have -- because I'm going to relay what you're telling me, that
10     Officer Campbell did specifically speak with -- do you mind
11     just stating in the microphone to the parties exactly what was
12     stated and let's take it from there.
13              COURT SECURITY OFFICER:  Yeah.  I spoke to Ms. Shannon
14     Horn, the attorney advisor.  She stated to me that the reason
15     that they will not accept the hard drives is because they
16     require additional screening.
17              She further told me that the way that it should be
18     handled is there's a form that has to be filled out.  The hard
19     drives, along with that form, have to be mailed US Mail to FDC.
20     Once they -- once they receive them, they do the additional
21     screening and then the hard drives will be provided to the
22     Defendant.  And she said there is no way around that.
23              MR. HARRIS:  Thank you.
24              THE COURT:  All right.  And I thank you, Officer
25     Campbell.
```

1          COURT SECURITY OFFICER:  Yes, ma'am.

2          THE COURT:  And obviously, the issue appears to be the

3    mailing as opposed to the physical handing of these items.

4    Because I do see, Mr. Harris, that you filled out the requisite

5    form.  The issue is screening on the side of the FDC.

6          So I would suggest that, in an effort to ensure that

7    Mr. Muho reviews everything in the time allotted between now

8    and trial, that, Mr. McLaughlin, perhaps we can make those

9    arrangements.

10          MR. MCLAUGHLIN:  And I would only ask this, Your

11    Honor, is that if we could get an order from the Court to

12    expedite that process with the marshals because they're -- they

13    always require 72 hours to do anything and we're on a short

14    time leash.  So any sort of order that gets Mr. Muho available

15    and over to the Grand Jury room, I can have agents there with

16    the hard drive and a computer for Mr. Muho to review it.  And I

17    think we can get it him in there for at least six hours.  I

18    think that's the max.  I think they got to -- they got to go

19    back at 2:00 or 3:00, I think.  So he'll have a significant

20    amount of time to go through things.

21          THE COURT:  And I know this issue was before Judge

22    Scola with an individual that was also representing himself and

23    arrangements were made by the marshals.

24          So perhaps -- I'm happy to enter an order.  I just

25    want to ensure that there aren't any further delays.  So is

1    there someone here from the marshal's service that can advise

2    specifically what they need in order to bring Mr. Muho over?

3    Can we see if maybe Marshal Rojas is here or someone from the

4    marshal's office that can give us some direction.

5         MR. MCLAUGHLIN:  What might be helpful, Your Honor, is

6    if the Court just sets a hearing that he is supposed to appear

7    in the Grand Jury room from 9:00 a.m. to 3:00 p.m. on

8    Wednesday.

9         THE COURT:  I'm happy to do that.  If it's going to

10   require a hearing --

11        MR. MCLAUGHLIN:  Because they always bring defendants

12   to court hearings.  It's when we kind of submit paperwork they

13   are like:  "We need 72 hours," and it becomes --

14        THE COURT:  Well, that's why I want to avoid that

15   issue.  I don't want to find out tomorrow from Mr. Harris that

16   Mr. Muho has not been transported.  So whatever is needed by

17   way of the order to have Mr. Muho transported beginning

18   tomorrow so he can review everything that's necessary, if we

19   can just --

20        MR. MCLAUGHLIN:  Well, I think it would be easier just

21   to set -- I got to figure out -- I can communicate with

22   chambers.  I got to figure out.  When we have Grand Jury times

23   over on eight, every room is booked and there's not going to be

24   a place for him.  I want to make sure we have a place for him

25   and then I can send an email to chambers cc-ing Mr. Harris,

1    going:  "Hey, here's the date.  Here's the time."  And if the

2    Court can just issue an order for the marshals, and they'll

3    bring him, and we'll go from there.

4         But I think best-case scenario we'll shoot for

5    tomorrow, but I think Wednesday is probably better.

6         THE COURT:  Well, let's see --

7         MR. MCLAUGHLIN:  Grand Jury is Tuesday, Thursday,

8    Friday.  So ...

9         THE COURT:  Let's see if we can -- if it's the Grand

10   Jury room or another room, let's -- if we can just take the

11   time and resolve it today, I would feel more comfortable,

12   particularly since tomorrow is the calendar call.  I don't want

13   to waste that morning.

14        MR. MCLAUGHLIN:  Other than the Grand Jury room, Your

15   Honor, I don't know where he would do it.  I mean, I don't --

16   the Government can reserve that room, can provide the agents,

17   provide the computer ...

18        THE COURT:  Can we find out what room Mr. Muho can be

19   brought to, similar to the gentleman in Judge Scola's division

20   that was brought in to view the documents during the course of

21   the trial.

22        COURT SECURITY OFFICER:  Okay.

23        THE COURT:  And it may be that Marshal Rojas -- he did

24   advise that there was a procedure, and I just want to make sure

25   that he has everything he needs.

```
1              COURTROOM MARSHAL:  Judge, you can handle all the

2    scheduling with the cell block, if you call the cell block.

3              THE COURT:  Okay.  Can we call whoever needs to be

4    contacted, so that there isn't any kind of a delay.

5              THE DEFENDANT:  Your Honor, may I just wait for the

6    hard drives to come in by the mail?  I really would prefer not

7    to come to the courthouse.  I -- I would be doing no reviewing.

8              THE COURT:  Why is that, Mr. Muho?  I thought you

9    wanted to review the documents in order to prepare for trial.

10             THE DEFENDANT:  No.  My -- as I -- as I stated

11   earlier, these -- I'm -- I'm looking for emails, and -- and --

12   and -- and coming to court is just not worth the hassle.  It --

13   it -- it -- it ruins my entire day.  I am unable to do to

14   anything else.  I cannot prepare for trial at all.  All I'd be

15   doing is -- is shackled up and reviewing documents, which I --

16   I can -- I cannot take with me.  It just -- it -- it would be

17   completely useless -- a use -- use -- a useless -- a use --

18   use -- it would be a completely -- completely useless waste of

19   time.  It is -- it is -- it is -- in fact, the only thing

20   achieve -- it would achieve is to delay me from preparing for

21   trial.

22             What I need are not the -- I'd -- I'd rather wait for

23   the -- for the delivery.  What I'm looking for are the -- the

24   email communications and -- and -- and the documents that are

25   not part -- not in that hard drive.  They are elsewhere.  So
```

```
 1   I -- I don't understand what -- what -- what the purpose of --
 2   of -- of bringing me here to review the documents would be.
 3   I'd rather just wait, if anything, for the -- for the -- for
 4   the hard drive.
 5            THE COURT:  Yeah.  We've spent a tremendous amount of
 6   time trying to see how you can view the documents on the hard
 7   drive.  And if you're choosing not to utilize the time, that's
 8   one thing.  But what I don't want to do, Mr. Muho, is have an
 9   issue with regard to waiting for mail to be received when we
10   can expedite the procedure from this point forward.  So if we
11   can find out what time Mr. Muho needs to be brought over
12   tomorrow to view those hard drives.
13            I think we're back to where we -- we started.  Is
14   there somebody -- Clem, is there somebody we can contact?  And
15   I'm not sure who we should talk to.
16            THE DEFENDANT:  Your Honor --
17            THE COURT:  Okay.  All right.  So Officer Campbell --
18   I'm sorry?
19            COURTROOM MARSHAL:  Normal scheduling.  If you put on
20   the calendar, order the body to show up, he'll show up.
21            THE COURT:  All right.  And specifically, where would
22   Mr. Muho be taken to view those hard drives?
23            COURTROOM MARSHAL:  Wherever you want him.
24            THE COURT:  Mr. McLaughlin, are you going to be
25   meeting the marshal here?
```

```
 1          MR. MCLAUGHLIN:  That's the issue, Your Honor.  I
 2   don't -- I know we typically do debriefings, and things of that
 3   nature, in the Grand Jury spaces.  I know we have grand juries
 4   that meet Tuesday, Thursday, Friday.  I don't know if we're
 5   going to have a room available tomorrow.  I don't know if
 6   there's another space.  I just need to go back and double check
 7   all that.  If there's another location, that's great.  We can
 8   get the computer here and the agents and --
 9          THE DEFENDANT:  Your Honor, I would -- I would --
10   again, I would rather spend the time preparing for trial and
11   not reviewing documents that I cannot use for trial.  I --
12   if -- I -- I -- again, looking at documents I cannot use is
13   completely useless to me.  There's nothing -- I would simply
14   like to have the time, if I'm going to be moving for trial, to
15   review -- to prepare for trial, not to review a hard drive
16   with -- full of documents, millions of documents that I can
17   make no use of whatsoever.  It's not like I can print the
18   documents.  It's not like I can do anything with the documents.
19          I -- I -- again, I would simply -- it would be a waste
20   of my time to prepare for trial.  I would -- mail takes only 24
21   hours if -- to be delivered to the -- to the -- to the FDC, if
22   it's mailed today.  So I -- with the form, it would just take
23   an extra day.  And then there I can - I -- I can look at the
24   documents as needed.
25          THE COURT:  Okay.  And Officer Campbell is advising me
```

1    that the turnaround would be most likely Thursday or Friday, if

2    it was mailed, which would again be a concern for the Court

3    with regard to that delay.

4         MR. MCLAUGHLIN:  Your Honor, what I can tell the Court

5    is, I think the best plan is going to be a Wednesday in the

6    Grand Jury spaces on the ninth floor here.  I just don't think

7    Tuesday is going to work, but we definitely should be able to

8    do it Wednesday.  So what I can do is let the Court know:  Hey,

9    I've reserved this Grand Jury room," the order can go out, and

10   then the marshals can deliver him there and he can spend as

11   much time as he likes there.

12        THE DEFENDANT:  Your Honor, I do not want that time.

13   I would prefer -- prefer to prepare for trial, instead of being

14   forced to a Grand Jury room, which I cannot do anything to

15   prepare for trial for.

16        THE COURT:  Mr. Muho, the issue is giving you the

17   access to all of the discovery in this case.  And that includes

18   the documents that Mr. Harris was able to get into the FDC for

19   you after you made the decision that you wanted to proceed pro

20   se, and now the remaining issue are the two hard drives.  And

21   in order to ensure that you have the ability to review those

22   documents, we will schedule this -- I know Mr. Muho is going to

23   be here tomorrow.  And between now and then perhaps if we can

24   find out the exact room, if it's in the Grand Jury room, or if

25   there's another room, where we can bring Mr. Muho.  I really

1    would not like to have the delay.

2            Mr. Harris, you can proceed to mail the hard drives.

3    But between now and that time, when Mr. Muho would receive the

4    hard drives at the FDC, I would like to give Mr. Muho the

5    opportunity to review the hard drives.

6            MR. MCLAUGHLIN:  And perhaps to address Mr. Muho's

7    concerns regarding being able to prepare, perhaps the Court

8    order can allow him to bring his trial materials to the Grand

9    Jury room, so he can look at everything, plus the computer,

10   and he's not losing any time.  That's seems to be the --

11           THE COURT:  Right.  And time is the concern of Court

12   as well.

13           So I'll see Mr. Muho here tomorrow for the calendar

14   call.  And let's -- if we can, let's see if there -- I guess

15   I'm not really clear why we can't do this tomorrow as opposed

16   to Wednesday.

17           MR. MCLAUGHLIN:  I don't -- I can't tell the Court

18   that I'm going to have space available on the Government's side

19   of the house tomorrow.  That's the Government's concern.  If

20   the Court can provide spaces, I'll bring -- agents can be here

21   with everything.

22           THE COURT:  And that's what I'd like to see, is if

23   there's a space tomorrow morning that we can bring Mr. Muho to

24   review the documents.  This way, at the calendar call, we'll be

25   in a better position for Mr. Muho to advise the Court whether,

1      in fact, he's had an opportunity to review all of the

2      documents.  And if those are the documents that he already is

3      aware of, then that's fine.  However, the Court is certainly

4      concerned about giving Mr. Muho a full opportunity to review

5      all of the discovery in this case.

6           Okay.  Just give us a few moments, and we're going to

7      find a room for tomorrow morning.

8         (Pause in proceedings.)

9           THE COURT:  Mr. McLaughlin, while we're waiting,

10     sir -- and I know we are going to address this tomorrow -- how

11     many days is the Government requesting to try this case?

12          MR. MCLAUGHLIN:  I think it's going to be two weeks,

13     Your Honor.  Right now -- I filed a witness list yesterday.  I

14     think that's going to get pared down a little bit more, but I'm

15     thinking we are in the nature of 30-plus Government witnesses.

16          I don't think a lot of them are going to take a whole

17     lot of time.  But in terms of -- I don't know what

18     cross-examination is going to be like, but I know we are

19     starting on a Tuesday next week.  So I think a fair assessment

20     would be the two weeks.  It might go faster, but I don't want

21     to short sell him.

22          THE COURT:  Mr. Muho, or Mr. Harris, does that sound

23     about accurate?  That would be 10 days for trial.

24          THE DEFENDANT:  It does.

25          MR. HARRIS:  Yes, Your Honor.  That sounds accurate.

1          (Pause in proceedings.)

2          THE COURT:  All right.  Back on the record.

3          From what I'm hearing from Officer Campbell is that

4    the room that was used by the individual in Judge Scola's case,

5    that he's trying right now, is still using the room.  So that

6    room is not accessible.

7          Quite frankly, I'm not sure what other room may be

8    available for Mr. Muho.  So we may be back to your original

9    plan, Mr. McLaughlin.  And that is on Wednesday morning that

10   we'll plan in the Grand Jury room that Mr. Muho will have

11   access.

12         So I would suggest, Mr. Harris, that Mr. Muho is going

13   to need access to the hard drives throughout the course of the

14   trial, that you mail those in, as requested by FDC.  And that

15   between now and then we will plan on Wednesday morning for

16   Mr. Muho to have access to the Grand Jury room.

17         Mr. McLaughlin, you'll make available those two hard

18   drives for Mr. Muho in that room for his use to view.  And then

19   I'll see the parties tomorrow at the calendar call for the

20   trial that's scheduled on February 21st.

21         Is there anything further that we can address at this

22   time?  On behalf of the Government?

23         MR. MCLAUGHLIN:  Not from the Government, Your Honor.

24         THE COURT:  On behalf of the Defendant?

25         THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Okay.  Then I'll see you tomorrow

2     afternoon.  Have a pleasant afternoon.

3          MR. HARRIS:  Thank you, Your Honor.

4       (Proceedings concluded at 10:45 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

68

1    UNITED STATES OF AMERICA      )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                    C E R T I F I C A T E

5            I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at

8    and reported in machine shorthand the proceedings had the 13th

9    day of February, 2017, in the above-mentioned court; and that

10   the foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12           I further certify that this transcript contains pages

13   1 - 68.

14           IN WITNESS WHEREOF, I have hereunto set my hand at

15   Miami, Florida this 12th day of April, 2017.

16

17                        /s/Yvette Hernandez
                          Yvette Hernandez, CSR, RPR, CLR
18                        Certified Shorthand Reporter
                          400 North Miami Avenue, 10-2
19                        Miami, Florida 33128
                          (305) 523-5698
20                        yvette_hernandez@flsd.uscourts.gov

21

22

23

24

25