UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-20390-CR-BLOOM

UNITED STATES,

    Plaintiff,

vs.

GERTI MUHO,

    Defendant.
_____/

## SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE

Defendant, GERTI MUHO, through undersigned counsel, files his Sentencing Memorandum and Request for Variance herein as follows:

## PRESENTENCE REPORT (PSR)

Undersigned counsel has reviewed the PSR (DE 301) with Mr. Muho. There are objections filed by undersigned counsel (DE 322) and additional objections filed at the request of Mr. Muho. (DE 331 and DE 332). The United States also filed objections to the PSR (DE 307) and a response to the objections filed by counsel. (DE 323).

The defense *does* believe, contrary to the PSR (revised)(DE 324) that a

significant ground for a variance from the advisory sentencing guideline range of 262 – 327 months, plus the mandatory 24 months for each aggravated identity theft count, exists.

Likewise, the same significant ground for a variance from the United States suggestion that an appropriate sentence of 316 months, plus a mandatory 48 months for the aggravated identity counts, exists.

## **VARIANCE FOR ATTENTION DEFICIT HYPERACTIVITY DISORDER (ADHD) AND DRUG ADDICTION**

The PSR (revised) sets out in paragraphs 127 through 133 Mr. Muho's mental and drug abuse history.

In two letters to this Court, Mr. Muho, in his own words, best describes his life history, the ADHD mental disorder, the medications prescribed, the abuse of those medications, and his drug abuse.   The two letters are attached hereto.

## **CONCLUSION**

Given the factors set out in his letters, the defense asks the Court to consider a sentence below the advisory guideline range and that suggested by the United States, which would be appropriate and meet the 3553 sentencing factors.  Such a sentence would be sufficient but not greater than necessary and would be fair and

reasonable.

                                Respectfully submitted,

                                THOMAS W. RISAVY, ESQ.
                                Attorney for GERTI MUHO
                                1999 SW 27 Avenue
                                Miami, FL  33145
                                305-854-3772
                                (Fla. Bar #801410)

                                BY __s/_Thomas W. Risavy__
                                       THOMAS W. RISAVY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 6, 2018, I electronically filed the foregoing Sentencing Memorandum and Request for Variance with the Clerk of Court using CM/ECF.

                                BY __s/_Thomas W. Risavy__
                                     THOMAS W. RISAVY

The Honorable Beth Bloom

United State District Judge

Southern District Of Florida

Dear Judge Bloom:

I write this letter to provide this your honor with information about my background, my life and experiences and my acts that I believe will be of assistance to this Court in determining a just punishment for my crimes in this case. And I also write this letter to express to this Court.my sincerest apology and regret for my actions and to beg this Court for a merciful sentence that accounts for the good deeds I have done in my life and that accounts for the harm to myself that my actions have already cause.

I was born in Albania. My father died when I was eight months old under mysterious circumstances under communism. I was raised by my mother who did not re-marry and who tied her life to mine. ln 1990's, I witnessed the fall of communism in Albania, the tanks in the streets of Albania aiming at the Albanian people, and all the suffering the communists caused. My early childhood led me to mistrust authorities.

After civil war broke out in Albania in 1996, I immigrated to the United States with my mother and my sister. In New York, my mother was denied welfare when we arrived and every day I witnessed her crying and worrying about life for us in our new country.  As a result, my distrust for all authorities increased, and I developed self-help mentality which became part of my character as I grew older.

To help my mother, I started working early on. I sold-candy to support myself and help my mother put food on the table. I also did well in school and made my mother proud. After finishing high school, I entered university at St. John's in New York where I was graduated with a near perfect GPA. During my college years, I also started a successful company that helped other immigrant families like mine with jobs.  Over the years, helped dozens of Albanian and Polish immigrant families adjust to life in the United States. I held community events to foster a community spirit, and I even raised money for the Long Island Chapter of Leukemia and

Lymphoma Society for which one of the events I held raised a $5,000 donation.

After college, I took my desire to help others and my desire to improve my life further by volunteering for two years for Sanctuary for Families of New York, the largest domestic violence non-profit in New York. There, inside and outside the courtrooms of New York, I translated for Albanian immigrant women that came forward against their abusive husbands. Albanian society is male dominated and very few Albanian women have the courage to speak up, and I was happy to help them in their plight and in their fight against abuse.

I then entered law school where I continued providing help to others: I interned at the Public Defender's office in Modesto, California. I interned at the state appellate public defender's office in San Francisco, and I led a Berkley Law School sponsored organization that assisted high school students facing disciplinary action in public schools in the San Francisco Bay Area.

I was graduated from Berkeley Law school in May 2012, and my few years after are known to this court. But in my actions that followed my graduation from law school and precipitated that events of this case, I was spurred by a desire to assist in what I believed was the wrongdoing by my former supervisor against three Louisiana pension funds.

But I made bad decisions and mistakes I now wholeheartedly regret, without doubt. And while I wish I could go back and undo the mistakes I made, I can't. But I want to express my sincerest apologies for my actions. I used other people's information to apply for loans; I used other people's information to open bank accounts; and I took one loan using another person's information without that person's knowledge or permission. I unnecessarily hurt the people's whose information I used and I hurt the lenders. And I want this Court to believe how sorry I am for my actions and how much I regret the actions I took.

I also made promises to lenders, I didn't keep; I misled lenders by changing my name and more. I understand that I hurt these lenders, and I very much regret doing so. And I transferred monies from a company I worked for that I shouldn't have. I hurt people by wasting their time and by unnecessarily creating problems for them, even if I caused them no

financial loss.  I truly regret these actions now, and I wish I could undo them all.

I am sorry I hurt the people I hurt. In addition to hurting the people I hurt, my actions also hurt my family and those who believed and supported me over the years.  My mother is no longer proud of me; it kills me to know that I have caused her shame.  And it hurts knowing that I have caused her a financial burden in this case, and that I have not been there for her during these years and I continue not to be there to help her as she grows older to support her like she supported me in all my early years.

The actions I have taken have also ruined my life.  I can never again work in a bank. I can never be a lawyer. I can never have any job in the financial industry again. I cannot do anything in life again that I have wanted to do in my life all along; things that I was really good at and that I enjoyed doing. I have by my actions in this case ruined my life.

If I had the chance to do it over again, I would not do what I did. But I can't undo what I did. I now simply beg this Court to be merciful and to give me another chance at life. I ask this Court to consider my regret for the harm I've caused, and to consider the many things I've done in my life that were good, and beg this Court to have mercy on me and give me a punishment that will let me show this Court my regret for my actions, and prove to this Court that I would never again do what I did; and I beg this Court for a punishment that will someday allow me to re-build my life and that will allow me to again do good and help others as I have in the past, and for a punishment that will not exacerbate the harm I have caused to the ones I love and that will allow me to be there for those I love when they need me most.


Sincerely,

s/ Gerti Muho

The Honorable Beth Bloom

United States District Judge

Southern District Of Florida


Dear Judge Bloom:


I suffer from a hyper-nervousness of movement; you can say I move too quick, or react too quick, or behave overly nervous; it makes others nervous on meeting me. In schooling the problem was limited to procrastination and patience. In the job scene matters were worse. Despite excellent grades, I was turned down for positions because of my hyper-nervousness of movement during interviews.

I took unpaid internships to compensate for my inability to get hired. In one such internship, my general nervousness on the job and my patience caused me to lose the job. At parting, my supervisor told me to get checked for ADHD. I felt insulted by the suggestion and ignored it.

Time passed. I entered law school. But my nervousness of movement remained. Despite my over-qualifications grade wise, I still performed poorly at interviews. In addition to the nervousness of movement itself, my failures were further increasing anxiety and deteriorating results.

Consequently, in my second year of law school I sought professional help. I was referred to a psychiatrist who diagnosed me with ADHD and prescribed adderall. Adderall caused euphoria that boosted my confidence; the medicine also helped me focus and helped with procrastination. In retrospect the medicine may not have been entirely helpful: my original nervousness of movement persisted, my performance at job interviews did not improve, and the medicine caused me to over-focus on issues causing my performance on exams to fall. But I appreciated the confidence boost associated with the methamphetamine salts in adderall and its aid with procrastination. The medicine had negative effects preventing sleep but its effects on sleep at the time were benign as I was prescribed 20mg per day, which I took early in the morning and which wore off by nighttime. I told these to my psychiatrist, and

eventually to a second psychiatrist in Berkeley, California.

My desire, qualifications and the adderall-boosted confidence led me to a position with Fletcher Asset Management late my third year of law school. It helped that the interview for the job was entirely by phone and that the company was under investigation by the SEC, making the job easier to attain given the competition for the job were risk averse law and business school students.

At the company, I excelled. Without in person meetings with my supervisor, I focused on the work and excelled. I credited the medication for helping me focus and for giving me the confidence to deal with the complex issues I was facing. I continued to receive treatment for ADHD by a psychiatrist in New York, who continued to prescribe adderall; but as my challenges increased the psychiatrist increased the dosage of Adderall, prescribing 120 mg per day, or six t:mes the original daily dosage. The adderall kept me focused, but awake. Working two to three days with no sleep became the norm. I was prescribed sleeping pills to deal with the issue. But by working non-stop for days on end I would fall asleep from pure exhaustion.

Six months passed with me working days on end while taking the high dosage of adderall. I then stumbled into the casino scene. The adderall didn't take me to a casino but the medicine and the lack of sleep made me too focused on gambling, driving me into a gambling obsession, a compulsion of sorts.

Another six more months passed with me working for days with no sleep, and obsessively gambling at casinos more and more. Then, in April 2013, I got the idea of fighting my supervisor, whom I thought I had discovered doing wrong. The idea came to me after having obsessively worked for almost a year while taking 120 pills of 30mg adderall per month, lacking sleep for days on end. Consequently, in April 2013, in one sleepless week, I carried out my idea and I completed what I thought was a merger, or combination of companies into a new company.

I meant to use the money for good but things went wrong and the idea failed. I went to the authorities. But in addition to my general hyper-nervousness of movement, my adderall-fueled obsession and my lack of sleep made me difficult to follow. This is attested to by the authorities themselves, who believed they had witnessed a person with a clear psychological disorder in me.

Yet my adderall-fueled obsession continued, and I didn't give up on my merger idea. Later, in August 2013, I transferred $2 million from HSBC Monaco. I then continued the fight for another two years. I became worse. At times, I would refuse to sleep while obsessing on ideas for days on end. Without sleep I would become so obsessed with an idea that I remember that while writing a complaint, I couldn't get past one sentence in my head, writing it over and over again, and refusing to move past it; only after sleeping I could again continue further.

I always thought the high stress conditions, the high adderail dosage, and the sleepless nights and the gambling were temporary, but instead they lasted until my arrest in May 2016. At all times I continued receiving treatment for ADHD while being prescribed by the same psychiatrist in New York 120 pills of 30mg of adderall per month. And with time, as my body's resistance to the drug deteriorated, and with the lack of sleep, everything became an obsession.

In October 2015, after spending more than three years under these conditions I faced another stressor when the house I lived in went into foreclosure. This led to desperate measures on my part and the aberrant behavior that led to much of the charges of this case. Whether applying for a loan under other's people's name or opening a bank account with fake ids, the ideas came to me after more than three years of spending sleepless nights on end while taking high dosages of adderall, a schedule 2 drug, and under the desperation and obsessiveness that resulted from these conditions. By then I had become so depended on the adderall to do anything that when my psychiatrist was on vacation and I wouldn't get the medication for another week, I stupidly even applied for a DEA license, thinking I could use it get myself my medication. I thankfully never needed to do anything about it.

I accept responsibility and regret all my actions in this case. But that is not the reason for this letter. The purpose of this letter is to simple state that I would never had done any of the things I did, if I had not been medicated by the powerful drugs at high dosages that I was medicated with. I would have never applied for a bank account or a loan under another's name, I would have never opened a bank account under another's name, and I would have never began a fight with my supervisor that set the events that led to this case. But I had certain behavior problems for which I sought professional help, and I was then prescribed powerful addictive schedule 2 drugs at such high dosages that destroyed my life. For even with no sentence in this case, my life and my work and all my 7 years of college and law school schooling have all been laid to waste; plus having to live with knowing just how I have harmed others, my family, and myself. I honestly wish I would have never sought professional help for my problems in the first place.

Sincerely,


s/ Gerti Muho