# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### Miami Division

Civil Case No. _____
(Underlying Criminal Case No. 1:16-CR-20390)
Judge Bloom

**United States of America**
Plaintiff

**v.**

**Gerti Muho,**
a.k.a. Gerard Peter Morgan,
a.k.a. Enton Pinguili,
a.k.a. Kris Blair
Defendant

─────────────────────────────────────

## MOTION TO VACATE, SET ASSIDE, OR CORRECT SENTENCE, AND FOR NEW TRIAL, PURSUANT TO 28 U.S.C. § 2255

─────────────────────────────────────

Gerti Muho, through undersigned counsel, respectfully files this Motion to Vacate, Set Aside, or Correct Sentence, and for New Trial, pursuant to 28 U.S.C. § 2255, and attached Exhibits and Declarations in support. Mr. Muho seeks such relief on the following grounds:

I.     Pre-trial counsel was ineffective for failing to adequately prepare for the competency evaluation, resulting in an unreliable finding of competency to stand trial.

1

II.    Trial counsel was ineffective for failing to ensure Mr. Muho was competent to understand the plea agreement with which he was presented before trial, causing Mr. Muho to proceed to trial despite his inadequate understanding of the case against him and resulting in an excessive sentence.

III.    Trial counsel was ineffective for failing to object to Mr. Muho's request to waive counsel, due to a lack of investigation of Mr. Muho's competency at the time, which would have revealed that Mr. Muho was not competent to make a knowing or voluntary waiver; and further that he was not competent to represent himself.

IV.    The trial court failed to reassess Mr. Muho's competency to stand trial once it became clear that Mr. Muho did not rationally understand the allegations against him. Mr. Muho's appellate counsel was ineffective for failing to raise this claim.

V.    The trial court failed to reassess Mr. Muho's competency to represent himself once it became clear that Mr. Muho did not rationally understand the allegations against when he was *pro se* defending himself.

VI.    Sentencing counsel performed ineffectively in failing to conduct investigation into Mr. Muho's history of mental illness and drug dependence and to present such evidence in mitigation.

## BACKGROUND OF MOVANT

Gerti Muho, born in Albania in 1983, emigrated to the United States in 1996 during the period of unrest preceding the Albanian Civil War that arose from the country's descent into kleptocracy following the fall of the Soviet Union. At 12 years old, Mr. Muho moved from Albania to Queens, New York, with his mother and older sister. Mr. Muho's mother worked as a housekeeper in Queens. His sister studied

accounting. They were a close-knit family in a community of Albanian immigrants looking to the United States as a place to create better lives for their families.

Mr. Muho thrived in public school and earned a scholarship to St. John's University where he studied finance while living at home with his family, starting a successful small business, and assisting his mother with day-to-day management of the household. On graduation from St. John's, Muho looked for finance jobs but was repeatedly rejected, with one potential employer telling him he seemed too nervous or anxious and suggested he might have ADHD and should see a doctor. Muho then elected to take the LSAT and proceed to law school. He excelled on the multiple-choice LSAT and was admitted to Berkeley Law School with a substantial tuition grant. He moved to Berkeley to study law, the first time he was away from home and living around his peers.

At Berkeley, Mr. Muho found a high-pressure environment where students used whatever advantage they had to get to the top of the class in effort to obtain lucrative positions with large law firms. Among the advantages Muho saw his peers using were prescription stimulant medications that enabled students to laser-focus for extended periods of time on difficult material they needed to master to excel on law school examinations. Mr. Muho had not previously experienced the type of

3

essay exams that law school required and found he struggled to focus effectively and worried he would not succeed.

Early in his law school career, Mr. Muho went to a psychiatrist at Berkeley who prescribed stimulant medication to help Mr. Muho with his lack of focus. He started with 30mg of Adderall, then moved to Vivant, and then back to Adderall, increasing. Muho complained to a classmate that the psychiatrist at Berkeley had not succeeded in helping Muho to focus effectively. The classmate referred Muho to Dr. Donald Stanford, a private practitioner in Berkeley, who increased his dosage to 60 mg and then to 90mg. Muho found the medication gave him a sense of euphoria to which he quickly became addicted, without having a confirmed diagnosis of Attention Deficit Hyperactivity Disorder, the condition for which the drug is usually prescribed.[1]

When Mr. Muho returned from law school after graduation, his family saw a starkly changed man. He was no longer the easy-going, kind, thoughtful, patient son

---

[1] Records of Mr. Muho's first appointments with his Berkeley psychiatrist have been destroyed. Counsel attempted to locate the records from Dr. Donald Stanford's office but were told they had been destroyed pursuant to record purging protocols after seven years (likely in 2017). Trial counsel would have been able to obtain these records with a simple release during the pendency of Mr. Muho's case had they tried. *See* Declaration of Susan Herrero and Letter of Dr. Donald Stanford, attached as Exhibits E and G respectively

and brother they had known. Mr. Muho had become impatient, distant, and argumentative. Declaration of Anila Gjika, para. 12, attached as Exhibit A. He began working for a hedge fund in New York for Alphonse Fletcher, Muho's mentor in the financial world. On return to New York, Muho began seeing Dr. Eli Shalenberg, a psychiatrist in Manhattan and Staten Island who prescribed Muho Adderall in dosages as high as 120mg per day, twice the recommended daily dosage, 60mg extended release and 60mg fast-acting. Muho would take what he was prescribed and more, often with Shalenberg refilling prescriptions before they were due for refills. Neuropsychological and Psychiatric Report of James Merikangas, M.D., page 3, attached as Exhibit D. Muho was staying up for days at a time, becoming paranoid and delusional in his beliefs about his employer and mentor, Mr. Fletcher. In his Adderall-fueled delusional state, Mr. Muho proceeded through the conduct for which he was charged and convicted in this case.

Upon arrest for the underlying charges, Mr. Muho was instantly deprived of the Adderall to which he had become so addicted and experience acute and post-acute withdrawal in the months preceding and continuing through his trial in July of 2017. Exhibit D. Since his conviction and incarceration, Mr. Muho has slowly returned to the easy-going, kind, and patient man he had been before his addiction. Exhibits A, para. 17; Declaration of Julieta Muho, para. 15, attached as Exhibit B;

Exhibit D. Mr. Muho now recognizes and accepts responsibility for his actions and raises the following challenges to the process of his conviction and sentencing, which entitle him to the relief requested.

## STATEMENT OF PROCEEDINGS

In support of this Motion, Mr. Muho, through counsel, states as follows on information and belief, with support of the Court's record, and evidence gathered in investigation of the claims presented:

1.      On May 12, 2016, a criminal complaint was issued against Mr. Muho alleging a scheme of identity theft and fraud from 2013 to 2016 that stemmed from his prior employment with Fletcher Asset Management ("FAM") and its related affiliates in New York, NY, including Richcourt Funds ("RF"), Soundview Elite Ltd. ("SEL"), and others. Mr. Muho was arrested pursuant to the Complaint on May 16, 2016, in New York, and arraigned on June 22, 2016, in Fort Lauderdale.

### Withdrawal of Counsel and Competency Concerns

2.      On August 4, 2016, Mr. Muho's retained counsel, Michael Rosen, moved to withdraw from representation, citing "a total cessation of communication about the

6

case, about the discovery, and the – any plea negotiations." Tr. 8/8/16 at 3-4[2]. Mr.

Rosen described a "lack of trust" in counsel on Mr. Muho's part, and stated, "Judge,

there's no way I could proceed." Tr. 8/8/16 at 5.

3.    The court granted the motion to withdraw and appointed new counsel under

the Criminal Justice Act, Sylvia Piñera-Vasquez, on August 8, 2016.

4.    On September 7, 2016, Ms. Piñera-Vasquez moved to withdraw, stating "Mr.

Muho refuses to cooperate with counsel and rationally analyze the facts of the case."

D.E. 41 at 2. "For this total inability to communicate with the client, undersigned

counsel seeks to withdraw from this case." *Id*. at 3.

5.    Mr. Muho asked the Court to appoint the public defender's office in his

defense but was denied. Tr. 9/13/16 at 22. In response, Ms. Piñera-Vasquez pointed

out to the Court that "Mr. Muho did go to law school . . .," though Mr. Muho

reminded the Court that he had not passed the bar and was thus not an attorney. Tr.

9/13/16 at 23-24.

6.    The Court ultimately denied Ms. Piñera-Vasquez's motion to withdraw,

stating, "there is no reason, Ms. Piñera-Vasquez, to believe that Mr. Muho cannot

─────────────────────

[2] Hearing transcripts are in the Court's file and not attached to this Motion. They are referenced
by hearing date and page numbers throughout the Motion.

be represented effectively by you." *Id*. at 25. The Court based its decision on Mr. Muho's "attitude toward counsel" and "his unwillingness to engage in proper discussion relating to his case," to determine that there was not "an irreconcilable conflict such that at this point the Court should grant the motion [for withdrawal]." *Id*. at 25.

> [T]he reason is because of you, Mr. Muho, and not based on any type of conflict between you and your attorney. It results in your unwillingness that relates to the breakdown in communication. And I would suggest that you reconsider the relationship that you want to have with your court-appointed counsel. The motion is denied.

*Id*. at 26. The court denied Ms. Piñera-Vasquez's motion to withdraw, over Mr. Muho's objection, and stated: "My concern, quite candidly, Mr. Muho, is whether any attorney can effectively represent you …." Tr. 9/13/16 at 19. The Court pointed to Mr. Muho's "unwillingness to communicate" with counsel and "[in]ability to work with his attorney" as a basis for the concern. *Id* at 19, 25. Ms. Piñera-Vasquez remained counsel-of-record for Mr. Muho through the competency evaluation, despite the "complete inability to communicate" cited by both counsel and Mr. Muho.

7.    On September 7, 2016, the government moved for an evaluation to determine Mr. Muho's competency to stand trial, writing:

> Defendant Muho's refusal to engage two (2) different defense counsel, coupled with his voluminous *pro se* pleadings in various civil cases [in the Southern District of Florida starting in 2014], now raises serious

> concerns as to Defendant Muho's competency to stand trial and ability
> to understand the nature and consequences of the proceedings against
> him or to assist properly in his defense.

D.E. 43 at 2-3[3]. The government moved for an order that Mr. Muho "undergo a psychological or psychiatric evaluation under 18 U.S.C. § 4241(b)" and then a "competency hearing under 18 U.S.C. §§ 4241(a) and 4247(d)." *Id.* Ms. Piñera-Vasquez agreed that a mental evaluation of Mr. Muho was appropriate, D.E. 47 at 1, and the court ordered Mr. Muho evaluated for competency to stand trial. D.E. 48.

8.   On September 16, 2016, a 37-count Superseding Indictment was filed against Mr. Muho alleging bank fraud in violation of 18 U.S.C. § 1344 (Counts 1-7); wire fraud in violation of 18 U.S.C. § 1343 (Counts 18-19); and aggravated identity theft in violation of 18 U.S.C. § 1028(1)(1) (Counts 20-27).

<u>Competency Evaluation</u>

9.   Rather than being evaluated locally, with a forensic report due by October 12, 2018, as the court had ordered (*see* DE 48), Mr. Muho was transferred to the Federal Medical Center Devens in Ayer, Massachusetts for his competency evaluation. He

---

[3] Pleadings, orders, and other documents in the Court's file are referenced by Docket Entry ("D.E." number throughout the Motion.

was evaluated from October 20 through November 22, 2016, and the Forensic Report[4] was prepared by forensic psychologist Miriam Kissin, Psy. D., on December 12, 2016. For. Rpt. at 1.

10.     Dr. Kissin indicated in her report that she had attempted to reach Mr. Muho's counsel, Ms. Piñera-Vasquez, but heard nothing in response and had none of the files she had requested from Ms. Piñera-Vasquez in conducting her evaluation or preparing her report. For. Rpt. at 2. The Forensic Report also noted that records from Mr. Muho's treating psychiatrist, Dr. Eli Shalenberg had not been received,[5] and it referenced no psychiatric records from Mr. Muho's pre-trial incarceration. *Id*.

11.     On January 9, 2017, the court found Mr. Muho competent to stand trial based on the Forensic Report and entered an order for David Harris to replace Ms. Piñera-Vasquez as counsel. Neither Mr. Harris nor the Government objected to the finding that Mr. Muho was competent. Tr. 1/9/17 at 5. The court conducted no inquiry into competency and relied solely on the Forensic Report and lack of objections from the

---

[4] The Forensic Report is contained within the Court's file and is not attached to this Motion.

[5] The Forensic Report states that records had been requested from a Dr. Ian Shalenburger, rather than from Mr. Muho's actual treating and prescribing psychiatrist Dr. Eli Shalenberg. For. Rpt. at 2.

parties. The court asked the Government if it had "any concerns related to Mr. Muho's competency to stand trial." Tr. 1/9/17 at 4. The Government explained:

> We do not, Your Honor. We only ask that – and I think it's probably implicit in what Your Honor already said. But the Defendant has an opportunity, should he so choose, to present evidence. Because that's – according to the statute, the proper procedure. But if he – assuming hie is not contesting it, that also means he is not interested in putting on any evidence. So I think we're entitled to rest on the report.

*Id*. The court inquired of Mr. Harris whether he had any concerns about Mr. Muho's competency, to which he responded, "We are not challenging competency at this time." *Id*. at 5. The court then found Mr. Muho competent. *Id*. No further inquiry was made into the content of the Forensic Report or the information on which it was based, despite acknowledgement in the report itself that no background mental health information had been provided.

## Motion to Appear *Pro Se*

12.   On January 31, 2017, Mr. Harris filed a motion to allow Mr. Muho to proceed *pro se* with Harris serving as standby counsel. The court held a *Faretta* hearing on February 3, 2017. At the hearing, the Government indicated the voluminous discover—over 50,000 pages of records and two terabytes of computer data—and noted the complexity of the case against Mr. Muho. The Court then arraigned Mr. Muho on the Superseding Indictment and set the case for jury trial. Tr. 1/9/17 at 7.

<u>Pre-Trial Proceedings</u>

13.     On February 3, 2017, Mr. Muho filed a Motion to Dismiss Indictment with Prejudice for Violation of Speedy Trial Act, arguing that the Court and the Government had unnecessarily delayed his trial in violation of his rights under the Sixth Amendment and 18 U.S.C. § 3161-3174. D.E. 99.

14.     On February 6, 2017, the court held a hearing on defense motions during which Mr. Muho became confused and explained to the court that he did not understand what he was being asked to prove in moving to suppress records that had been turned over to Miami-Dade police from a home he had owned:

> THE DEFENDANT: Your Honor, a — a court proceeding cannot — cannot end my — my —my — my — my — my[6] right to live there. And unless I'm — I'm party to that — to that proceeding and there's been no proceeding to — to challenge my — my — my right to live there.
>
> So for — for me to be — and I ask to find a proceeding that did not affect my right to live there before — so whether that's been set aside, I don't understand. I don't understand the relevancy. I don't understand what documents you're requesting, to be honest. I'm sorry.

---

[6] Mr. Muho's involuntary repetition of words was replete throughout the proceedings, consistent with symptoms of long-term Adderall use and withdrawal, per Exhibit D.

Tr. 2/6/17 at 61. As the proceeding continued, the court noted that Mr. Muho was becoming aggressive on cross-examination by the Government:

> Q. Is that your real Social?
>
> A. What does it say? What did you ask me to that? What did you ask? And what is your exact question? Because you've locked me up for nine months because of this bullshit.
>
> THE COURT: Mr. Muho —
>
> THE DEFENDANT: I'm sorry. I apologize, Your Honor.
>
> THE COURT: — I'm going ask to that you take a breath because the record may not reflect it, but it's very apparent from the Court that you're becoming very aggressive and your frustration is affecting the dignity of these proceedings.

*Id*. at 86-87.

15.     On February 8, 2017, the parties appeared to address the Federal Detention Center's having barred Mr. Harris from providing Mr. Muho with his discovery. Tr. 2/8/17, *passim*. The court and parties also noted that Mr. Harris had filed an erroneous motion related to grand jury secrecy misstating that Mr. Muho was charged with first-degree murder.[7] Tr. 2/8/17 at 13-14.

16.     On March 9, 2017, Gerti Muho was charged in a 40-count Second Superseding Indictment alleging bank fraud in violation of 18 U.S.C. § 1344

---

[7] Mr. Harris stated his office had made a scrivener's error.

(Counts 1-17); wire fraud in violation of 18 U.S.C. § 1343 (Counts 18-19); aggravated identity theft in violation of 18 U.S.C. § 1028(a)(1) (Counts 20-37); and money laundering in violation of 18 U.S.C. § 1957(a), (b)(1).

17.     Mr. Muho was arraigned on the Second Superseding Indictment on March 14, 2017. At the hearing, Mr. Muho advised he wanted to continue to represent himself but questioned how he would be able to issue witness subpoenas given his inability to pay for service. Tr. 3/14/17 at 3. The court explained that Mr. Harris had been permitted to serve as standby counsel and that he or Mr. Muho would be able to file motions as appropriate, but that the court would only respond to written motions. *Id.*

18.     Also on the docket at the March 14, 2017 hearing was a Motion to Unseal Documents, asking the court to give Mr. Muho access to Docket Entries 8, 13, 14, and 15, which Mr. Muho had to that point not been able to access. Tr. 3/14/17 at 7. The court responded that Mr. Harris had access to several of the documents requested and stated:

> Because, as Mr. Harris is well aware – and certainly, Mr. Harris, I'm certain that you advised Mr. Muho before you filed this motion – by going through the sealed clerk, you would have access.

*Id.* at 5. The court went on to advise that one of the documents defense had moved to unseal was not in fact sealed, and that two of the others contained personal identifying information including social security numbers the court would not unseal without having ruled on a specific basis, but that the defense could access them

14

through the sealed clerk. *Id*. Mr. Harris made no response regarding whether he had, as the court assumed, informed Mr. Muho how to access sealed documents.

19.    Mr. Harris then asked the court to clarify his role as standby counsel, stating, "It's a little unclear whether my role is to file documents the *pro se* litigant wishes to file on his own or am I advising in favor or against particular requests made by the defendant." *Id*. at 6. The court responded that Mr. Muho would

> direct all strategy and will make decisions with regard to aspects of the trial, including what witnesses he may choose to cross-examine that are called by the Government and even witnesses that he may choose to call on his own.

*Id*. at 9. The issue of whether Mr. Harris was responsible for the content of the motions filed was not addressed or ruled on by the court.

20.    At the May 19, 2017 hearing following the dismissal of Mr. Muho's bond appeal, Mr. Muho questioned whether he wanted to continue *pro se*:

> THE DEFENDANT: Your Honor, I – I – I would like to be represented by counsel; however, in the past, counsel that I retained, Michael Rosen, and was appointed to me under the CJA act, Sylvia Vasquez, did not so much – or as – as – as the facts are, did not so much as represent me as more as – in all delayed my ability to come to trial.
>
> So with that said, I would like to be appointed by counsel. Now, I've retained – my family retained Mr. Harris; however, my family did not pay Mr. Harris enough of a fee for Mr. Harris to represent me at trial and I would not want to be represented by someone who is not willing to – to do the job, so to speak.

THE COURT: Well, I have not heard that from Mr. Harris. In fact, Mr. Harris has been intimately involved with all aspects of your case, including receiving and reviewing with you the vast amount of discovery that has been provided.

So if, in fact, you would like Mr. Harris to represent you completely, as opposed to serving as standby counsel, it's incumbent upon the Court that you advise the Court so Mr. Harris can be duly advised as to his responsibilities in this case.

By way of the Second Superseding Indictment, you have been charged, sir, with -- in this case, 30 -- well, actually, 40, based on the amendment -- 40 separate counts. And it appears that the Government is proceeding with each of those counts at this time.

So I just want to first raise the issue, since it is incumbent upon this Court to advise you at all stages of the proceedings, since this was before the Appellate Court on a very narrow issue, I do wish to advise you again before the Court schedules a trial.

So if you would like Mr. Harris to represent you as your retained counsel, then I think the next question would be for the Court to ask Mr. Harris as to whether he has the willingness at this time to continue to represent you. So is that what you'd like, Mr. Muho?

THE DEFENDANT: I would not. I would not. I would not. I think in all -- I would -- I would prefer to represent myself, with one exception perhaps. Previously, Your Honor, it was ruled that Mr. Harris could not assist me during the trial. And that is fine to some extent, but one thing that I would perhaps feel Mr. Harris could help me or assist me with would be cross-examination of witnesses, given that I lack the experience in cross-examination of witnesses or even direct examination. Although it's mainly for the cross-examination purposes that I think I would find Mr. Harris's input useful.

THE COURT: Mr. Muho, there is no concept of a hybrid representation. Either you are represented by Mr. Harris or you are representing yourself. And because of the time period that was involved, the Court did require that Mr. Harris remain as standby counsel. So if you have some concerns of your ability to adequately

defend the 40 counts that are before the Court, I ask that at this time you make a decision as to whether you'd like Mr. Harris to represent you.

THE DEFENDANT: I'll move forward with representing myself, I think. I've -- I've -- I've made that decision.

*Id*. at 5-7. The court proceeded to question Mr. Muho about his understanding of the risks of self-representation and the charges he faced. Mr. Muho advised he would proceed *pro se* with Mr. Harris as standby counsel.

21.     On May 26, 2017, Mr. Muho moved the court to waive costs to issue eight witness subpoenas, including for his treating and prescribing psychiatrist, Dr. Eli Shalenberg, and for Delaware Supreme Court Justice Vaughn. D.E. 202. The court ordered Mr. Muho to set out in an *ex parte* pleading the basis for each witness subpoena. As to Dr. Shalenberg, Mr. Muho advised the court:

Defendant's third witness is Eli Shalenberger,[8] Defendant's psychiatrist between 2012 and 2015. Defendant needs and expects Mr. Shalenberger to testify that Defendant's intentions were not to defraud his hedge funds but to save them from misuse and to comply with the law. This will negate that Defendant perpetrated a fraud scheme and that Defendant used proceeds of fraud to engage in monetary transactions. Defendant also expects Mr. Shalenberger to testify as to Defendant's state of mind from his conversations with the Defendant relating to all counts of the case. Absent Mr. Shalenberger's testimony,

_____

[8] The psychiatrist Mr. Muho was attempting to subpoena was Dr. Eli Shalenberg, not Shalenberger. The actual proposed subpoena uses his correct name and last known address.

Defendant will not be able to prove or show his defense to the jury of the charged counts in this case.

D.E. 211 at 2. As the basis for the subpoena to Justice Vaughn, Mr. Muho wrote:

Defendant's fourth witness is Justice Vaughn of the Delaware Supreme Court. Defendant needs and expects Justice Vaughn to testify about the contents of an unrecorded telephone conference on a case arising from the dispute of control of Defendant's hedge funds that Defendant needs to show and prove the jury his intention not to defraud his hedge funds, engage in a fraud scheme, or engage in monetary transactions from criminal funds, and that will establish and support Defendant's defense regarding his intentions and motives for all charged counts of the case. Without Justice Vaughn, Defendant will not be able to show or prove to the jury that Defendant was the victim set up by actors of said conference in their attempt to wrest away Defendant's control over his hedge funds and that Defendant lacked criminal intent for all the charged counts of this case.

*Id*. at 2-3.

22.     On June 15, 2017, the court ordered that it would issue subpoenas for only five of the requested witnesses, omitting Dr. Shalenberg and Justice Vaughn. D.E. 221. The court offered no explanation for why subpoenas would not issue to Dr. Shalenberg or Justice Vaughn. Nevertheless, they were not subpoenaed, despite Mr. Muho's request, and they did not appear for trial or sentencing.

<u>Trial</u>

23.     Mr. Muho's jury trial then proceeded from June 26 through July 14, 2017. Mr. Muho represented himself throughout with Mr. Harris as standby counsel. He was convicted on July 14, 2017, of all 40 counts of the Second Superseding Indictment,

and sentencing was scheduled for September 26, 2017. The court ordered a Presentence Investigation Report be prepared and appointed counsel for sentencing at Mr. Muho's request. Tr. 7/14/17 at 199-201.

The Sentencing Proceeding

24.     Upon conviction, Mr. Muho asked the Court to appoint counsel for sentencing. The Court obliged and appointed Thomas Risavy, Esq. Tr. 7/14/17 at 201; D.E. 274 (7/14/17 Paperless Order). Mr. Risavy, like the prior lawyers on Mr. Muho's case, did not hire an investigator or seek funding from the court to hire and investigator.

25.     The Court advised a Presentence Investigation Report would be prepared and scheduled a sentencing hearing for September 26, 2017, subsequently continued to March 9, 2018.

26.     In preparation for sentencing, Mr. Risavy filed objections to enhancements under the Federal Sentencing Guidelines and a memorandum requesting a downward variance based on Mr. Muho's attention deficit hyperactivity disorder and drug addiction. D.E. 333. Mr. Risavy provided no records supporting the mental health concerns or the drug addiction, though they were readily available via requests or subpoenas.

27.     At the sentencing hearing, defense counsel sought a variance based on the ADHD and addiction, supported only by Mr. Muho's own letter to the Court. Counsel advised he had not learned of the ADHD or addiction until very late in the case and thus was unable to present the matters more fully. Tr. 3/9/18 at 61.

28.     Counsel presented minimal argument and no evidence at the sentencing hearing:

> MR. RISAVY: Your Honor, just to address the motion I filed requesting a variance, I know that Your Honor reads everything and I just would point to the letter where — that Mr. Muho wrote about his addiction, his HDAD [sic] and his addiction to Adderall, and ask the Court to consider that in arriving at a sentence that's sufficient but not greater than necessary.
>
> You know, I read the trial transcripts. I met with Mr. Muho on numerous occasions. And unfortunately, I didn't learn of the Adderall until very late in this case — the Adderall addiction. But I can't even, you know, suggest a sentence that's sufficient but not greater than necessary.
>
> I — I — I — having met with him, and read the transcripts, and gone through this, I just — it's — it's hard for me to — to understand or fathom what — what he was — you know, what he was going through, what he was trying to accomplish in this. And you know, certainly he, you know, did it the wrong way, so to speak. And I — I would submit that I believe that a lot of that had to do with his disorder. And I would just, you know, on his behalf, request the Court to consider those things in reaching a sentence in this case.

*Id*. At 61-62, 63.

20

29.    After finding that a slight variance was warranted from the guideline sentence, which started at 282 months, the court imposed a sentence of 264 months' imprisonment with restitution of $1,733,198.46. *Id*. At 69-70. The Court's Judgment was entered March 12, 2018.

**ARGUMENT AND MEMORANDUM OF LAW**

I.    **Claim I**: **Pre-trial counsel was ineffective for failing to adequately prepare for the competency evaluation, resulting in an unreliable finding of competency to stand trial that undermines confidence in the resulting conviction and sentence.**

a.    <u>Sixth Amendment Standard for Ineffective Assistance of Counsel</u>[9]

30.    The Sixth Amendment to the United States Constitution guarantees the accused the right to the effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 684-86 (1984).  An ineffective assistance of counsel ("IAC") claim "is an attack on the fundamental fairness of the proceeding" and requires the movant to show (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id.* at 697, 687. Deficient performance is assessed "under prevailing professional norms." *Id*. at 688.

––––––––––––––––––––

[9] The standard for Sixth Amendment Ineffective Assistance of Counsel is incorporated for all claims.

31.     To prove counsel's deficient performance resulted in prejudice, a petitioner must show that counsel's errors "undermine confidence in the outcome" such that there is a reasonable probability the outcome would have been different but for counsel's errors. *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017). The reasonable probability standard is lower than a "more likely than not" standard. *Holland v. Jackson,* 542 U.S. 649, 654 (2004); *Woodford v. Visciotti,* 537 U.S. 19, 22 (2002) (*Strickland* specifically rejected the proposition that the defendant had to prove it more likely than not that the outcome would have been altered). Any additional amount of prison time resulting from counsel's ineffective representation is prejudicial under the Sixth Amendment. *See Glover v. U.S.*, 531 U.S. 198, 203 (2001); *Lafler v. Cooper*, 566 U.S. 156 (2012).

32.     Investigation is a core competence of defense representation. ABA Standard 4-4.1. *See*, *e.g.*, *Strickland*, 466 U.S. 668, 690-91 (1984). Without reasonable investigation, counsel's decisions about presentation of defense can only be reasonable to the extent the decision not to investigate was reasonable. *Wiggins v. Smith*, 539 U.S. 510, 514 (2003) ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Defense counsel is not constitutionally required to hire a defense investigator in every case, but the decision whether to do

so must be informed by the facts of the case and potential arguments at trial and sentencing. *See* ABA Standard 4-4.1(d). If a client cannot afford to hire an investigator, defense counsel should move the court to authorize funding. ABA Standard 4-4.1(e). The decision not to investigate must be an informed one to be professionally reasonable. *Strickland*, 466 U.S., 490-91.

Factual Support for Claim I[10]

33.     Mr. Muho was represented by two lawyers prior to his competency evaluation, neither of whom investigated Mr. Muho's mental health and both of whom repeatedly described Mr. Muho as unable to assist in his own defense. Neither retained nor sought appointment of an investigator.

34.     Ms. Piñera-Vasquez met with Mr. Muho only twice before his competency evaluation and failed to respond to any of his communications until he returned to Miami months later. For Rpt. at 9.

35.     Neither of his attorneys conducted any investigation into Mr. Muho's history of drug dependence and mental illness. Declaration of Anila Gjika at 5, attached as Exhibit A. They never got releases from Mr. Muho to collect records mental health

---

[10] Statement of facts for Claim I is incorporated by reference to all other claims in the Motion.

records readily available at the Federal Detention Center. Nor did they interview Mr. Muho's family regarding his mental health. *Id.* When Mr. Muho's sister expressed her acute concern to counsel that her brother was mentally unwell, counsel failed to inquire further. *Id.*

36.     Evidence of Mr. Muho's mental instability was readily available within the first months of his incarceration. Records of two treating psychiatrists, extensive pharmacy records revealing heavy, long-term use of Adderall, and Federal Detention Center mental health records could all have been obtained with simple releases and requests. Counsel collected none of it.

37.     As a result, when Mr. Muho was sent for a competency evaluation, the forensic evaluator had no psychiatric and medication history on which to base her evaluation. The forensic evaluator, Dr. Kissim, in her report wrote:

> Contact was initiated with Sylvia Piñera-Vasquez via telephone but was never established. E-mail communication was also pursued. Ms. Piñera-Vasquez indicated she will forward documents; however, none were received at the time of this report writing.

For. Rpt. at 2. The records cited in the Forensic Report were provided solely by the Government and included only prosecutorial allegations (Superseding Indictment, Affidavit in Support of Criminal Complaint, Criminal Complaint, and NCIC criminal history), the Court's Order for Competency Evaluation, court filings in the case of Gerti Muho v. Alphonse Fletcher, Jr., et al, and discovery materials selected

24

by the Government. *Id*. Dr. Kissim was thus forced to base her report entirely on information provided by the Government and by Mr. Muho's own self-report, at a time when his competency was in question.

38.     Without underlying history of mental health treatment, Dr. Kissim found Mr. Muho's self-report "internally consistent," and wrote that "there was no information contradicting this report." *Id*. Although Mr. Muho reported using Adderall regularly during and after law school, *Id.* at 5, he did not advise the evaluator about the high doses he was taking or about the symptoms of anxiety, paranoia, sleeplessness, or nervousness that others observed in him during the period leading up to his arrest. Declaration of Anila Gjika at 4-5; Declaration of Julieta Muho at 3. Dr. Kissim ultimately wrote that "Mr. Muho does not present with any documented history of psychiatric symptoms or treatment." For. Rpt. at 7.

39.     The competency evaluation of Mr. Muho was conducted without sufficient information to make a reliable finding—without Mr. Muho's psychiatric records, without consultation with defense counsel who had identified mental health issues, without any witnesses to Mr. Muho's long-standing psychiatric treatment, without records or witness statements to his addiction to over-prescribed stimulants, and without observations of his acute withdrawal from psychoactive drugs when his

competency was called into question. Once the Forensic Report was provided to the

Court, it was not questioned by the Government, by counsel, or by the Court.

> Based on the fact that neither party is challenging the question as to
> whether Mr. Muho is competent to stand trial, the Court has reviewed
> the report relating to the relevant considerations with regard to the issue
> of competency, including Mr. Muho's understanding of the charges, the
> verdict, and the potential consequences, as well as Mr. Muho's
> understanding of the trial participants and the process and his ability to
> assist his attorney in preparing and implementing a defense, as well as
> a recognition of Mr. Muho's competency and his decision-making
> ability. The Court accepts the findings of the forensic report and
> determines that Mr. Muho is competent to stand trial.

Tr. 1/9/17 at 5.

40.    Because counsel failed to provide relevant records and observations to the

forensic evaluators and provided no additional evidence to the Court questioning

Mr. Muho's competence to stand trial, the Court found Mr. Muho competent. Mr.

Muho then proceeded to be convicted and sentenced while incompetent, despite the

unreliable finding of competence.

41.    During the trial, Mr. Muho displayed signs that he lacked the mental capacity

to represent himself—less the moments of aggressive statements toward the

prosecutor and apparent confusion about process during the trial, but rather his

seemingly fixed delusional belief as to what the trial was really about. Mr. Muho

appeared to spend less time and effort during trial mounting an actual defense to the

charges he faced, and far more time trying to case blame on individuals who were

not even part of the proceedings and whose actions would not have constituted a defense to the charges he faced. Mr. Muho's drug- and drug-withdrawal-induced delusions about the circumstances of his employment with, and termination from, Fletcher Asset Management, permeated the entire trial proceeding and demonstrated his incompetence to stand trial, much less his competence to represent himself.

42.    From the defense opening statement, which focused on the circumstances by which Mr. Muho lost his home to a predatory lender and then moved to he was authorized to use fake IDs to assist in bringing down his former employer Alphonse Fletcher's scheme to defraud Louisiana pension funds of $100,000,000, Mr. Muho revealed his delusional beliefs and inability to understand the nature of the proceedings against him. Mr. Muho's focus on event irrelevant to the charges he faced continued throughout the trial.

<u>Legal Standard for Competence to Stand Trial</u>

43.    A defendant has a due process right not to be tried while incompetent. *Drope v. Missouri*, 420 U.S. 162, 171-72, (1975); *Pate v. Robinson*, 383 U.S. 375, 385 (1966). "[W]ithout competence, a defendant cannot meaningfully exercise his other constitutionally guaranteed rights," and "trying an incompetent defendant is like trying an absent defendant." *United States v. Wingo*, 789 F.3d 1226, 1235 (11th Cir. 2015).

44.    Whether a criminal defendant is competent to stand trial requires a court to determine (1) whether the defendant has "a rational as well as factual understanding of the proceedings against him," and (2) whether the defendant "has the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky v. United States*, 362 U.S. 402 (1960) (*per curium*). "A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial." *Drope*, 420 U.S., at 171.

45.    The Court held a hearing on January 9, 2017, at which it found Mr. Muho understood "the charges, the verdict, and the potential consequences, … the trial participants and the process," and stated that he had the "ability to assist his attorney in preparing and implementing a defense, as well as … competency and decision-making ability." The Court therefore "accept[ed] the findings of the forensic report and determine[d] that Mr. Muho [was] competent to stand trial." Tr. 1/9/17 at 5.

46.    The Court did not inquire into the bases for the forensic report or the evidence on which it was based, nor did it determine that Mr. Muho's understanding of the charges or his ability to assist counsel were grounded in reality-tested thinking. Even when Mr. Muho, at trial, demonstrated continued delusional beliefs about the nature

28

of the proceedings against him, the Court did not order further inquiry into his competence.

47.     The assessment of competence must take into consideration three factors: "prior medical opinion regarding the defendant's competence," "evidence of the defendant's irrational behavior," and "his demeanor at trial." *United States v. Cometa*, 966 F.3d 1285, 1291 (11th Cir. 2020) (citing *United States v. Dixon*, 901 F.3d 1322, 1341 (11th Cir. 2018). Where, as here, the medical opinion of Mr. Muho's competence was all that was introduced at the competency hearing, it is accordingly crucial that the medical opinion be based on full and reliable information.

48.     Further, Mr. Muho's counsel at the competency hearing, Mr. Harris, did not challenge the finding of competency, instead simply accepting the Forensic Report as conclusive without further investigation. In accepting without challenge the findings of the forensic evaluation order at the Government's request, Mr. Harris "failed to subject the prosecution's case to meaningful adversarial testing," one of three instances in which a court reviewing a challenge for ineffectiveness of counsel can presume prejudice. *Reyes-Vasquez v. United States*, 865 F.Supp. 1539, 1545 (S.D. FL. 1994) ("In *United States v. Cronic*, 466 U.S. 648 (1984), a companion to the *Strickland* decision, the Supreme Court established that in certain circumstances, the prejudice prong of the *Strickland* test may be presumed.") "[I]f counsel entirely

fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Reyes-Vasquez*, 865 F. Supp., at 1545. (quoting *Cronic*, 466 U.S., at 658).

49.     Had counsel properly provided relevant supporting documentation and adequately raised concerns about Mr. Muho's competence, the competency evaluation would more likely have yielded an accurate result—that Mr. Muho was not in fact competent to stand trial, much less to represent himself. Had counsel provided the necessary and available information needed to make a reliable determination of competency, there is a likelihood Mr. Muho would not have been tried and convicted while incompetent.

<u>Legal Standard for Self-Representation</u>

50.     As the Supreme Court held in *Indiana v. Edwards*, a defendant can be competent to stand trial but still not be competent to represent himself. *Indiana v. Edwards*, 554 U.S. 164, 177-78 (2008). A trial court can therefore impose counsel on a criminal defendant who has expressed his desire to represent himself when to do otherwise would deprive the defendant of a fair and reliable trial and sentencing, or when his self-representation would result in proceedings that do not "appear fair

to all who observe them." *Id.* (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988).

51.     As the American Psychiatric Association ("APA") *amicus* brief in *Indiana v. Edwards* explained:

> Disorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illness can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant.

*Id.* at 176.

52.     As noted by pre-trial counsel in their motions to withdraw and by standby counsel in his attached Declaration, Mr. Muho displayed all the symptoms cited in the APA's brief in *Edwards*. The Court itself noted several of the symptoms in ordering the competency evaluation and advising Mr. Muho during the trial.

53.     Mr. Muho's conduct during trial, particularly his fixation on his deluded understanding of the nature and circumstances of the charges against him and the purpose of the proceeding undoubtedly contributed to his conviction. The Court's decision not to insist Mr. Muho be represented by counsel, based on the unreliable conclusions of the competency evaluation, prejudiced Mr. Muho at trial by allowing him to proceed *pro se* while incompetent.

54.     Because counsel failed to provide the forensic evaluator any of the available evidence indicating Mr. Muho's underlying psychiatric problems, the Forensic Report and competency finding based on its conclusions were unreliable. As such, there is a serious question as to the whether Mr. Muho was tried while incompetent and whether the Court should have insisted *sua sponte* that he at least be represented by counsel rather than continue to proceed *pro se*. His convictions and sentence should therefore be vacated.

55.     Should the Court find the unreliability of the competency findings to have been proven by the facts stated herein, Mr. Muho, through counsel, asks for an evidentiary hearing to further develop the claim that Mr. Muho was incompetent to stand trial and that he was incompetent to represent himself.

**II.     <u>Claim II</u>: Trial counsel was ineffective for failing to ensure Mr. Muho was competent to understand the plea agreement with which he was presented before trial, causing Mr. Muho to proceed to trial despite his inadequate understanding of the case against him and resulting in an excessive sentence.**

56.     Prior to Mr. Muho's being found competent to stand trial, the Government made a plea offer that Mr. Muho was made to consider without the benefit of the effective assistance of counsel and while he was incompetent. Exhibit D at 4.

57.   Further, the fact that a plea offer had been made was never conveyed to counsel who represented Mr. Muho after the determination that he was competent to stand trial.[11]

<u>Legal Standard for Ineffective Assistance of Counsel at Plea Stage</u>

58.   The United States Supreme Court has "long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, at 57 (1985); *see also Richardson*, 397 U.S. 759, 770–771 (1970)." *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010). Counsel is obligated to advise the client of "the advantages and disadvantages of a plea agreement." *Libretti v. United States*, 516 U.S. 29, 50–51 (1995).

59.   "Before deciding whether to plead guilty, a defendant is entitled to the "effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Counsel's assistance is needed to assist a defendant in assessing the relative risks of trial and the potential benefits of a plea offer. *Id.* "[T]he decision to plead guilty before

---

[11] Mr. Muho maintains his challenges to the reliability of that competency evaluation as outlined in Claim I, *supra*.

evidence is in frequently involves the making of difficult judgments. … Counsel must predict how the facts as he understands them, would be viewed by the court." *Id.* at 769. But counsel cannot provide effective assistance in advising whether to plead guilty or proceed to trial if the client is incompetent at the time the plea is presented, because a criminal defendant must be competent to decide whether to waive his constitutional rights or proceed to trial. *See Pate v. Robinson*, 383 U.S. 375, 384 (1966) ("[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial.").

60.     The basic rule for competency to stand trial is that a defendant must (1) have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) possess "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (internal quotation omitted); *see also Pate*, 383 U.S., at 385 (holding that failure to provide adequate procedures to ensure that the *Dusky* test is met deprives a defendant of his constitutional right to a fair trial).

61.     "[I]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it;" *Lafler v. Cooper*, 566 U.S. 156, 165 (2012); and he must be competent decide whether to accept or reject it.

*Pate v. Robinson*, 383 U.S., at 384. Thus, in the context of a defendant suffering from diminished capacity at the time the plea offer is presented, the effective assistance of counsel to which he is entitled mandates that counsel take reasonable action to ensure the defendant has the present capacity to make an informed decision as to whether to accept or reject the offer.

62.     Federal courts have held that an attorney's failure to move for competency evaluation "violates the defendant's right to effective assistance of counsel when 'there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered.'" *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001)).

63.     At the time the plea was presented, Mr. Muho's counsel had multiple points of evidence indicating Mr. Muho was unable to assist in his defense and failed to understand the nature of the proceedings against him. D.E. 34 at 2-4 (counsel cited for reasons to withdraw from representation "the complete inability to communicate" and "complete lack of trust" between attorney and client). Counsel advised the Court of his "total inability to represent Mr. Muho to minimum standards of representation…." D.E. at 3. Rather than ask for a competency evaluation when

counsel had reason to believe Mr. Muho was unable to assist in his own defense due to mental disease or defect, counsel moved to withdraw from the case.

64.     Had counsel moved for a competency evaluation rather than for withdrawal from the representation, the Court would have held an evidentiary hearing to determine whether Mr. Muho was competent to accept or reject the plea agreement. Under 18 U.S.C. § 4241(a), the court must grant an evidentiary hearing when

> there is a reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Thus, but for counsel's failure to request a hearing, Mr. Muho lost the opportunity to rationally consider the decision whether to accept or reject the plea.

65.     Initial counsel's failure to move for a competency evaluation violated Mr. Muho's right to the effective assistance of counsel and led him to reject a favorable plea agreement he would have accepted had he been of sound mind at the time it was presented.

66.     Mr. Muho's second attorney, Sylvia Piñera-Vasquez, appointed by the Court to replace Mr. Rosen, faced a similar presentation, which she cited in her Motion for Leave to Withdraw as Counsel.

> Recently, undersigned counsel met with Mr. Muho to review the charges in the indictment, the discovery and his theory of the case. During this meeting, Mr. Muho refused to focus on the nature of the

charges and became increasingly hostile when requested to focus on the evidence provided by the government. Rather, Mr. Muho insisted on focusing on his theory of defense before even understanding the nature of the charges in the indictment. To further complicate matters, once undersigned counsel attempted to convey the government's current plea offer, Mr. Muho refused to discuss the case.

67.    At the September 13, 2016 hearing on the Motion, counsel stated that Mr. Muho "went on for about an hour about how the Indictment was a false charge, that it really didn't exist, and that somehow the AUSA had deceived both the Court and the public by filing this false Indictment." Tr. 9/13/16 at 12.

68.    Mr. Muho's delusions about the case against him were apparent to both pre-trial counsel. Ms. Piñera-Vasquez explained to the court of her first meeting with Mr. Muho: "I did leave the meeting with the distinct impression that Mr. Muho still believed the Indictment was a false document." Tr. 9/13/16 at 12. Despite her rational explanation of how the Indictment could not be fraudulent, Mr. Muho remained fixed in his delusional belief. *Id*.

69.    Ms. Piñera-Vasquez therefore had reason to believe Mr. Muho was incompetent when she attempted to present him with the Government's offered plea and had the obligation to protect Mr. Muho from his irrational thinking. Ms. Piñera-Vasquez did not move for a competency evaluation and did nothing to preserve the plea offer the Government made while Mr. Muho was incompetent or pass

information about its existence on to Mr. Muho's next lawyer, David Harris. Declaration of David Harris at 2.

70.     The prejudice of counsel's failure was that Mr. Muho proceeded to trial in an unwinnable case, with no cogent defense, represented himself *pro se* while incompetent, and was sentenced to 264 months imprisonment when he would have had the opportunity to accept an offer of one third the time he received.

### Ineffective Assistance of Counsel—Failing to Raise Competency Concerns Prior to Rejection of Plea Offer

71.     Whether trial counsel rendered constitutionally adequate representation with respect to Mr. Muho's incompetence is assessed against the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). The assessment whether Mr. Muho's trial counsel fulfilled their duties to insure he did not proceed through critical stages of the proceeding while incompetent must be guided by codified norms such as those in the American Bar Associations *Standards for Criminal Justice* ("ABA Standards"). *Wiggins v. Smith* 539 U.S. 510, 521 (2003).

72.     The relevant ABA Standards clearly required Mr. Muho's first attorney to secure an independent assessment of Mr. Muho's competency from the first time he had reason to doubt it. ABA Criminal Justice Standards, §4-3.6 and commentary; ABA Standards, Mental Health, Standard 7-4.2 ("Defense counsel should move for evaluation of the defendant's competence to stand trial whenever the defense

38

counsel has a good faith doubt as to the defendant's competence"). Because, in part, "judges must depend to some extent on counsel to bring [competence] issues into focus," *Drope v. Missouri*, 420 U.S. 162, 176-77 (1975), prevailing professional norms require that defense counsel bring evidence suggesting incompetence to the attention of the court. *Williamson v. Ward*, 110 F.3d 1508, 1517 (10th Cir. 1997).

73.    Mr. Muho's first counsel was presented with evidence that Mr. Muho was incompetent at the time the plea was presented and had a duty to bring his concerns about his client's competence to the Court at that time. It is professionally unreasonable for a lawyer not to present evidence of incompetence because he himself believes the defendant competent. *Hull v. Freeman*, 932 F.2d 159, 168 (3d Cir. 1991); *Woods v. State*, 994 S.W.2d 32, 39 (Mo. App. 1998) (question whether defendant was competent to be sentenced "was not counsel's call"; due process hearing required); *Curry v. Zant*, 371 S.E.2d 527, 529-30 (Ga. 1988) (finding deficient performance for failure to seek psychiatric evaluation where trial counsel stated he felt, based in part on his own observations, that evaluation would have been futile); ABA Standards, Mental Health, 7-4.2 ("In any event, counsel should make known to the court and to the prosecutor those facts known to counsel which raise the good faith doubt of competence.").

74.    Whether Mr. Muho wanted to be found competent at the time the plea was presented before trial cannot control counsel's decision as to whether to raise competence with the court. Thus, although Mr. Muho told Mr. Harris he did not want to be found incompetent,[12] Harris had a duty to raise the issues. Competence is fundamental to the adjudication of a defendant's charges. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). Due process requires that a defendant be competent at all determinative stages of the proceedings. *Riggins v. Nevada*, 504 U.S. 127, 139-140 (1992) (Kennedy, J., concurring in judgment). It is thus professionally unreasonable for a lawyer to refrain from presenting evidence of incompetence because the defendant whose competence is in question does not want to be found incompetent. *Hull I*, 932 F.2d at 168-69 (such an explanation for counsel's omission "can be dismissed as illegitimate"); ABA Standards, Mental Health, 7-4.2 ("If client objects to such a motion being made, counsel may move for evaluation over the client's objection.").

---

[12] *See* Declaration of David Harris, at para 5. ("At the January 9, 2017 competency hearing, there was no challenge to Mr. Muho's competency because it was Mr. Muho's desire not to do so.").

<u>Facts Supporting Claim II</u>[13]

75.     At the time of his arrest in May of 2016, Mr. Muho, under direction of his psychiatrist, Dr. Eli Shalenberg, was taking 120 mg of Adderall per day—twice the maximum daily recommended dosage—and had been going without sleep for days at a time regularly over the previous three years. His mind was deeply damaged from the drugs and lack of sleep, and he was heavily addicted. Dec. of A. Gjika at 2-5.

76.     Upon arrest, Mr. Muho was instantly deprived of the Adderall on which he had been dependent for years, throwing him into withdrawal and preventing him from thinking clearly. His withdrawal symptoms included inability to sleep or focus; Mr. Muho did not return to his baseline mental health until well after his conviction in 2018. Dec. of A. Gjika at 6; Report. of J. Merikangas at 4 (attached as Exhibit D).

77.     In his second month of incarceration, Mr. Muho was presented with a plea agreement by his then-attorney Michael Rosen. The agreement provided that Mr. Muho would plead guilty and receive a sentence of approximately eight years. But Mr. Muho was not thinking clearly at the time and was not effectively counseled by his attorney. Distrustful and paranoid, Mr. Muho became frustrated and fearful that

---

[13] Facts supporting Claim II are incorporated for all other claims in the Motion.

his attorney was not providing him effective representation. As such, Mr. Muho refused the plea agreement against his counsel's advice, and proceeded to trial.

78.     At the time the plea was presented, Mr. Muho did not have a relationship of trust with his attorney. Given Mr. Muho's erratic and self-destructive behavior, counsel at that time had a duty to ensure Mr. Muho had the present ability to knowingly and voluntarily consider the plea offer and make a rational decision whether to accept or reject it. Instead, counsel moved to withdraw from the case.

79.     Given Mr. Muho's mental instability evident in his paranoia, rapid speech, uncontrolled repetition of word and phrases, and fixation on irrelevant and paranoid topics unrelated to his case, counsel was obliged to ensure Mr. Muho was competent to reject the plea offer and to preserve that offer in Mr. Muho's interest. *Cf. Hull v. Freeman*, 932 F.2d at 168-69 ("desires of defendant whose mental faculties are in doubt to be found competent does not absolve counsel of his or her independent professional responsibility.").

80.     Due to counsel's ineffective assistance, Mr. Muho lost the benefit of considering and accepting a plea agreement by which he would have been sentenced to 14 fewer years incarceration.

   **III.    CLAIM III: Mr. Muho's trial counsel was ineffective for failing to object to Mr. Muho's request to waive counsel, due to a lack of investigation of Mr. Muho's competency at the time, which would have revealed that Mr. Muho was not competent to make a knowing**

**or voluntary waiver; and further that he was not competent to represent himself.**

<u>Mr. Muho could not make a knowing or voluntary waiver.</u>

81.    A defendant may exercise his right to represent himself by making a "knowing and voluntary" waiver of his right to counsel. *United States v. Stanley*, 739 F.3d 633, 645 (11th Cir. 2014) (citing *Faretta v. California*, 422 U.S. 806 (1975)). This Court has identified eight factors for consideration when determining whether a criminal defendant executed a knowing and voluntary waiver of his right to counsel: (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's contact with his lawyers prior to trial; (3) the defendant's knowledge of the charges against him, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which standby counsel aided the defendant; (7) mistreatment or coercion of the defendant; and (8) whether the defendant was trying to manipulate the events of trial. *Id*. at 645-46 (citing *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065-67 (11th Cir. 1986)).

82.    At the time of his *Faretta* hearing, as further described in the Report of James Merikangs, M.D., (Exhibit D) Mr. Muho was suffering from acute Adderall withdrawal that had a deleterious effect on his mental health (*Fitzpatrick* Factor #1).

He had an aggravated and non-meaningful relationship with his lawyers (*Fitzpatrick* Factor #2). He had knowledge of the charges against him, but not a rational understanding thereof (*Fitzpatrick* Factor #3). He had no experience in criminal trials (*Fitzpatrick* Factor #5). His standby counsel had not yet been appointed and his existing counsel was seeking to withdraw and had no relationship with him (*Fitzgerald* Factor #6). He was not trying to manipulate anything (*Fitzpatrick* Factor #8). Thus, six out of the eight *Fitzpatrick* factors counseled against finding his waiver knowing and voluntary; and yet, the most important of those factors – his deteriorating mental health – had not been investigated by his existing counsel.

83.     Without knowledge and voluntariness, a *Faretta* waiver is not valid. And without competency, a defendant cannot knowingly and voluntarily waive a constitutional right. *See Robinson*, 383 U.S. at 384 ("It is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."); *Wingo*, 789 F.3d at 1235 ("without competence, a defendant cannot meaningfully exercise his other constitutionally guaranteed rights").

84.     At the time of the *Faretta* hearing, Mr. Muho was unable to rationally consult with his lawyer; nor did he have a rational understanding of the charges against him. Until shortly before the *Faretta* hearing, Mr. Muho was represented by Ms. Pinera-

Vasquez, who had made clear on the record that she could not effectively represent Mr. Muho based on his inability to communicate with her, lack of understanding of the case against him, and inability to focus on reviewing discovery or mounting a defense. Ms. Piñera-Vasquez attempted to withdraw from the representation formally, and effectively ceased to represent Mr. Muho at all once the competency evaluation had been ordered, even failing to provide basic documents to the evaluators or even responding to their requests to speak.

85.    For the month leading up to the *Faretta* hearing, Mr. Muho was represented by Mr. Harris, who characterizes his entire representation of Mr. Muho as "standby counsel," and describes Mr. Muho's irrational fixations, paranoia about the proceedings, and inability to rationally focus on his charges or defense. *Harris Affidavit* at paras. 6-7.

86.    Counsel Harris should have objected to the *Faretta* hearing on that basis; he did not. Considering that he apparently feels his entire representation of Mr. Muho was as "standby counsel," his assistance to Mr. Muho on this critical constitutional right (waiver of counsel) was entirely absent, in that he did not actually serve as Mr. Muho's counsel at the *Faretta* hearing at all.

87.    Counsel Harris should also have investigated Mr. Harris's ability to make a knowing and voluntary waiver of his constitutional rights. He had clear reason to

question Mr. Muho's mental health at that time. A failure to investigate under such circumstances violated his "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691 (1984). *See also Hull v. Kyler*, 190 F.3d 88, 112 (3d Cir. 1999) ("At the juncture of the dual constitutional requirements of effective assistance of counsel and a defendant's competency, the Supreme Court has implied that defense counsel has a special role in effectively ensuring that a client is competent to stand trial."). It was thus, at least, deficient performance under the Sixth Amendment; at worst, it was a complete absence of counsel.

88.     The absence of the assistance of counsel for exercising a constitutional waiver is a Sixth Amendment violation regardless of any ability to show prejudice. *United States v. Cronic*, 466 U.S. 648, 662 (1984) (prejudice need not be shown if an accused is "denied the presence of counsel at a critical stage of the prosecution"). And the ultimate prejudice caused by erroneously accepting Mr. Muho's *Faretta* waiver – a constitutional denial of counsel at trial – is certainly presumed. *Cronic*.

89.     If prejudice need be shown, however, a reasonable investigation by Counsel Harris would have uncovered the following critical *Fitzpatrick* factor, which would have weighed heavily against any finding of a knowing or voluntary waiver: the Adderall withdrawal symptoms Mr. Muho experienced when called on to waive his

constitutional rights included inability to sleep, rapid and unfocused thinking, hyper-focus on minute details while missing larger concepts and issues of import, and cravings for sweets, gambling, and smoking that left him unable to concentrate on matters before him. Report of J. Merikangas at 3-4.

90.    Furthermore, Mr. Muho was indeed incompetent to stand trial, as alleged *infra*. *Ipso facto*, he could not enter a knowing and voluntary waiver.

91.    Because counsel failed to investigate and present this information, Mr. Muho was prejudiced by being permitted to represent himself at trial, for all the reasons stated above. *See paras.* 40-41, *supra.*

Mr. Muho was not competent to represent himself.

92.    An accused is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (quoting *Dusky v. United States*, 362 U.S. 402 (1960). When it comes to representing one's self at trial, however, *Indiana v. Edwards*, 554 U.S. 164 (2008), set out a higher standard for competency than *Dusky*. *See United States v. Dantes*, 750 Fed.Appx. 800, 808-809 (11th Cir. 2018) (unpub.) (the "baseline level of competency alone may be insufficient to demonstrate a defendant's competency to represent himself, given the different

capacities needed to proceed to trial without counsel as opposed to merely assisting counsel.") (quotations omitted) (citing *Edwards*).

93.     Under *Edwards*, trial judges are permitted to "take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." 554 U.S. at 177-78.

94.     The Supreme Court has not opined whether *Edwards* requires this higher standard in federal criminal trials, or merely permits it. Under pre-*Edwards* caselaw, the Court had found that trial courts could evaluate competency-to-represent-one's-self using the trial-competency standard found in *Dusky v. United States*, 362 U.S. 402 (1960) ((1) "rational as well as factual understanding of the proceedings against him," and (2) "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding"). *Godinez v. Moran*, 509 U.S. 389, 402 (1993) (courts free, but not required, to apply more than the *Dusky* competency standard to assess competency to represent one's self). *Edwards* did not overrule *Godinez*, but

held that a state court *may* nonetheless apply a higher standard than *Dusky*'s; and went on to discuss the appropriate constitutional standard at length.

95.     This Court has, "like other courts, [] looked to *Edwards* for guidance in the context of federal prosecutions[.]" *United States v. Jackson*, 859 Fed.Appx. 389, 390 n.1 (11th Cir. 2021) (unpub.) (citing *United States v. Garey*, 540 F.3d 1253, 1261, 1268 n.9 (11th Cir. 2008) (*en banc*)). It has not held one way or the other whether *Edwards* must be applied by the District Courts in federal criminal trials. *See United States v. Talley*, 562 Fed.Appx. 760, 768 (11th Cir. 2014) (unpub.) (assuming without deciding that *Edwards* required a higher standard for competency to waive counsel in a federal trial). Other Circuits have gone farther and required their District Courts to apply *Edwards*. *See, e.g., United States v. Berry*, 565 F.3d 385, 392 (7th Cir. 2009) ("Edwards applies to the federal courts equally."). *See also, e.g., United States v. Audette*, 923 F.3d 1227, 1237 (9th Cir. 2019) (applying *Edwards*); *United States v. Olivares*, 843 F.3d 752, 761 (8th Cir. 2016) (same); *United States v. McKinney*, 373 Fed.Appx. 74 (D.C. Cir. 2010) (unpub.) (same).

96.     Trial counsel is deficient for failing to move the court to find Mr. Muho incompetent to represent himself, even in light of the Court's finding of competence to stand trial. *Edwards* (competency to represent one's self requires more than competency to stand trial). Even if the *Dusky* standard governed Mr. Muho's

competency to represent himself, he met it at the time of his *Faretta* hearing. *Dusky*, 362 U.S. at 402 ("sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him.").

97.    At the time of the *Faretta* hearing, Mr. Muho was unable to rationally consult with his lawyer; nor did he have a rational understanding of the charges against him. *See discussion in paras.* 4-10. If trial counsel had conducted a reasonable investigation, he would have uncovered Mr. Muho's unstable and irrational mental state due to Adderall withdrawal; and that evidence would have established that Mr. Muho was not competent to represent himself under *Edwards* or *Dusky*.

98.    Counsel Harris thus should have objected to the *Faretta* hearing not only on the ground that Mr. Muho's waiver was unknowing/involuntary, but also because Mr. Muho was incompetent to represent himself. Counsel had clear reason to question Mr. Muho's mental health, and a failure to investigate under such circumstances was ineffective for the same reasons asserted *supra. See paras.* 4-10.

**IV.    <u>CLAIM IV</u>: The trial court failed to reassess Mr. Muho's competency to stand trial once it became clear that Mr. Muho did not rationally understand the allegations against him. Mr. Muho's appellate counsel was ineffective for failing to raise this claim.**

99.    A defendant is competent to stand trial if he "has a rational as well as factual understanding of the proceedings against him." *Drope*, 420 U.S. at172 (quoting *Dusky*). Even if Mr. Muho possessed this understanding at the time of his *Faretta* waiver, he did not retain that rational understanding throughout the trial itself.

100.    "Competency is a requirement throughout an entire trial." *United States v. Cometa*, 966 F.3d 1285, 1291 (11th Cir. 2020). If a trial court "learns of information that raises a bona fide doubt regarding the defendant's competence," due process requires a new hearing. *Wingo*, 789 F.3d at 1235.

101.    A District Court is required both by the Constitution and by 18 U.S.C. Section 4241(a) to *sua sponte* conduct a competency hearing in such a circumstance. *Cometa*, 966 F.3d at 1291. The triggering event for a sua sponte hearing is "bona fide doubt." *Id.*

102.    Even if a district court has found a defendant competent when the trial begins, "a significant change in circumstances in the midst of trial may render a second competency hearing proper." *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 82 (1st Cir. 2009). A key consideration is "evidence of the defendant's irrational behavior." *Cometa*, 966 F.3d at 1291 (quoting *United States v. Dixon*, 901 F.3d 1322, 1341 (11th Cir. 2018)). *See also Drope*, 420 U.S. at 180 ("evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to

stand trial are all relevant in determining whether further inquiry is required, but []
even one of these factors standing alone may, in some circumstances, be
sufficient.").

103.   Mr. Muho's defense revealed an irrational understanding of the prosecution
against which he was defending himself *pro se*. *See paras.* 40-41, *supra.* He had,
due to his mental illness, a delusional belief system that precluded him from
rationally understanding the reason for his criminal trial.

104.   A person with a delusional belief system may be able to recognize that the
government has identified certain statutory violations with which they have indicted
him; but may nonetheless believe they are being prosecuted (and their freedom
threatened) for entirely other reasons. Such a person lacks an appreciation of the
connection between his charges and his prosecution; and thus lacks a rational
understanding of his trial. In other words, it is not enough that an accused "can
identify the stated reason for his" criminal charges, *Panetti v. Quarterman*, 551 U.S.
930, 960 (2007); "A prisoner's awareness of the State's rationale . . . is not the same
as a rational understanding of it." *Id.* (reversing "a rule that deems delusions relevant
only with respect to the State's announced reason for a punishment or the fact of an
imminent execution, [] as opposed to the real interests the State seeks to vindicate.").

105.   Appellate counsel in this case failed to bring this constitutional claim, despite clear record support. That violated Mr. Muho's Sixth Amendment right to effective assistance of counsel on direct appeal.

106.   To prevail on a claim of ineffective assistance of appellate counsel, a movant must show that "(1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance, he would have prevailed on appeal." *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008). But, while Mr. Muho must demonstrate the prejudice caused by *appellate counsel's* failure, he does not need to prove harm caused by the *Drope* error itself. *United States v. Huguenin*, 950 F.2d 23, 28 (1st Cir. 1991) (*Drope* error can never be harmless) (citing *United States ex. rel. Lewis v. Lane*, 822 F.2d 703, 706 (7th Cir. 1987)).

107.   Appellate counsel's deficiency prejudiced Mr. Muho because his *Drope* claim was meritorious and would have been resolved in his favor without even needing a showing of harm.

**V.    <u>CLAIM V</u>: The trial court failed to reassess Mr. Muho's competency to represent himself once it became clear that Mr. Muho did not rationally understand the allegations against which he was *pro se* defending himself. Mr. Muho's appellate counsel was ineffective for failing to raise this claim.**

108.   Even if Mr. Muho was competent to represent himself at the time of his *Faretta* waiver, the trial court should have re-examined his competency to represent himself in light of the irrational defense he presented at trial.

109.   As with competency to stand trial, competency to represent one's self is not static. Whether measured by the *Dusky* or *Edwards* standards, *supra*, Mr. Muho's performance during trial should have triggered a new *Faretta* inquiry by the court. *See United States v. Audette*, 923 F.3d 1227, 1236 (9th Cir. 2019) ("Having concluded that Audette's waiver of counsel was unequivocal, knowing, and voluntary, we consider whether that waiver was nullified by subsequent events so as to require another *Faretta* hearing. A defendant's waiver remains valid and in effect throughout a criminal proceeding unless intervening events substantially change the circumstances existing at the time of the initial colloquy.") (internal quotations omitted).

110.   For the same reasons that his trial competency should have been re-examined under *Drope*, *supra,* his competency to represent himself should have been re-examined once it became clear that he had an irrational understanding of the prosecution he was *pro se* defending himself against. *Supra.*

111.   For the same reasons that Mr. Muho's appellate counsel was deficient for failing to assign error under *Drope*, he was deficient for failing to assign error to the trial court's failure to re-examine Mr. Muho's competency to represent himself.

112.   While Mr. Muho must demonstrate the prejudice caused by *appellate counsel's* failure, he does not need to prove the prejudice caused by the *Edwards*

error itself. An erroneous grant of a *pro se Faretta* motion is the constitutional equivalent of the complete denial of counsel, for which prejudice is presumed. *Cronic*, 46 U.S. 648.

113.   In this instance, the trial record demonstrates Mr. Muho's irrational thinking throughout the trial. *See paras.* 40-41, *supra. See also Martinez v. Court of Appeal*, 528 U.S. 152, 161 (2000) ("Our experience has taught us that a pro se defense is usually a bad defense, particularly when compared to a defense provided by an experienced criminal defense attorney."). Especially since appellate counsel did not need to establish prejudice from the error, and the basis of the claim is readily apparent from the record, they were deficient in failing to raise the claim that Mr. Muho's incompetence to represent himself was apparent during his trial.

**VI.   Claim VI: Sentencing counsel was ineffective for failing to conduct investigation into Mr. Muho's history of mental illness and drug dependence and to present such evidence in mitigation.**

Legal Standard for Ineffective Assistance of Counsel at Sentencing

114.   Defense counsel has the duty to conduct a reasonable investigation to determine what evidence is appropriate to present. *Cunningham v. Zant*, 928 F.2d 1006, 1016 (11th Cir. 1991); *see also Thompson v. Wainwright*, 787 F.2d 1447, 1450 (11th Cir. 1986), *cert. denied* 481 U.S. 1042 (1987). "The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee." *Halloway v. Arkansas*,

435 U.S. 475, 490 (1978). "Nominal representation . . . does not suffice to render the proceedings constitutionally adequate…." *Evitts v. Lucy*, 469 U.S. 387, 396 (1985).

115. Counsel who fails to thoroughly investigate the facts and mitigating circumstances cannot be found to have engaged in sound strategic decision-making. "Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S., at 690-91. Only after sufficient investigation can counsel make a "strategic judgment to present less than all possible available evidence in mitigation." *Mitchell v. Kemp*, 762 F.2d 886, 889 (11th Cir. 1985) (internal citations omitted). Decisions that are the product of unreasonable investigation warrant no deference as strategic decisions. *See*, *e.g.*, *Harris v. Dugger*, 874 F.2d 756, 763 (11th Cir. 1989) (holding that defendant received ineffective assistance of counsel when the failure to present mitigation evidence was not the result of a tactical decision by trial counsel); *see also*, *Williams v. Allen*, 542 F.3d 1326, 1340 (11th Cir. 2008) (counsel's failure to investigate signs of defendant's mental illness found to be deficient performance).

116. "An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence."

*Porter v. Singletary*, 14 F.3d 554, 557 (11th Cir. 1994). Determining what investigation is reasonable, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003).

117.   Mr. Muho's counsel at sentencing had access to the record of the proceedings, which included at least the Forensic Report, pleadings from two prior lawyers describing the circumstances of their withdrawal and attempted withdrawal from representation, multiple pleadings filed by Mr. Muho expressing confused thinking and even paranoid delusions about the case he faced, statements from Mr. Muho's mother and sister expressing their acute concern for his mental health, and statements from Mr. Muho himself expressing his addiction to Adderall and its withdrawal and side effects. With all of these indicators, sentencing counsel was obliged to conduct reasonable investigation to discover evidence that would have mitigated the sentence.

118.   Had sentencing counsel conducted reasonable investigation, he would have been able to locate mental health and prescription records detailing Mr. Muho's addiction and psychiatric conditions, records of his erratic and self-destructive behavior, and extensive evidence about what a genuinely kind and loving young man

he had been before his addiction took off and changed him into the person convicted of these crimes.

119.   The fact that such mitigating evidence was available and not sought by counsel meant the sentencing court was deprived of much of the individualized consideration it was required to make under § 3553 and the requirements of the Eighth Amendment. But for counsel's failure to investigate mitigating evidence, the Court was left with the image of Mr. Muho from only the worst period of his life, his peak addiction, withdrawal, and the trial at which he attempted to defend himself from the mess he had made of his life. A fair and reliable sentencing, with the benefit of even minimal mitigation investigation would have given the Court a far more accurate picture of Mr. Muho's whole self and the circumstances that led him to be convicted. Sentencing counsel's failures prejudiced Mr. Muho by denying him the opportunity to be sentenced accurately and resulted in an excessive sentence of 264 months in federal prison.

120.   Given Mr. Muho's competency issues, the information sentencing counsel had regarding addiction and mental instability, counsel should have presented expert testimony at sentencing regarding the effect of the Adderall and withdrawal from it. *Cf. Blanco v. Singletary*, 943 F.2d 1477 (11th Cir. 1991) (prejudice arose in IAC

claim where counsel failed to procure a psychiatrist at sentencing to testify that defendant had mental health problems).

121.   Had counsel conducted constitutionally sufficient investigation and presented his findings to the Court, there is a reasonable probability that Mr. Muho's sentence would have been lower than the 264 months imposed.

122.   The case of *United States v. Miller*, 188 F.3d 1312 (11th Cir. 1999) is indicative of how Mr. Muho's sentence was inconsistent with the goal of the Federal Sentencing Guidelines to avoid unwarranted sentence disparities. 28 U.S.C. § 3553(a)(6).

123.   The defendants in *Miller* were convicted of a multi-party fraud scheme involving letters of credit resulting in a total loss of over $39,000,000 to multiple financial institutions. In *Miller*, the defendants falsified records to obtain $90,000,000 in credit, against with they withdrew over $39,000,000 by falsifying records and making false statements to financial institutions. The lead defendant in *Miller* was convicted at trial of all 70 counts in the indictment, including conspiracy to: (a) make materially false statements for the purpose of influencing a federally insured financial institution in violation of 18 U.S.C. § 1014 (1994); (b) forge bills of lading in violation of 49 U.S.C. § 121 (1994); 4Link to the text of the note (c) execute a scheme to defraud and obtain monies from a federally insured financial

institution in violation of 18 U.S.C. § 1344 (1994); and (d) commit wire fraud in violation of 18 U.S.C. § 1343 (1994). In addition, the indictment contained nine counts of making false statements to a bank, ten counts of preparing false bills of lading, twenty counts of bank fraud, and twenty counts of wire fraud. The indictment also charged Miller individually with ten counts of money laundering in violation of 18 U.S.C. § 1956 (1994). Miller received a sentence of 168 months as compared to Mr. Muho's 264 months for his sole conduct resulting in loss of nearly five times less. Miller's co-defendants received sentences of 33 and 51 months.

124.  While 28 U.S.C. § 3553(a)(6) does not mandate similar sentences between similarly situated defendants, and the facts of Mr. Muho's and Mr. Miller's cases do not overlay perfectly, the *Miller* case is indicative of how high Mr. Muho's sentence was given the amount of the loss and his conduct.

125.  With reasonable investigation and presentation of sentencing evidence, particularly given the nexus between Mr. Muho's addiction during the course of his conduct, his exceptional background, and the concerns about his competency through the proceedings, counsel had a duty to present a significantly more robust presentation at sentencing. Had he done so, there is a reasonable likelihood that Mr. Muho would have received a lower sentence.

126.   Accordingly, Mr. Muho, through counsel, moves this Court to vacate, set aside, or correct his sentence, either by imposing the sentence offered in the plea or by resentencing Mr. Muho after a new sentencing hearing.

### Request for Evidentiary Hearing

127.   Mr. Muho seeks an evidentiary hearing on this Motion at which time he would call for evidence in his favor and further develop the facts asserted above.

128.   28 U.S.C. § 2255(b) provides:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

"A petitioner is entitled to an evidentiary hearing if he alleges specific, non-conclusory facts that, if true, would entitle him to relief." *Mack v. United States*, 782 F. App'x 789, 791 (11th Cir. 2019) (citing *Hernandez v. United States*, 778 F.3d 1230, 1232 (11th Cir. 2015)). If the record of the case does not "'conclusively show' that under no circumstances could the [movant] establish facts warranting relief under § 2255," the movant must be afforded a hearing. *Fontaine v. United States*, 411 U.S. 213, 215 (1973).

**Timeliness**

This Motion is filed within one year of the denial of *Writ of Certiorari* to the United States Supreme Court, May 3, 2021, and is therefore timely filed pursuant to 28 U.S.C. § 2255.

**Relief Requested**

WHEREFORE, Mr. Muho, by counsel, moves that the Court grant his request for an evidentiary hearing to fully establish his entitlement to relief. Mr. Muho further requests that the Court grant his Motion, vacate his conviction and sentence, and grant further relief as appropriate.

Dated:         May 2, 2022

Respectfully submitted,

_____/s/_____

Gerti Muho, *by counsel*

DANIEL GOLDMAN
*Admission Pro Hac Vice Pending*
Virginia Bar No. 82144
The Law Office of Daniel Goldman, PLLC
114 N. Alfred Street
Alexandria, Virginia 22314
(202) 677-5709 – Phone
(833) 523-2310 – Facsimile
dan@dangoldmanlaw.com

62

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of July, 2021, I electronically filed the foregoing with the clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on all counsel of record and the United States Attorney's Office, Fort Lauderdale, FL.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd  day of  May, 2022, I electronically filed the foregoing with the clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on all counsel of record and the United States Attorney's Office, Fort Lauderdale, FL.

LOUIS C. PIRONTI, ESQ.
Attorney for Defendant
315 SE 7 St., Suite 300
Ft. Lauderdale, FL  33301
Tel:  (954) 990-7411
E-mail: courtfilingslcp@gmail.com

By:  */s/ Louis C. Pironti*_____
        Louis C. Pironti
        Florida Bar No. 083410

63

## VERIFICATION

I, Daniel Goldman, counsel to Gerti Muho, declare under penalty of perjury that the foregoing is true and correct based on official records, reports of investigation, declarations, witness interviews, and on information and belief, pursuant to Rule 2(b)(5) of the Rules Governing § 2255 Proceedings.


\_\_\_\_\_May 2, 2022_____       _____ /s/_____

       Date Executed                      Daniel Goldman, Esq.
                                                       Counsel for Gerti Muho, Movant